**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)**

| | | |
|---|---|---|
| **SUN YUNG LEE** | ) | |
|      **Plaintiff,** | ) | Case No. 1:09CV402 |
| **v.** | ) | |
| | ) | |
| **ZOM CLARENDON, L.P.** | ) | |
|      **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff, SUN YUNG LEE, ("Plaintiff"), by and through her undersigned counsel, and offers this memorandum in support of her Motion for Summary Judgment.

## I.      PRELIMINARY STATEMENT

Plaintiff is entitled to summary judgment because there is no genuine issue of material fact in dispute. As owner of Lots 238, 239, and 240, Plaintiff is the holder of an expressly created easement for a Right of Way [hereinafter ROW] recorded in the Arlington County land records in Defendant's chain of title. In 1932, the note-holders under the Deeds of Trust released certain property subject to a ROW. The note-holders reserved the ROW, encumbered by the Deeds of Trust's lien, to retain the value of the remaining property under the Deeds of Trust. If the Deeds of Trust had been paid off, the encumbered property would have been released from the note-holders' lien, including the ROW; however, this was not the case. In 1935, the borrower defaulted and the trustee foreclosed on the property making the ROW

permanent and appurtenant to Lots 238, 239 and 240 of Plaintiff's property.  Even though this is an unusual way to create a ROW, it is nonetheless valid and enforceable.

Defendant failed to make prudent inquiry in its review of the recorded instruments in its chain of title.  In doing so, Defendant did not perform proper due diligence and missed the recorded ROW encumbering Defendant's property.  Virginia is a notice state, whereby subsequent purchasers are charged with notice of all recorded instruments in the chain of title and all facts expressly stated or suggested through prudent inquiry.  It is undisputed the ROW is recorded among the land records in Defendant's chain of title; therefore, this court should grant Plaintiff's motion for summary judgment  and declare the ROW valid and enforceable because there is no genuine issue of a material fact in dispute.

Moreover, Defendant failed to produce sufficient evidence in the record to establish by "clear and unequivocal evidence" that (a) Plaintiff "clearly manifested" intent to abandon her ROW, or (b) show nonuse by Plaintiff coupled with adverse use of the ROW by the servient owner for the required 20 year period.  Defendant failed to establish the essential elements required to meet its burden of proof and establish abandonment of the ROW.  A moving party is entitled to summary judgment when it has demonstrated an absence of a genuine issue of material fact; therefore this court should grant summary judgment in favor of Plaintiff and declare the ROW valid and enforceable.

In the alternative, summary judgment should be granted in favor of Plaintiff because there is no genuine issue of material fact in dispute regarding Plaintiff's claim for easement by implication and/or prescription.  Plaintiff is the owner of part of Lots 217 and 241 [hereinafter Reamy House].  The facts on record in this case establish an easement by implication for the Reamy House on Plaintiff's property over Defendant's property.  There is no genuine dispute

over the fact that both the dominant and servient estates originate from a common owner, the easement was in existence at the time of severance, and that Plaintiff's use was apparent, continuous, and reasonably necessary for the enjoyment of Plaintiff's land, thus an implied easement has been established and summary judgment should be granted for the Plaintiff declaring the easement by implication valid and enforceable.

Furthermore, the facts in this case support Plaintiff's claim for easement by prescription. Plaintiff's use of the easement for the Reamy House on her property was open, visible, continuous and unmolested for well over the 20 year period required to establish a rebuttable presumption for Plaintiff that her use was adverse and under a claim of right. Plaintiff's rebuttable presumption shifts the burden of proof to the servient owner to show the use was permissive. The evidence on the record is insufficient to satisfy Defendant's burden. Because Defendant failed to establish an essential element required by his burden of proof, and Plaintiff demonstrated an absence of a genuine issue of material fact, Plaintiff is entitled to summary judgment, and as a matter of law the court should grant summary judgment in favor of Plaintiff and declare the easement by prescription valid and enforceable.

## II.     STATEMENT OF THE FACTS

The foregoing case arises out of Defendant's failure to acknowledge Plaintiff's valid recorded Right of Way for an ingress/egress which encumbers Defendant's property, and is for the benefit of Lots 238, 239 and 240 of Plaintiff's property. See Compl. ¶¶ 1 & 3. In the alternative, Plaintiff asserts an implied and/or prescriptive easement over Defendant's property for the Reamy House (part of Lots 217 and 241) on Plaintiff's property. See Compl. ¶¶ 8 & 9.

In 1900, the land relevant to this case was dedicated through a subdivision plat recorded in Deed Book 102, page 138, which included Lots 238, 239, 240, 241, 242 and 217. See Joint Ex. 1. In 1924, Lulu and Frank Follansbee owned Lots 238, 239, 240, 241, 242 and part of Lot

217.  See Joint Ex. 2.  On July 7, 1926, Follansbee conveyed a building constructed over parts of Lots 217 and 241 to Judson Reamy (the Reamy House), recorded in Deed Book 246, page 12 which included a plat delineating the boundary of the property conveyed.  See Joint Ex. 3.  Follansbee, grantor to Reamy, retained ownership of the entire property surrounding the Reamy House, (Lots 238, 239, 240, 242 and part of lots 217 and 241 not conveyed to Reamy) except for one side fronting what is now N.  Irving Street.  See Ex. A Joint Ex. 2; see also Ex. A Sunderman Survey for illustration.

In December 1926, Follansbee, the common grantor, then conveyed Lots 238, 239, 240, 242 and part of lots 217 and 241 not conveyed with the Reamy House to Kristopher Dadaian, recorded in Deed Book 254, page 172.  See Joint Ex. 4.  Dadaian subsequently conveyed to B.M. Hedrick[1] in 1929, subject to two deeds of trust encumbering Lots 238, 239, 240, 242 and parts of lots 217 and 241 not conveyed with the Reamy House.  See Joint Ex. 9.  The two deeds of trust encumbering B.M. Hedrick's property were the 1928 Deed of Trust, naming Woodward as a Trustee, hereinafter referred to as the "Woodward Trust" and a second Deed of Trust, naming Frank Ball as a Trustee, hereinafter referred to as the "Ball Trust." (collectively the "Deeds of Trust").  See Joint Ex. 6 (Woodward Trust) and Joint Ex. 8 (Ball Trust).  The Ball Trust was made subject to the Woodward Trust.  Id.

In March 1932, the Trustees and note-holders of the Deeds of Trust recorded two deeds of partial release[2] referred to as the "Ball Deed of Partial Release" (recorded in Deed Book 331, page 308) and the "Woodward Deed of Partial Release" (recorded in Deed Book 331, page

---

[1] See Ex. J. Wilbur Report (Def's Expert) & Ex. D. Aff. of Foster (Hedrick is predecessor-in-title to both Pl. & Def.).

[2] See VA. CODE ANN. § 55-66.4 (2009) (lawful for lienor to make a marginal release of any one or more pieces or parcels of property covered by such lien).

310), collectively referred to as the "Deeds of Partial Release."[3] The Deeds of Partial Release were granted expressly subject to a ROW for ingress and egress purposes for the benefit of the owners of Lots 238, 239 and 240 which remain encumbered by the Deeds of Trust, and are currently part of Plaintiff's property. See Joint Statement of Uncontroverted Facts ¶ 1. Both the Woodward Trust and the Ball Trust, contain margin notes recording a partial release recorded in the land records, and the Woodward Trust also had a margin note recording the foreclosure of the Woodward Trust. See Joint Ex. 6 & 8; see also Joint Ex. 10 & 11.

B.M. Hedrick sold the land released from the Deeds of Trust in 1932, part of Lots 242 and 241 to Enoch Norris, and part of Lots 217, 241 and 242 to Hannah Hedrick, subject to any encumbrances, restrictions or reservations duly recorded. See Joint Ex. 12 & 13. The ROW created in the Deeds of Partial Release was duly recorded in the land records. Id. Unfortunately, like many property owners during the Great Depression, B.M. Hedrick defaulted under his Deeds of Trust in 1935.[4] Consequently, Woodward,[5] at the direction of the note-holder, foreclosed on B.M. Hedrick's land and conveyed all land subject to the Deeds of Trust[6] to Union Investment Company of Washington, recorded in Deed Book 373, page 97, referred to as "Trustees' Deed." See Joint Ex. 16. This conveyance included all rights, title and interests appurtenant to the land, which included the ROW. Id.

Upon foreclosure, the ROW became permanent and conveyed appurtenant to Plaintiff's property, the dominant estate, and encumbered the servient estate, now Defendant's property. See VA. CODE ANN. § 55-50 (2009); see also Ex. B. Aff. Mackall, Ex. C. Aff. Title & Ex. D.

---

[3] See Joint Ex. 10 & 11.
[4] See Joint Ex. 16.
[5] Trustee under the Woodward Trust, the first priority lien.).
[6] See VA. CODE ANN. § 55-59 ¶ 7 (2009) (right of trustee to sell property in default under a deed of trust).

Aff. Foster.   The ROW is shown in a 1935 survey of the affected properties, certified on August 19, 1935 three (3) days prior to recordation of the foreclosure sale, hereinafter referred to as the "Sunderman Survey."  See Ex. A. Sunderman Survey; see also Joint Ex. 16 (margin note).  The ROW is again shown in a plat dated September 1950 showing the division of lots 217, 241 and 242, and found in the mapping division of Arlington Virginia Survey Division, which specifically references by deed book and page of the Woodward Deed of Partial Release, hereinafter referred to as the "1950 Arlington Survey."  See Ex. E. 1950 Arlington Survey.

Plaintiff's family opened a restaurant on the property in 1956 and used the ROW to drive to work and park every day for at least 10 years, until the restaurant was sold in the late 1960s.[7]  In 1963, Plaintiff's family purchased their current property, at which time they were given a copy of the 1935 Sunderman Survey and told that the ROW conveyed with the deed to Lots 238, 239 and 240 of Plaintiff's property.[8]

Furthermore, Plaintiff's in-laws resided on Plaintiff's property for at least fourteen years, until 1979 in the building referred to as the Reamy House, abutting the ROW.[9] Plaintiff's father-in-law maintained the landscaping over the ROW, and passed away from a heart attack physically on the ROW while trimming the brush in 1979.[10]  From 1979 through 1997, Plaintiff and her co-owners continued to use the ROW for ingress/egress access to Lots 238, 239 and 240 of Plaintiff's property.[11]  In 1990, Plaintiff's daughter and son-in-law, Don and Jeannie Williams, opened a sandwich shop on the corner (Sam's Corner) and use the ROW

---

[7] See Ex. G, Pl. Dep. at 25, 41-43; see also Ex. F J. Williams Dep. at 15, 18, 20 & 21.

[8] See Ex. I, Pl.'s Supp. First Resp. to Interrogs. No.3 ¶ 4 & No.4 ¶2; see also Ex. G, Pl. Dep. at 16, 17, 20, 39-42 & Ex.A. Sunderman Survey: for a clear depiction of the ROW.

[9] See Ex. I, Pl's Supp. First Resp. to Interrogs. No.4 ¶ 3; see also Ex. G, Pl. Dep. at 12 (errata) and Ex. F. J. Williams Dep. at 12

[10] See Ex. G, Pl. Dep. at 12, 29 (errata); Ex. F. J. Williams Dep. at 41.

[11] See Ex. F, J. Williams Dep at 23-24, 27; Ex.G, Pl. Dep. at 33, 41-43; see also Ex. I, Pl's Supp. First Resp. to Interrogs. No.4 ¶ 3; see also Ex. H, D. Williams Dep. at 11, 13, 15 28.

when necessary for ingress/egress access to Plaintiff's property.[12]   Don and Jeannie Williams used the ROW as needed until March 19, 2007 when Defendant erected a fence blocking access to the ROW.[13]

In 1995, after failed attempts to stop Plaintiff's neighbors from trespassing and dumping trash and oil on her property, Plaintiff's husband decided to install a fence.[14]   Plaintiff intended to install and requested a gate, but the fence contractor informed Plaintiff's husband they were unable to install a gate due to the configuration of Plaintiff's property.[15]   Instead Plaintiff had the fence contractor install an unlocked movable fence on her property to prevent the neighbors from trespassing and dumping trash and oil on her property.[16]   Having the fence unlocked on one side and movable allowed Plaintiff to continue to use the ROW when needed.[17]   Don Williams testified he moved the unlocked fence aside when necessary for use of the ROW.[18]   The fence was taken down twelve years later in 2007.[19]

Plaintiff's use of the ROW has not been interfered with or interrupted until 2007 when Defendant erected the fence blocking access.[20]   Plaintiff has never asked a servient owner for permission to use the ROW.[21]   As soon as Defendant erected a fence blocking the ROW, Plaintiff promptly notified Defendant of her ROW.[22]

---

[12] See Ex. F, Dep. J. Williams at 8, 104-106 & Ex. H Dep. D. Williams at 7, 27, 28, 30-32.

[13] See also Compl. ¶ 17. see also Ex. F. Dep J Williams p 31, and Ex. H Dep. D. Williams at 52-53

[14] See Ex. L, Lee fence permit ; Ex. F, Dep. J. Williams at 35, 36, 96;  Ex. H, Dep. Don Williams at 21-23, 100; see also Exhibit R Pl.'s dumpsters and oil bins.

[15] See Ex. H Dep. Don Williams at 28-33, 49; Ex. F, Dep. J. Williams at 85-86.

[16] See nn. 12 & 13.

[17] Id.

[18] Id.

[19] See Ex. F, Dep. J. Williams at 73; Ex. H. Dep. D. Williams at 51.

[20] See Ex. F, Dep. J. Williams at 43Errata, 95; and Ex. . H. Dep. D. Williams at 24, 43; Ex. I, Pl.'s Supp. First Resp. to Interrogs. No. 4 ¶ 6.

[21] Id..

Furthermore, Don Williams testified he used the area surrounding the Reamy House, part of Defendant's land, to perform necessary maintenance on the Reamy House.[23]   In addition, Plaintiff's husband and father-in-law also used the area surrounding the Reamy House on Defendant's land access on the Reamy House; moreover, there was no other access to the utility room located in the rear of the Reamy House.[24]   The Reamy House abuts the ROW in dispute.[25]   The Reamy House is currently used for storage and is maintained by Plaintiff's son-in-law Don Williams.[26]

### III.     SUMMARY JUDGMENT STANDARD

According to Federal Rule 56 of the Fed. Rules of Civil Procedure and corresponding Local Rule 56, a moving party is entitled to summary judgment as a matter of law, when there is no genuine dispute over a material fact.  FED. R. CIV. P. 56; E.D.VA. R. 56; see also Celotex v. Catrett, 477 U.S. 317, 322-23 (1986).    Summary judgment is appropriate when after informing the court of the pleadings, discovery, depositions, answers to interrogatories, and admissions on file, together with the attached affidavits, the record demonstrates an absence of a genuine issue of material fact. Celotex, 477 U.S. at 322.

Furthermore, where there is insufficient evidence to satisfy a party's burden of proof, the court is obligated to grant summary judgment in favor of the other party.  Celotex, 477 U.S. at 323.  In Celotex, the court stated there can be "no genuine issue as to any material fact," if there is a complete failure of proof concerning an essential element.  Id.  If the burden of proof

---

[22] See Ex. M, Letter dated 3/22/07 from Pl.'s attorney; see also Def.'s Answer ¶ 21.
[23] See Ex. F, Dep. J. Williams at 38, 40, 88 – 91 & Ex. H. Dep. D. Williams at 24, 30-34, 55-58,78, 83-84.
[24] Id.; see also Ex. G, Pl. Dep. at 43, ln. 18-19 errata.
[25] See Ex. A, Sunderman Survey & Ex. E, 1950 Arlington Survey.
[26] See Ex. H, Dep. D. Williams at 37.

is not met, all other facts are then immaterial, thus, the moving party is "entitled to a judgment as a matter of law." Id.

In this case, Plaintiff satisfied her burden presenting evidence establishing as owner of Lots 238, 239 and 240 she is the holder of a valid and enforceable express ROW.  See infra Sections IV.A.1 & 2.  To the contrary, Defendant's has not met its burden of proof for the affirmative defense of abandonment.  See infra Section IV.A.3.  Therefore, the court should grant summary judgment in favor of Plaintiff and declare the ROW valid and enforceable.  In addition, Plaintiff has satisfied her burden of proof establishing, in the alternative, an easement by implication and/or prescription. See infra Sections IV.B.1 and IV.B.2.  Therefore the court should grant summary judgment in favor of Plaintiff and declare the easement by implication and prescription valid and enforceable.

## IV.    ARGUMENT

### A.    PLAINTIFF IS HOLDER OF A VALID AND ENFORCEABLE EXPRESS EASEMENT RESERVING A ROW FOR INGRESS/EGRESS PURPOSES.

Easements may be created many ways, including through express reservation, by implication or by prescription. Russakoff v. Scruggs, 241 Va. 135, 139 (1991).  In the case at hand, Plaintiff is the holder of an express ROW created in the Deeds of Partial Release, recorded in the land records.  The ROW is appurtenant to Lots 238, 239 and 240 of Plaintiff's property, the dominant tract, which conveyed to Plaintiff's predecessor-in-title after foreclosure and pursuant to the Trustees' Deed.

### 1.  IT IS UNDISPUTED THAT THE DEEDS OF TRUST, THE CORRESPONDING DEEDS OF PARTIAL RELEASE AND THE TRUSTEES' DEED ARE IN DEFENDANT'S CHAIN OF TITLE.

Plaintiff is entitled to summary judgment because there is no genuine dispute the instruments that created and conveyed the ROW in dispute are recorded in the Arlington County land records and in Defendant's chain of title.[27]   According to Virginia law, recording an instrument in the land records gives constructive notice to all subsequent purchasers of all facts expressly stated and suggested through prudent inquiry.  Chavis v. Gibbs, 198 Va. 379, 382 (1956); see also VA. CODE ANN. § 55-96 (2009).  Moreover, when an estate, subject to the right of another shown in the title papers is purchased, such purchaser is charged with notice of all title papers or papers referred to in the chain and disclosed upon a complete examination and prudent inquiry.  Chavis, 198 Va. at 382.

In the current matter, the Deeds of Trust originally encumbered both Plaintiff's and Defendant's current property.[28]   The partial release created the ROW, and after foreclosure on the Deeds of Trust, all the land encumbered by the Deeds of Trust, including the ROW, conveyed appurtenant to Lots 238, 239 and 240 of Plaintiff's property pursuant to the Trustee's Deed.[29]   The Deeds of Trust, Deeds of Partial Releases, and the Trustees' Deed mentioned above are recorded among the Arlington County land records and are Defendant's chain of title.[30]

The main purpose of recordation is to give constructive notice to all subsequent purchasers.  Chavis, 198 Va. at 382.  It is undisputed that the aforementioned deeds are in Defendant's chain of title, duly recorded.  Thus, Defendant had constructive notice of the ROW recorded in its chain of title.  Therefore, as a matter of law, Plaintiff is entitled to summary

---

[27] See Ex. B, Aff. Mackall; Ex. C, Aff. Title; Ex. D, Aff. Foster; Ex. J, Wilbur report (Def.'s Ex. 33), & Ex. K, Gordon report (Def.'s Ex. 32).
[28] See n. 25; see also Joint Ex. 6 & 8.
[29] See n. 25.
[30] Id.

judgment because there is no genuine dispute that the instruments creating the ROW are recorded in Defendant's chain of title.

Under Virginia law, purchasers are required to make due inquiries into the chain of title. Chavis, 198 Va. at 382-83.  If an instrument is recorded in the chain of title, whether or not purchaser or title examiner had actual knowledge, he is bound by constructive notice.  Shaheen v. County of Mathews, 265 Va. 462, 477 (2003).  A purchaser must look to the title papers under which he buys, and is charged with notice of all facts appearing on their face, or to the knowledge of which anything there appearing would disclose.  Id.  One cannot ignore or "shut his eyes and ears" and then claim to be a bona fide purchaser without notice. Chavis, 198 Va. at 383.

Due inquiry into a chain of title requires a complete examination of the record.  When conducting a title examination, an examiner must trace the chain of title through the grantor/grantee index.[31]  Because Virginia is a notice state, a purchaser is charged with constructive notice of all recorded instruments.[32]  An examiner should trace the title back, and bring it forward from its original dedication deed or plat, in particular when there is a case of an old subdivision such as in the current matter.[33]  If a title examiner does not trace the title back to the dedication plat, they do so at their own risk.  See VA. CODE ANN. 55-96 (2009); see also, Shaheen, 265 Va. at 477-81.[34]

Virginia's law on constructive notice is settled, and a recorded ROW is still effective today regardless if it was created over 60 years ago.  Id. There is no cap or statute of limitations

---

[31] Id.
[32] See VA. CODE ANN. 55-96 (2009); see also Shaheen, 265 Va. at 477-481; see also Ex. B, Aff. Mackall; Ex. C, Aff. Title; Ex. D, Aff. Foster; Ex. J., Wilbur report (Def.'s ex. 33); & Ex. K, Gordon report (Def.'s Ex. 32).
[33] Id..
[34] Id..

that would extinguish or render unenforceable an easement, right of way or restriction, duly recorded in the chain of title. Id.  In this case, a title examiner performing due diligence through proper title examination of Defendant's property would find the Deeds of Trust, Deeds of Partial Releases and the Trustees' Deed.[35]  Therefore, any subsequent purchaser is on notice as to the existence of the ROW created in the Deeds of Partial Release.

Furthermore, when a trust deed with a power of sale is recorded in the chain, subsequent purchasers are compelled to inquire as to whether any sale has been made under such power. Chavis, 198 Va. at 384.  Under Virginia law, a purchaser must inquire into the release and foreclosure of a deed of trust, because he is charged with notice of all instruments of record.  Id. at 385-87.  Accordingly, upon prudent inquiry in the current matter, a title examiner reviewing the Deeds of Trust and the corresponding partial releases, would see the ROW created.  Moreover, the margin notes recorded on the face of the Ball Trust expressly direct the examiner to the recorded Ball Deed of Partial Release. See Joint Ex. 8 & 10. Similarly, the margin notes recorded on the face of the Woodward Trust expressly also direct the examiner to the Woodward Deed of Partial Release and the Trustee's Deed for foreclosure.[36]  When charged with notice of an instrument, a person is also charged with notice of all facts appearing on the face of the instrument.  Chavis, 198 Va. at 385.  Accordingly, Defendant is charged with all instruments and facts appearing on the face of such instruments. Id.  Therefore, Defendant is compelled to inquire into the foreclosure and sale because the Deeds of Trust were in default and enforceable at the time of foreclosure.

In addition, notice is charged due to the facts recited in the record which suggest material matters disclosed by reasonable inquiry.  Id. at 386.  The recitals in the deeds in

---

[35] See n. 25.
[36] See Joint Ex. 6, 11 & 16.

Defendant's chain of title all included a provision making the conveyance "subject to" all rights and restrictions of record.[37]   This language immediately puts an examiner or purchaser on notice to inquire further into the chain of title and find all restrictions, easements, rights of way, etc., that may encumber the property.  <u>Chavis</u>, 198 Va. at 382-83.  <u>See</u> Ex. B, Aff. Mackall.  As a result, Defendant had constructive notice of all encumbrances of record, including Plaintiff's ROW.

As stated above, Virginia is a notice state, whereby subsequent purchasers are charged with notice of all recorded instruments in the chain of title and all facts expressly stated or suggested through prudent inquiry.  <u>Id</u>.  It is undisputed the ROW is recorded among the land records in Defendant's chain of title.[38]  Defendant did not make prudent inquiry or chose to ignore the ROW in its review of the recorded instruments in its chain of title.  <u>See</u> Ex. Q (excerpt of Ex. J Wilbur's Report: title abstract from examination of Def.'s title after Pl. notified Def. of ROW; in this examination done in 2007, Wilbur notes the releases).  In doing so, Defendant did not perform proper due diligence and missed the recorded ROW encumbering Defendant's property.  Defendant had constructive notice because the ROW was created, recorded and cross-referenced in the deeds in its chain of title, and such provisions and cross-references recited in the deeds put Defendant on notice.  <u>Chavis</u>, 198 Va. at 382-83.  Plaintiff is entitled to summary judgment because it is undisputed that the ROW is recorded in Defendant's chain of title, Defendant is charged with notice of such liens, and there is no genuine issue of a material fact in dispute, therefore; the court should grant Plaintiff's motion for summary judgment and declare the ROW valid and enforceable.

---

[37] See Joint Ex. 12, 13, & 36;  <u>See</u> Ex. B, Aff. Mackall, Ex. C, Aff. Title. &  Ex. D. Aff. Foster.
[38] See n. 27.

**2. THE RIGHT OF WAY WAS VALIDLY CREATED IN THE WOODWARD AND BALL DEEDS OF PARTIAL RELEASE AND CONVEYED APPURTENANT TO THE DOMINANT ESTATE UPON FORECLOSURE.**

On July 10, 1928, the Woodward Deed of Trust was recorded encumbering Lots 238, 239, 240, 242, and part of Lots 241 and 217 (including both Plaintiff's and Defendant's current property).[39]  A second deed of trust, the Ball Deed of Trust dated September 14, 1929, was recorded further encumbering the Lots.[40]  On September 18, 1929, the Lots[41] were conveyed to B.M. Hedrick, subject to and encumbered by the Deeds of Trust. See Joint Ex. 9.

In 1932, the note-holders of the Deeds of Trust, acting under their power and authority as lienholders, directed their respective trustees, to execute partial releases of the property encumbered by the Deeds of Trust.[42]  Accordingly, the Deeds of Partial Release specifically released certain property from the corresponding Deeds of Trust, described as being Lot 242, part of Lot 241, and part of Lot 217 (part of Defendant's current property), *subject however*, to a ROW over the released property, for the benefit of the owners of Lots 238, 239 and 240, still encumbered by the Deeds of Trust (part of Plaintiff's current property). See Joint Ex. 10 & 11.  Thus, the ROW was not released from the lien of the Deeds of Trust. See Ex. B Aff. Mackall & Ex. C. Aff. Title. The note-holder (lienor) and trustee validly granted, executed and recorded the Deeds of Partial Release that included the ROW, by the powers vested in them under their respective Deeds of Trust.  See VA. CODE ANN. § 55-66.4 (2009).

---

[39] The other parts of Lots 217 & 241 were previously conveyed to Judson Reamy in 1926, see Joint Ex. 3.
[40] Lots 238, 239, 240, 242, and part of Lots 241 and 217, see Joint Ex. 8
[41] 238, 239, 240, 242, and parts of lots 217 and 241.
[42] See Joint Ex. 6 & 8, (Lot 242 and part of Lots 217 and 241).

Furthermore, in 1935, B.M. Hedrick defaulted under the Deeds of Trust and foreclosure ensued.  See Joint Ex. 6 & 16.  The Woodward trustee, on behalf of, and at the direction of, the lienor note-holder, foreclosed on the property encumbered by the Deeds of Trust and conveyed to their grantee all of the interests, rights and land under the Deeds of Trust "less and except" the land released by the Deed of Partial Release, recorded in Deed Book 331, page 310.  See Joint Ex. 16.  Therefore, the Trustees' Deed conveyed the specified encumbered lots, including the ROW not released from the lien of the Deeds of Trust.  Id.  The Deeds of Partial Releases validly created the ROW which conveyed appurtenant to the foreclosed upon property, the dominant estate.  See VA. CODE ANN. §§ 55-50 & 55-66.4 (2009); see also Ex. B, Aff. Mackall & Ex. C, Aff. N. Title.

When an easement is granted or reserved by written deed, the rule of construction states the rights of parties must be ascertained from the words of the deed, and where language is ambiguous the court can look to the surrounding circumstances of the parties to examine the language and ascertain the parties intent at the time the deed was executed.  Hamlin v. Pandapas, 197 Va. 659, 663-64 (1956).[43]   The language in the Deeds of Trust, Deeds of Partial Release and Trustees' Deed, is clear and unambiguous, therefore, the court should look no further than the four corners of the deeds, which create the ROW for benefit of the owners of the Lots 238, 239 and 240, now owned by Plaintiff.

However, should the court determine the language in the deed is ambiguous, it may look to the evidence of the surrounding circumstances of the land and the parties at the time of execution.  Hamlin, 197 Va. at 663-64; see also Pyramid Dev., 262 Va. at 754.  In this case, the

---

[43] See also Pyramid Dev., L.L.C. v. D&J Assocs., 262 Va. 750, 754 (2001) (stating if language is clear, unambiguous look only to the four corners of the deed, if language is ambiguous, court may consider parol evidence).

surrounding circumstances of the land and parties at the time of execution of the Deeds of Trust, Deeds of Partial Release and Trustees' Deed, show the parties' intent to create a ROW for the remaining property under the Deeds of Trust.  See Joint Ex. 10 & 11; see also Ex. A Sunderman Survey.  In order to retain the best value of the property remaining under the Deeds of Trust, the note-holder expressly created the ROW and did not release such ROW from the lien of the Deeds of Trust.  See Ex. B Aff. D. Mackall & Ex. C. Aff. N. Title.  More simply, had the ROW not been created, there would be no access to the rear entrances of the commercial buildings on Lots 238, 239 and 240, fronting Wilson Blvd on Plaintiff's property.[44] This would preclude routine access for deliveries and trash removal.[45]  The language in the Deeds of Partial Releases alone, or in consideration with the surrounding circumstances at the time the deed was executed, show the parties' express intent to create such ROW and establish such rights for the parties.  See Joint Ex. 10 & 11.  Moreover, as stated above, the deeds are recorded in Defendant's chain of title.[46]

The fact that Defendant did not perform a complete title examination and make prudent inquiry into the instruments and facts on record, does not render the recorded ROW invalid. See VA CODE ANN. § 55-96 (2009).  Defendant's choice not to perform a complete title examination was done so at their own risk. See Ex. B, Aff. D. Mackall & Ex. C, Aff. N. Title.; see also Shaheen, 265 Va. at 477.  When Plaintiff brought the ROW to their attention, Defendant performed a complete and proper title examination noting the ROW on the title abstract.  See Ex. Q, excerpt of Wilbur report.  Defendant had constructive notice of the ROW

---

[44] See Joint Ex. 1 Dedication Plat; Ex. A Sunderman Survey & Ex. E 1950 Arlington Survey; see also Joint Ex.'s 10 & 11.
[45] See. Ex. F J. Williams Dep. p 104.
[46] See FN 27 supra.

recorded in their chain of title, therefore, as a matter of law, the court should grant summary judgment in favor of Plaintiff and declare the ROW valid and enforceable.

**3.   DEFENDANT FAILED TO MEET IT'S BURDEN TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE PLAINTIFF INTENDED TO ABANDON HER RIGHT OF WAY**

Plaintiff did not abandon her ROW granted by written deed and appurtenant to Plaintiff's property. *Mere non-use of an easement created by deed, for a period however long, will not amount to abandonment*. Pizzarelle v. Dempsey, 259 Va. 521, 528 (2000) (emphasis added).   Under Virginia law, to deem an easement created by deed abandoned, the party claiming abandonment must show by clear and convincing evidence either (a) intent by the easement holder to abandon through acts or circumstances "clearly manifesting" such intent coupled with non-use, or (b) non-use coupled with adverse use by the servient owner.  Hudson v. Pillow, 261 Va. 296, 302 (2001).  The easement holder must acquiesce to such adverse use for the prescriptive period of 20 years.  Id.  However, use of an easement by a servient owner *is permissible*, and not adverse under the Virginia law, if such use does not interfere with the rights of the easement holder. Walton v. Capital Land Inc., 252 Va. 324, 326 (1996).

In the case at hand, Defendant has failed to meet its burden of proof to show the ROW was abandoned by Plaintiff.  Hudson, 261 Va. 302, (party claiming abandonment has burden of proof by "clear and convincing evidence").  To the contrary, the record shows the apparent use of the ROW starting in the 1930s.[47]  The ROW was logical, reasonably necessary and apparent for access to the rear entrances of the dominant estate owners' buildings.[48]  Rear access to the

---

[47] See Joint Ex. 10, 11 & 16; see also Ex. A, Sunderman Survey & Ex. E, 1950 Arlington Survey.
[48] Id.

benefitting lots of the dominant estate[49] would be eliminated upon the release of part of Lots 217 and 241 without the reserved ROW.[50]  Such access was validly created in the 1932 Deeds of Partial Releases, and there is no clear and convincing evidence on the record of intent to abandon the ROW.

Furthermore, the record establishes that in 1956 Plaintiff's family opened a restaurant on the dominant estate and used the ROW daily for ingress/egress to get to work. When Plaintiff purchased the dominant estate in 1963, the ROW was discussed at settlement and Plaintiff was told the ROW conveyed with the purchase and Plaintiff was also given a copy of the Sunderman Survey which showed the boundary of the ROW at the settlement.[51]  Plaintiff testified she, her co-owners and agents have used and continued to use the ROW in dispute until blocked by Defendant in 2007, and therefore, have shown no intention of abandoning the ROW.

Over the past 50 years, Plaintiff's use has been more frequent in some years than others. However, Plaintiff and her family testified the use of the ROW has been open and continuous for over 50 years in which she and her family have owned the dominant estate.  For over 10 years, from 1956 through the late 1960s, Plaintiff's husband drove over the ROW everyday on his way to work to park and access the rear door of Plaintiff's restaurant.  The restaurant business was sold to a new owner around 1968; however, Plaintiff, her husband and co-owners continued to own and use the ROW for ingress and egress to Lots 238, 239 and 240 of their property.  In addition, the trash and oil bins for Plaintiff and her tenants are located in the rear of the property and the ROW may be used for ingress/egress access to remove the trash.

---

[49] Lots 238, 239 & 240, part of Pl.'s current property.
[50] See Ex. A, Sunderman Survey.
[51] Id..

Furthermore, Arlington Virginia Division of Surveys performed a survey of the land in 1950 and the ROW was noted on the face of the survey with a direct reference to the deed book and page of the Woodward Deed of Partial Release which created the ROW.  <u>See</u> Ex. E 1950 Arlington Survey. The 1950 Arlington Survey is contained in the mapping records of Arlington County's public works offices for the subdivision referred to as "Wood Harmon's Addition to Clarendon."  <u>See</u> Ex. C Aff. Title; <u>see</u> <u>also</u> Joint Ex 1.  The 1950 Arlington Survey is available for inspection and copying by any inquiring member of the public.  <u>See</u> Ex. E, 1950 Arlington Survey; <u>see</u> <u>also</u> Ex. C, Aff. Title.

Plaintiff's in-laws, also co-owners of the property, physically resided on Plaintiff's property for at least 14 years, until 1979, and used the ROW daily as needed.[52]  Furthermore Plaintiff and her husband continued to use the ROW for ingress and egress to their property. Plaintiff used the ROW for ingress/egress to drive over and park in the rear of Plaintiff's buildings when necessary and when they had time to visit their property to check on tenants and collect rent.  From 1979 through 1997, Plaintiff, her husband and mother-in-law continued to visit the property using the ROW to manage her tenants, collect rent and keep an eye on the property.     In 1990, Plaintiff's daughter and son-in-law opened a sandwich shop on the corner (Sam's Corner), and have used the ROW as needed, until Defendant erected a fence completely blocking access to the ROW on March 19, 2007.

Plaintiff's act of putting a chain link fence up on her own property, *not on the ROW*, does not demonstrate intent to abandon her ROW.  The reason and intent for putting the fence up was to prevent trespassing on Plaintiff's property.  <u>Id</u>.  Plaintiff testified that her neighbor's tenant was continuously trespassing on Plaintiff's property and dumping trash and oil on

---

[52] See Ex. I, First Resp to Interrogs No.4¶3

Plaintiff's property.  Id.  Plaintiff asked the neighbor to make his tenants stop, but he refused and the trespassing continued.  Id.   In order to stop the trespassing, Plaintiff put a movable fence up on her property.  Id.  Plaintiff, the dominant estate holder, installed a movable fence *completely within the boundary of her property and not blocking the ROW*,[53] to prevent trespassers from using her trash and oil bins.[54]

The fence was installed in 1995, removed in 2007, and was not permanent, nor did it prevent Plaintiff from using the ROW to access her property.[55]  Plaintiff's daughter and son-in-law testified they wanted a gate, but due to the configuration of the property, the fence contractor informed them a gate was not feasible.[56]  Therefore, a fence was installed but not locked on one side, and Plaintiff and her agents could, and did, move the fence when necessary. See Ex. L, Lee fence permit.

In Pizzarelle, the court ruled an easement remaining open and useable for some forms of ingress/egress, is not abandoned.  Pizzarelle, 259 Va. at 529.  Plaintiff's unlocked chain link fence, located entirely on Plaintiff's property and put up to prevent trespassers, did not completely or permanently block the ROW, thus, the ROW was still open and usable for some forms of ingress/egress.[57]  The placement of the fence was in a manner not interfering with Plaintiff's use of the ROW, and the mere act of erecting a fence does not alone establish intent

---

[53] See Ex. P Alta survey showing fence on Pl's property; see also Ex. N (photos)
[54] Pizzarelle, 259 Va. at 528-29 (This case is distinguished from Plaintiff's case because the court found intent to abandon when servient owner erected a fence and asserted control over the easement and the dominant owner did not object.)
[55] See Ex. L, Lee fence permit; see also Ex. F, and Ex. H
[56] Id.
[57] Id.

to abandon.[58]   Therefore, the fact that the Plaintiff put a fence on her own property, which did not prevent Plaintiff from using the ROW, is not clear and convincing evidence of Plaintiff's intent to abandon her ROW.

Moreover, other Virginia cases have found intent to abandon may be established by allowing overgrowth of large trees and dense bushes to take over the easement area. Pizzarelle, 259 Va. at 530, see also Hudson v. Pillow, 261 Va. 296, 303 (2001).[59]   These cases are distinguishable from Plaintiff's case because there is no evidence of a servient owner exercising control over the ROW with Plaintiff acquiescing, or servient owner requiring permission to use the ROW.   See Ex. F, G, H.   The ROW was continuously in use, there was no overgrowth of brush, the ROW was paved and Plaintiff's father-in-law, when alive, trimmed the brush in an effort to maintain the ROW. See Ex. G

According to Virginia law, a servient owner is permitted to use the easement as long as he does not interfere with the dominant estate's use and enjoyment of the easement. Walton, 252 Va. at 326.   In the present case, there is no evidence in the record establishing interference by any servient owner, nor any evidence of any servient owner objecting to Plaintiff's use of the ROW.   Moreover the servient owner's use presented was not adverse and did not completely or permanently block access over the ROW, [60] therefore, Defendant failed to meet its burden to establish by clear and convincing evidence the ROW was abandoned through acquiescence of an adverse use by servient owner.

---

[58] It is important to note Plaintiff's intent for installing a fence was to prevent trespassers and was still in use by Plaintiff. This is distinguishable from Pizzarelle where the servient owner erected a fence and the dominant owner did not object.  Pizzarelle, 259 Va. at 528-30.

[59] Abandonment established through non-use of an easement for many years shown by overgrowth and trees, locked gates and permissive use by servient owner.

[60] Pizzarelle, 259 Va. at 529 (still open to some forms of ingress/egress).

Defendant bears the burden to establish Plaintiff clearly manifested intent to abandon her ROW by "clear and convincing evidence." Hudson, 261 Va. at 303.  As the record stands, Defendant has failed to satisfy this burden.  Plaintiff has exercised her right to use the ROW over the past 50 years.  The ROW has never been completely or permanently blocked, and the use by servient owner was in accordance with his rights as property owner under Virginia law and did not interfere with Plaintiff's use and enjoyment of the ROW.[61]   Moreover, if the court does not find Plaintiff's use of the ROW sufficient, according to Virginia law, mere non-use of an *easement created by deed* is not clear and convincing evidence of intent to abandon. Pizzarelle, 259 Va. at 528.

The ROW was created in a written deed for Lots 238, 239 and 240 all of which are part of Plaintiff's current property, and over the 50 years Plaintiff has occupied the property, there is no evidence of any act or intent to abandon her ROW.   The record is insufficient to establish the essential elements of a claim of abandonment.  Thus, Defendant did not meet his burden of proof as claimant of abandonment because he failed to establish the necessary facts to extinguish a ROW by abandonment.  Pizzarelle, 259 Va. at 528.  Therefore, as a matter of law, when there is an absence of evidence to support a claim, in this case Defendant's claim of abandonment, the court is obligated to grant summary judgment for the Plaintiff.  Celotex, 477 U.S. at 323-23.

**B.    IN THE ALTERNATIVE, PLAINTIFF CLAIMS EASEMENT BY IMPLICATION AND/OR PRESCRIPTION.**

   **1.    THE "REAMY HOUSE" HAS AN IMPLIED EASEMENT FOR THE RIGHT OF WAY TO ACCESS THE SIDE AND REAR OF THE BUILDING**

---

[61] See Ex. F, Ex G, Ex H;  see also Walton, 252 Va. at 326.

Easements may be created many ways, including by implication.  <u>Russakoff</u>, 241 Va. at 139.  In order to create an easement through implication and pre-existing use, three elements must be established: (1) both the servient and dominant tracts originated from a common grantor, (2) the use of such easement was in existence at the time of severance, and (3) the use is apparent, continuous, and reasonably necessary to the enjoyment of the dominant estate.  <u>Id</u>. at 138-39.

### i.)        Common Grantor

Both Plaintiff's and Defendant's properties originate from the common grantor Lulu Follansbee  <u>See</u> Joint Ex. 2.  Pursuant to the 1926 Deed to Judson Reamy, Plaintiff's predecessor-in-title, Reamy obtained certain property as described in the Reamy Deed recorded in Deed book 246, page 12. <u>See</u>  Joint Ex. 2 & 3..  The surrounding property of the Reamy House, with the exception of one side fronting N. Irving Street, were owned by Follansbee, the common grantor at the time the Reamy House was severed.  <u>See</u> Joint Ex.2 & 3.  To the northeast of the Reamy House was another building and to the south and west of the building was empty property owned by Follansbee over which the easement was granted by implication. <u>See</u> Ex. A Sunderman Survey & Joint Ex. 2.  Therefore, as noted in the deeds recorded in the Arlington County land records, both the dominant and servient tracts originated from a common grantor Follansbee.

### ii.)        Easement in existence at time of severance

Second, at the time of severance of the dominant and servient estate, the easement was in existence.  In 1926, there was only one way to access the rear and south and west sides of the Reamy House.  <u>See</u> Ex. A Sunderman Survey.   In order for the owner of the Reamy House to use the rear entrance or conduct any maintenance on the building, the owner would have to

cross over and use the servient estate, Defendant's predecessor-in-title's land.  <u>See</u> Ex. F, G, H

& Ex. A Sunderman Survey.   An easement by implication can evolve where there is a

legitimate expectation of the right to access based on the surrounding circumstances of the

property such as the physical configuration of the property whereby visual inspection of the

property would give the reasonable expectation of a right of access.  <u>Russakoff</u>, 241 Va. at 140.

In this case, such expectation for ingress/egress access to the rear entrance of the

Reamy House and use for maintenance of the rear and sides of the Reamy House.[62]   Due to the

configuration of the Reamy property at the time of severance, there would be an expectation for

a right of access for the Reamy House.  At the time of severance the pre-existing use by grantor

for access to the rear entrance of the Reamy House, as well as for maintenance and upkeep of

the building, would have to be on and cross over the common grantor's retained property (now

the servient estate).  <u>Id</u>.  Therefore, under Virginia law and based on the foregoing facts, the

easement was in existence at the time of severance.

### iii.)  Easement is apparent, continuous and reasonably necessary.

Lastly, to create an easement by implication the use must be apparent, continuous and

reasonably necessary.  <u>Russakoff</u>, 241 Va. at 139.  When it would be apparent to any person

viewing the tracts as they existed at the time of severance, access over the servient estate is

reasonably necessary for the use and enjoyment of the dominant estate, such easement is

conveyed by implication. <u>Carter v. County of Hanover</u>, 255 Va. 160, 168 (1998).  In this case,

in 1926 Follansbee owned all land surrounding three sides of the building conveyed to Reamy

by deed, recorded in Deed book 246, page 12, the "Reamy Deed."   <u>See</u> Joint Ex. 3.   The

---

[62] <u>See also</u> Ex. A Sunderman Survey & Joint Ex. 3.

Reamy house fronts what is now N. Irving Street, yet had no access on its own property as conveyed by the Reamy Deed, to the rear entrance or sides of the Reamy House.  Id.

It is reasonably necessary and apparent that the owner of the Reamy House, at the time of severance, had to cross over Follansbee's land (the common grantor), Defendant's predecessor-in-title to access the rear and to perform any maintenance on three of the sides of the Reamy House.[63]  Therefore, it is reasonably necessary and apparent to any person viewing the property at the time of severance that access over the common grantor's lot conveyed by implication to grantee for the purpose of ingress/egress access to the rear door of the Reamy House and for maintenance of the sides of the Reamy House.

As stated in Plaintiff's deposition and shown in the record, Plaintiff and her co-owners have used the implied easement to access the rear of the Reamy House, and also to perform necessary maintenance on the Reamy House for over 50 years.[64]  The Reamy House has been used in many different ways over the past 50 years.  Plaintiff's in-laws lived in the Reamy House until 1979 and her father-in-law maintained the ROW by trimming the brush.  He actually died of a heart attack on the ROW while trimming the shrubbery in 1979. See Ex. G.

In addition, the building has been rented out periodically over the years for business, and more recently, has been used for storage by the Plaintiff's daughter and son-in-law who also maintain a business on the property.  See Ex. F.  Furthermore, Plaintiff's son-in-law has periodically used the easement to perform maintenance on the Reamy House, such as painting the building and balcony, making necessary repairs to the building, installing new rear door, use to access the utility room, etc.  The Plaintiff's use of the easement for access to the rear entrance and sides of the building has been continuous and apparent. See Ex. F, G, H.

---

[63] See Ex. A, Sunderman Survey.
[64] See Ex. F, G, H .

Finally, the use of such implied easement is reasonably necessary for the enjoyment of Plaintiff's property.   A grantor conveys everything necessary for the beneficial use and enjoyment of the property, and because a property owner cannot create an easement on one's own land, the pre-existing use of such "quasi-easement" conveys by implication to the purchaser. <u>Russakoff</u>, 241 Va. at 139.   In the present case, the easement is necessary for the beneficial use of Plaintiff's property.  If there is no implied easement, Plaintiff cannot access the rear entrance or the sides of the Reamy Building.[65]  The Reamy Deed conveyed only the property to which the building was built on.[66]  In order to access the rear entrance, or perform maintenance and upkeep on the Reamy House, Plaintiff reasonably needs the implied easement which conveyed to her with the purchase of the Reamy House for the use and enjoyment of the Reamy House.

The dominant and servient estates both originated from a common grantor, at the time of severance such easement was in existence and the use of the implied easement is apparent, continuous and reasonably necessary for the enjoyment of the dominant estate. Therefore, as the facts state above, Plaintiff has established and acquired by pre-existing use, an implied easement for the Reamy House because all elements to establish an easement by implication have been met.  There are no issues of material fact in dispute, therefore, as a matter of law, the court should grant summary judgment for Plaintiff and declare the implied easement valid and enforceable.

2. **<u>PLAINTIFF OBTAINED A PRESCRIPTIVE EASEMENT OVER THE RIGHT OF WAY</u>**.

---

[65] <u>See</u> Joint Ex. 3.
[66] <u>Id</u>.

If certain elements are met, an easement can be created by prescription. Russakoff, 241 Va. at 139.  The law for establishing an easement by prescription in Virginia is settled. Martin v. Moore, 263 Va. 640, 645 (2002).  The claimant must show by clear and convincing evidence that use of the ROW is adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the servient owner for more than the prescriptive period of 20 years. Id.  Furthermore, if the use is open, visible, continuous and unmolested for a 20 year period, the use will be presumed under a claim of right, and the servient owner then bears the burden to rebut such presumption by establishing the use was permissive.  Id.

In the current matter, Plaintiff's use of the ROW has continued uninterrupted and unmolested for over 50 years. See Ex. G.  Plaintiff, and her now deceased co-owners, used the easement area in dispute starting in 1956 and have continued to openly use such easement area as needed to perform maintenance or to access the rear of the Reamy House which is part of Plaintiff's.[67]

In the early years, Plaintiff's in-laws (co-owners), lived on the property and used the easement area in dispute for access to the Reamy House and when performing maintenance.  In 1979, after Plaintiff's father-in-law passed away while trimming the brush on the easement area in dispute, Plaintiff, her husband, mother-in-law and other tenants of the Reamy House continued to use the easement area in dispute as needed to maintain the Reamy House or access the rear entrance.

Plaintiff used the easement area whenever performing maintenance to the Reamy House which directly abuts the easement area in dispute.[68]  Plaintiff's maintenance include

---

[67] See Ex H .
[68] See Ex. F, G, H

painting the building, making any necessary repairs to the brick, roof or balcony and replacing the rear door of the Reamy House. See Ex. G & H

Plaintiff, her daughter and son-in-law all testified in their depositions that no one has ever, over 50 years of use, objected to Plaintiff's use of the easement area in dispute.[69] Moreover, after all discovery, pleadings, and interrogatories, there is no evidence of anyone objecting or preventing Plaintiff from using the easement area in question until Defendant erected their fence in 2007.  See Complaint ¶ 17; see also Def.'s Ans. ¶¶ 21 & 22.

Plaintiff's use of the easement area in dispute has been open, visible, continuous and unmolested for over 50 years; therefore it is presumed that Plaintiff's use is under a claim of right and is adverse.  Martin, 263 Va at 646.  Therefore, the burden shifts to Defendant, the servient estate holder, to rebut the presumption, and prove Plaintiff's use of the easement area for the Reamy House was permissive.  Id.  Plaintiff and her agent's testified they never asked permission to use the easement area.  See Ex. F, G, H.  Plaintiff and her family began using the easement area in dispute in 1956 and have continued to do so without interference until Defendant erected a fence March 19, 2007.  See Ex. G.

There is no evidence in the record showing Plaintiff's use was permissive.  In Martin, the court states there must be a "positive showing: sufficient to establish permissive use."  263 Va. at 647.   Moreover, Defendant has not presented sufficient evidence to rebut the presumption Plaintiff's use was under a claim of right and was, therefore, adverse.  Thus, Defendant failed to meet its burden.  When the evidence on record is not sufficient to support a claim, the court is obligated to grant summary judgment.  Therefore, as a matter of law, the

---

[69] Id.

court should grant summary judgment in favor of Plaintiff declaring the easement by prescription valid and enforceable.

## V.     CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Plaintiff.


Dated:  August 25, 2009.


Respectfully submitted,


SUN YUNG LEE
By Counsel


SHER CUMMINGS AND ELLIS

_____/s/_____
Mark Cummings, Esq.
VSB # 18271
Attorney for Sun Yung Lee
Sher, Cummings & Ellis
3800 North Fairfax Drive, Suite 7
Arlington, Virginia 22203
Phone: (703) 525-1200
Fax: (703) 525-0067
Email: mcummings@SherandCummings.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

E.Andrew Burcher, Esq., VSB # 41310
G. Evan Pritchard, Esq., VSB # 47309
WALSH, COLUCCI, LUBELEY,
EMRICH & WALSH, P.C.
4310 Prince William Parkway, Suite 300
Prince William, VA 22192
Phone: (703) 680-4664
Fax: (703) 680-2161
eaburcher@thelandlawyers.com
gepritchard@thelandlawyers.com


                                 _____/s/_____
                                 Mark Cummings
                                 VSB # 18271
                                 Attorney for Sun Yung Lee
                                 Sher, Cummings & Ellis
                                 3800 North Fairfax Drive, Suite 7
                                 Arlington, Virginia 22203
                                 Phone: (703) 525-1200
                                 Fax: (703) 525-0067
                                 Email: mcummings@SherandCummings.com