IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

|  |  |  |
|---|---|---|
| SUN YUNG LEE | ) | |
|     Plaintiff, | ) | Case No. 1:09CV402 |
| v. | ) | |
| | ) | |
| ZOM CLARENDON, L.P. | ) | |
|     Defendant. | ) | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, SUN YUNG LEE, by counsel, and hereby submits her response in opposition to Defendant's Motion for Summary Judgment.

PRELIMINARY STATEMENT

Plaintiff asserts three separate claims over Defendant's property: (1) an expressly recorded easement for ingress/egress for the benefit of lots 238-240 of which Plaintiff owns; (2) an implied easement for the benefit of lots 217 and 241, which Plaintiff also owns, [hereinafter Reamy Property or Reamy House], and (3) a prescriptive easement also for the benefit of Plaintiff's lots 217 and 241, the Reamy Property.

Plaintiff's claim that she is the holder of an express easement for a Right of Way [hereinafter ROW] recorded in the Arlington County land records is based on the undisputed fact of a recorded easement in Defendant's chain of title. The "undisputed facts" Defendant puts forth in its Memorandum in Support are in fact irrelevant and disputed.[1] Defendant's assertion that creation of the easement was not valid because it did not contain words of grant or proper signatories, and there was unity of title, is unsupported and incorrect. Therefore, the Court should deny Defendant's Motion and grant Plaintiff's Motion declaring the ROW valid and enforceable.

In addition, Plaintiff's separate claim of an implied easement for the Reamy Property has been established by clear and convincing evidence and is reasonably necessary for the enjoyment of Plaintiff's property. Furthermore, Plaintiff established a claim of right for her prescriptive

---

[1] Defendant incorrectly focused on the trustees powers which are not relevant in this dispute.

easement claim.  Use of the easement area for the Reamy Property was separate, and for a different purpose than the use of the express ROW for ingress and egress purposes.  The prescriptive easement claim is adverse, and not under the mistaken belief of a recorded right.

Finally, Defendant failed to meet its burden of proof for its claim of abandonment. To the contrary, the record shows Plaintiff's extensive use of the ROW and easement area for over 50 years, clearly rebutting any claim of nonuse.  Moreover, Plaintiff's use has not been interfered with until March 2007 when Defendant blocked Plaintiff's access.

I.    STATEMENT OF THE FACTS

Defendant's "undisputed facts" are irrelevant or misstatements of the record and are disputed by the parties.

1.   **The Demonstrative Exhibits prepared by Defendant's Counsel are misleading and do not accurately reflect the deeds.**

The demonstrative exhibits attached to Defendant's Memorandum do not accurately depict the Joint Exhibits or Joint Statement of Uncontroverted Facts submitted by counsel.  The demonstrative exhibits were not prepared jointly or approved by Plaintiff's counsel to represent the Joint Exhibits. Defendant's statement ·that they were to "accompany the majority of the Joint Exhibits..to assist the Court's understanding of the various conveyances" is misleading. Def. Mem. in Supp. n.1.  The demonstrative exhibits are completely biased and ignore Plaintiff's recorded easement. Defense counsel created these exhibits to reflect Defendant's claims in the case, and they do not represent undisputed facts.  Defendant's counsel is not qualified as an expert to establish the effect of the conveyances on the properties shown.

2.   **Defendant failed to perform a proper title examination.**

Defendant claims it procured a title examination that "disclosed no easements of record benefiting the property of the Plaintiff;" however, according to Virginia law, this is irrelevant because a purchaser is on notice, constructive or actual, of all recorded instruments.  In any event, Defendant failed to produce any proof of its due diligence prior to notification by Plaintiff of her ROW.  In fact, the evidence produced by

Defendant's own expert, Lawrence Wilbur, directly contradicts this assertion. Wilbur performed a title examination in October 2007 and found the relevant instruments. Pl. Ex.J & Q. It is significant that Wilbur clearly noted in the <u>Objections and Examiner's Notes</u> of Defendant's title abstract: "Partial Releases in 331-308 & 331-310 contain ingress-egress for benefit of lots 238-240 over subject property." Pl. Ex. Q.

Moreover, Defendant's expert Robert Gordon stated that "technically the Deed of Release is in the 'chain of title'...if you search the grantor/grantee indexes back and find every single deed of conveyance back to before 1928 (an 80 year search)." Pl. Ex. K (p4 ¶3). Gordon incorrectly asserts there is a 60 year limit for a title search. <u>Id</u>. This assertion directly contradicts Virginia law, which states recording an instrument in the land records is constructive notice to any subsequent purchaser of all facts expressly stated and suggested through prudent inquiry.[2]

In addition, Plaintiff's experts all stated a proper title examination requires the examiner go to the original plat, and that an examiner is on notice from the provisions in the deeds referencing any restrictions, reservations, or rights of way of record. The examiner must look to the chain and report all encumbrances.[3] Mr. Gordon's standard of title searching suggests in 1950 the deeds would be valid and in the chain, but in 2006 all deeds prior to 1946 are no longer in effect. This is erroneous and contrary to Virginia law. Any title examiner performing due diligence in this manner does so at a calculated risk. <u>Id</u>. The deeds in Defendant's chain of title from the 1920s and 1930s are just as valid today as they were in 1950; therefore, Defendant had constructive, if not actual, notice of such deeds and encumbrances.

    3.    **The temporary movable fence Plaintiff put up due to trespassing was entirely located on her property and did not block the ROW.**

Defendant's own survey clearly illustrates Plaintiff's property line and proves Plaintiff's claim that her fence was entirely within her

---

[2] VA. CODE ANN. § 55-96 (2009); <u>Chavis v. Gibbs</u>, 198 Va. 379, 382 (1956); <u>Shaheen v. County of Mathews</u>, 265 Va. 462, 477 (2003).
[3] Pl. Ex.B Aff.(Ex.2, p2-3); Pl. Ex.C Aff. ¶7&(Ex.3,p3); Pl.Ex.D Aff. Ex.2.

property and did not block access to the ROW. Pl. Ex. P (a highlighted copy attached hereto, blue line is Pl.'s property, pink line is Pl.'s fence and yellow line is Def.'s fence erected in 2007). Furthermore, Plaintiff's fence does not establish intent to abandon. The fence was a temporary fix to a trespass problem and did not block the ROW. Plaintiff continued to use the ROW by moving the fence when they wanted or needed to gain access.[4]

    4.    **Defendant's discussion of site plan approvals and notice are irrelevant.**

Plaintiff was not properly notified of the site plans by Faison, the original developer, who actually obtained approval and sold the approved site plan #392 to Defendant along with the property.[5] Plaintiff fully expected her rights to be respected as they had been for more than 50 years, and as soon as Defendant obstructed her access she immediately notified Defendant. Pl. Ex. M. Moreover, there was continuous correspondence between Plaintiff's lawyer, [Lawrence] and Defendant regarding the ROW, beginning in March 2007.[6]

Defendant's assertion it believed there was no easement is not a defense under Virginia's law of constructive notice. Defendant's lack of due diligence in examining its title at the time of purchase in 2006 created this problem. Under Virginia law, Plaintiff had no obligation or duty to inform Defendant of her validly recorded ROW in the Defendant's chain of title.

    5.    **Defendant claims a sole document is the basis Plaintiff's claim. The record clearly shows this statement is inaccurate and irrelevant under Virginia's law of constructive notice.**

An express easement need only be created in one instrument and recorded; all subsequent purchasers are on record notice regardless if it is mentioned again or not. Shaheen, 265 Va. at 477. Moreover, a purchaser must look to the title papers under which he buys, and is charged with notice of all facts appearing on their face, or to the knowledge of which anything

---

[4] Pl. Ex. U D. Williams Aff. ¶5-9; Pl. Ex. H D. Williams Dep. at 23:14-23; 24:1-23; 28:16-23.
[5] Jt. Ex. 36 p2¶3; Pl. Ex. F, F-1 J. Williams Dep. at 45:11-23; 46:1-11.
[6] Pl. Ex. M & R. (Defendant responded in April, letter from Lawrence in July, follow up phone call August 2nd, and letter August 15th).

there appearing would disclose.  Id.  Thus, Defendant's assertion of a "sole document" is irrelevant to Plaintiff's claim because the ROW was recorded in Defendant's chain of title; therefore, Defendant had constructive notice of its existence.

Moreover, in this case the ROW was clearly manifested on the face of at least two instruments recorded; the Ball Deed of Partial Release[7] and the Woodward Deed of Partial Release.  In addition, the provisions in the subsequent deeds all expressly state the conveyance was made subject to the restrictions, reservations and/or rights of way of record.[8]

6.    **Plaintiff's use is clear and extensive.**

First, it is significant to note that Defendant has *no* personal knowledge of Plaintiff's use of the ROW.  They purchased the Zom property in December 2006, 50 years after Plaintiff starting using the ROW and easement area, and it has been a vacant lot for about 2 years.  Defendant does not go to the vacant lot often and has offered no evidence of personal observation of Plaintiff's use, or lack thereof, of the ROW, easement area.

On the other hand, Plaintiff's use is clear, extensive and based on personal knowledge.  Plaintiff's family opened a restaurant on the property in 1956 and used the ROW to drive to work and park every day for at least 10 years, until the restaurant was sold in the late 1960s.[9]  Plaintiff's in-laws resided on Plaintiff's property in the Reamy House abutting the ROW for at least fourteen years, and maintained the ROW and easement area until 1979.[10]

From 1979 through the early 1990s, Plaintiff's mother-in-law, her co-owner, continued to use the ROW for ingress/egress access to Lots 238-240 of Plaintiff's property, in particular to collect rent and meet with the tenants.  Pl. Ex. F J. Williams Dep. at 23:9-23; 24:1-23; 25:1-4.  In 1990,

---

[7] The Ball Deed of Partial Release was effective at the conveyance to Hannah Hedrick in 1932, and continued to be in effect until the 1935 foreclosure; therefore, it is relevant in the analysis of title. Jt. Ex. 13.
[8] See Pl. Ex. S (excerpt of Jt. Ex.'s highlighting references); see generally Pl.'s Ex. A & E for additional survey references.
[9] Pl. Ex. T Aff. Pl. ¶ 3; Pl. Ex. G Pl. Dep. (errata) at 25:16-18; 33:20-21; 34:1-2; 40:16-23; 41:1-12; 42:1, 43:18-19; Pl. Ex. F J. Williams Dep. at 14:19-23; 15:13, 23; 18:13-16; 20:1-6 19-20; 21:6-12.
[10] Pl. Ex. T Pl. Aff. ¶¶ 4,5; Ex. G Pl. Dep. (errata)at 12:21-23; 29: 14,15,17-23; 43:18-19;  Pl. Ex. F J. Williams Dep. at 25:5-15; 41:7-13.

Plaintiff's daughter and son-in-law, Don and Jeannie Williams, opened and continue to operate a sandwich shop on the corner and use the ROW when necessary for ingress/egress access to Plaintiff's property.[11]

Moreover, Plaintiff visited the property and used the ROW to help her daughters in their carry-out business, and also to perform ceremonies to honor her ancestors.  Pl. Ex. T Pl. Aff. ¶¶ 7,9.  Plaintiff never asked permission to use the ROW; her use of the ROW was not interfered with or interrupted until March 2007 when Defendant erected a fence blocking access.[12] Plaintiff has consistently established her use of the ROW for over 50 years.

Furthermore, the evidence offered by John Strother [hereinafter Strother] is not credible.  Strother fully admits to using drugs starting in the 1980s and continuing until about three years ago.[13]  Moreover, Strother worked in a print shop inhaling paint fumes for 30 years, and stated it affected his health and memory.[14]  Channing Strother, John's father purchased the property over which the ROW runs in 1979, (23 years after Plaintiff's use began) and Strother later became the owner after his father passed away in 1999.[15]

Strother stated he could not see the ROW while at work and did not smoke on the property when his father was there (up until 1999).[16] Significantly, Strother stated he frequently went out on deliveries during the day, up to 15 a week, for an hour at a time.[17]  Strother's personal knowledge of the ROW is unreliable and limited at best.  Moreover, use is irrelevant to the express easement claim; it only pertains to the implied and prescriptive claims.

<u>II.   ARGUMENT</u>

I.   <u>PLAINTIFF IS THE HOLDER OF A VALID EXPRESS EASEMENT.</u>

   A.   <u>Express easement and construction of deeds.</u>

---

[11] Pl. Ex. T Pl. Aff. ¶¶7-9; Pl. Ex. F J. Williams Dep. at 8:13-18; 27:7-11; 104:11-18; Pl. Ex. H D. Williams Dep. at 7:15-21; 14:2-23; 28:10-23; 29:1-7.
[12] Pl. Ex.T Pl. Aff. ¶¶6,7,12&13; Pl. Ex.H D. Williams Dep. at 24:20-23; 25:1.
[13] Pl. Ex. V J. Strother Depo. at 7:11-16, 8:2-19, 9:12-15.
[14] <u>Id</u>. at 12:14-22; 13:1-5; 36:20-22; 37:1-2; 40:9-22; 41:1-7; 77:7-20.
[15] Jt. Ex. 33; Pl. Ex. V J. Strother Depo. at 31:18-20; 32:3-7.
[16] Pl. Ex. V J. Strother Depo. at 25:11-19; 39:21-22; 40:1-8; 77:21-22; 78:1-3, 4-12; 96:21-22, 97:1-4.
[17] <u>Id</u>. at 78:1-3; 97:3-22; 98:7-10.

Defendant cites <u>Buckles v. Kennedy Coal Corp.</u>, stating in order for Plaintiff to prevail on her express easement claim, Plaintiff must show by preponderance of the evidence her claim was validly created.   134 Va. 1 (1922).   However, this case specifically concerns a "parol grant," an easement that was not written or recorded in a deed, but created only through part performance.   <u>Id</u>.   This is distinguishable because Plaintiff's claim is for an express easement written and recorded in the land records.

Virginia courts have established the standard for reviewing an express easement by deed is to determine the rights of the parties, "where an easement has been granted or reserved by deed, the ordinary rule which governs in the construction of other writings prevails," such rights must be determined by the words of the deed.   <u>Hamlin v. Pandapas</u>, 197 Va. 659, 663-64 (1956).   If the language is clear, the court should look only to the four corners of the instrument; however, if such words are ambiguous, the court may look to surrounding circumstances at the time the deed was executed.   <u>Pyramid Dev., LLC v. D&J Assocs.</u>, 262 Va. 750, 754 (2001).

The language of the Deed of Partial Release reserving the ROW stated B.M. Hedrick sold certain land, and paid part of his debt to the note-holder who then executed a partial release which stated:

> NOW,   THEREFORE…grant and convey…part of the land conveyed by the…deed of trust…
> All of Lot...*subject however*, to a <u>*right of way*</u> *for ingress and egress purposes for the benefit of <u>the owners of lots 238, 239 and 240</u> over the following portion of the land hereby released* and contiguous thereto, said right of way being bounded and described as follows…
> The lien of the aforesaid deed of trust is to remain *in full force and effect* as to the balance of the said *land not hereby released*. [emphasis added]

Jt. Ex. 11.   The language is not ambiguous, the purpose was specifically expressed, the ROW described in metes and bounds, and grantees were named. <u>Hamlin</u>, 197 Va. at 666.

Furthermore, it is clear from the language that the note-holder *who signed* the partial release, specifically *did not release* the ROW from the lien of the Deed of Trust.   Upon foreclosure of the Deed of Trust, the ROW became a present right of entry for the purchasers under the Trustees' Deed

now owners of lots 238-240 (Pl.'s predecessor-in-title). Pl. Ex. C Aff. ¶6. At foreclosure all land, title, interests and rights under such lien were conveyed to the purchaser, including the ROW.

In acquiescence to the partial release, B.M. Hedrick sold the land released to Hannah Hedrick [Hannah Deed] subject to the reservations of record, and recorded such deed in 1932 *after* the Deed of Partial Release. The Hannah Deed (Def.'s predecessor-in-title) conveyed parts of lots 217 and 241 still encumbered by the lien of the Deed of Trust and the reservation in the Deed of Partial Release.   The Hannah Deed itself expressly stated the conveyance was "subject to the restrictions and reservations of record. The said parties of the first part [B.M. Hedrick] covenant…they have done no act to encumber the said land except as duly recorded." Jt. Ex. 13 (p.2 ¶ "TOGETHER with").

Hannah Hedrick subsequently conveyed this property to Charles Schott in June of 1936. *Significantly*, Hannah conveys the land: "subject to the restrictions, reservations *and right of way of record*." Jt. Ex. 17 (p.2 ¶1 "The said land").  Notably, this conveyance occurred *after* the foreclosure sale recorded in the Trustees Deed.   The Hannah to Schott conveyance is consistent with, and recognized, the foreclosure and subsequent sale of the Deed of Trust property which validated and created the present right to use the "right of way of record" by the purchaser under the Trustees' Deed.   It is singular because at this time there were no other rights of way of record encumbering the land conveyed.[18]  Upon foreclosure, the ROW was also evidenced by the Sunderman Survey certified in 1935 (Pl Ex. A), and later in the 1950 Arlington Survey (Pl Ex. E) and by the subsequent use of the ROW for ingress and egress purposes by Plaintiff starting in 1956, all of which further established such ROW was a recognized valid right.

B.   **Virginia law does not require words of grant to create an easement**

Defendant's argument there are no words of grant fails, because under Virginia law, to create an easement, "neither statutory nor common law requires a grantor to employ words of art so long as 'the intention to

---

[18] Pl.'s Ex. J Wilbur's report and title examination (Def. Ex. 33).

'grant' is manifest that no other construction could be put upon it."
Corbett v. Ruben, 223 Va. 468, 471, (1982). The Defendant cites,
Chesapeake & Potomac Tel. Co. v. Properties One, as authority claiming the
Deed of Partial Release on its face is not sufficient to create an
easement. 247 Va. 136, 140 (1994). However, this case was based on use of
a public alley and the "easement" was in an unrecorded document which
stated party A "stipulated that, if future use of the alley should
interfere with [party B]'s equipment, then party A would 'make
such...changes, as may be necessary to enable party B to make the same use."
Id at 137. The court ruled this language did not manifest intent to create
an easement. Id. at 140.

     This case is distinguishable from Plaintiff's claim, first, because
the ROW in dispute was recorded in the land records, and second, the
language in the Deed of Partial Release clearly specified and intended to
reserve of a right of way. Jt. Ex. 11. The ROW was described in metes and
bounds, a purpose was designated for its use, and the grantees were
identified. No other construction of the language in the Deed of Partial
Release can be construed and reservation of the ROW was clearly manifested
on the face of the Deed of Partial Release. Moreover, the Deed of Partial
Release was duly signed, acknowledged and recorded according to Virginia
law; thus, the ROW of record is valid. See infra §II.I Part C.

     Furthermore, Defendant incorrectly states the words "subject to"
cannot create affirmative rights. See Def. Mem. in Supp. p.11. The words
"subject to" are generally not used to create an easement, *however, use of
such phrase is not dispositive.*[19] Both Davis and Corbett state there are no
specific words required to create an easement. Davis, 250 Va. at 274-75;
Corbett, 223 Va. 472-74 (1982). When construing deeds, it is the duty of
the court to *ascertain the intent* of the parties from the language used,
the general purpose and scope of the instrument in light of the surrounding
circumstances. Davis, 250 Va. at 274 (emphasis added).

---

[19] Davis v. Henning, 250 Va. 271, 274 (1995); see also Corbett v. Ruben, 223
Va. 468, 474 (1982) (explaining "subject to" subjects the estate conveyed
to the *burden* of easements to which it is servient).

In Davis, the court ruled that "under the circumstances of *this case*, the language did not create a new easement." 250 Va. at 275 (emphasis added). Davis is distinguishable from Plaintiff's case because in Davis the deed using the "subject to" language was specifically referring to a prior recorded deed that created the easement which was no longer valid; therefore, under the circumstances there was nothing to subject the deed to and, thus, there could be no easement. Id. On the contrary, the circumstances in the Plaintiff's case are very different. The words used in the Deed of Partial Release, "subject however, to a right of way for ingress and egress purposes," specifically set out and described the ROW intended to be reserved at that time, not in reference to any prior easement.[20] Jt. Ex. 11.

When looking at the surrounding circumstances of the partial release, the economic situation in the 1930s, and the natural and ordinary meaning of the words used, it is clear the note-holder intended to reserve a ROW in the Deed of Partial Release to retain the best value for the encumbered land under the Deed of Trust. Davis, 250 Va. at 274. The words "subject to" are not dispositive and the court should look to the intent of the parties and surrounding circumstances to ascertain the rights of the parties. The note-holder agreed to a partial release on the condition that a ROW was reserved to retain the highest value of her lien in case of default. In light of the circumstances surrounding the execution of the Deed of Partial Release, the intent was clear to retain a lien over the land creating the ROW. See e.g., Pl. Ex. X (excerpt Pl. Ex. D Aff. Foster (Ex.2 Ex.B p6), example of a ROW reserved in a partial release of a lien of a deed of trust).

Moreover, Davis and Corbett were decided 50 years after the reservation of Plaintiff's ROW was made. In 1938, the Virginia Supreme

---

[20] See, e.g., Buxton v. Murch, 249 Va. 502 (1995) (1939 court had power to reserve a ROW on behalf of an incompetent to pay debt if it promoted the interests of the incompetent. This is similar to Plaintiff's case where the note-holder reserved a ROW to promote the best interests of the land remaining under the lien of the Deed of Trust and did not disturb or impair any vested right. The reservation coupled with subsequent treatment of the ROW is consistent with the creation of an express ROW.

Court ruled that in determining whether a grant of an easement was made, "the court must look to the intent of the parties, gathered from the language used and the general purpose and scope of the instrument." <u>Hale v. Davis</u>, 170 Va. 68, 71 (1938). In <u>Hale</u>, there were no terms of grant, and the court ruled that because the right of way was separately described by metes and bounds in the deed from the land conveyed, there was no other construction of the intent other than to grant a "right of way" easement. <u>Id.</u> at 71-72. In the present case, the Deed of Partial Release released certain parcels of land described by metes and bounds, and specifically subjects that conveyance to a separate description in metes and bounds of the reserved ROW. Thus, the note-holder's intent can be construed no other way but as retaining the lien over the ROW not released.

When intent of the parties appears by giving the words of the deed their natural and ordinary meaning, technical rules of construction will not be invoked. <u>Davis</u>, 250 Va. at 274. As such, the natural and ordinary meaning of the Deed of Partial Release shows the intent of the note-holder was clearly to condition the partial release of her lien and reserve the ROW, retaining the highest possible value of the encumbered land;[21] therefore, Defendant's argument of "no words of grant" fails and the ROW is valid.[22]

C.    **Valid reservation of ROW by note-holder**

First, Defendant's argument regarding the powers of the trustee is irrelevant here. Plaintiff's ROW was reserved under the power and authority of the note-holder, not the trustee. In 1932, the note-holder (lienor) validly reserved a ROW as part of the partial release of the land encumbered by the Deed of Trust lien. Defendant's claim that the easement was not valid because only an owner in fee simple can create an easement is incorrect; Defendant left out the key part that the easement contemplated

---

[21] See <u>generally</u> Pl. Ex. W-1 Washington Post Article, March 1932, evidencing the importance of parking in Clarendon, notably, the cases were sent to *Judge B.M. Hedrick*.

[22] See n. 20; <u>see also</u> <u>Corbett</u>, 223 Va. at 474 (1982) ("subject to" subjects estate conveyed to *burden* of easements to which it is servient).

in <u>Belle View</u> stated only a *perpetual* easement can be created by the fee simple owner and was in reference to a condemnation procedure.[23]

This is distinguishable from the case at hand because the ROW reserved in the Deed of Partial Release *was not perpetual* at the time of reservation, it was only to last as long as the Deed of Trust encumbered the property.  Pl's Ex. C Aff. N. Title ¶ 6.  The reserved ROW would have ceased to exist had the property owner, Judge B.M. Hedrick[24] paid off the entire lien of the Deed of Trust; however, this was not the case. Foreclosure ensued and the note-holder directed the trustee to sell the land subject to the Deed of Trust lien.[25]  At such time in 1935, all rights, title and interests of the note-holder were conveyed to the purchaser under the Trustees' Deed "LESS AND EXCEPT, the land released by deed recorded in Deed Book No. 331, at page 310,"[26]  the ROW was never released; therefore, it conveyed with the foreclosure sale under the Trustees Deed.  Jt. Ex. 16 (last page).

Because the ROW was reserved by the partial release and not released, the use of the ROW subsequently conveyed and became a present right of entry upon the sale in 1935.  Accordingly, the subsequent conveyances of the servient estate are consistent with such right being validated in 1935, and Plaintiff can testify as far back as 1956 to consistent use of the ROW based on the recorded easement.[27]  <u>See</u> supra §§ I.6, II.I.A ¶¶ 5-6.

Second, the Defendant's argument that B.M. Hedrick was a required signatory to the Deed of Partial Release is incorrect.  B.M. Hedrick wanted to sell certain parcels of land encumbered by the Deed of Trust and in order to sell he needed the note-holder to agree to a partial release.  The note-holder did not have to release anything until the entire Deed of Trust

---

[23] <u>United States v. Belle View Apartments</u>, 217 F.2d 636, 637-38 (1954) (emphasis added).
[24] <u>See</u> n 22.
[25] Trustee authorized to sell the land upon default. Jt.Ex.6 (p3¶2).
[26] <u>See</u> Pl.Ex. C Aff. ¶6 & Ex.2 p2 ¶¶2&3 partial release did not release ROW from the lien, duly signed by note-holder in accordance with Virginia law.
[27] <u>See</u> Ex. T Pl. Aff. ¶ 3; <u>see also</u> <u>Buxton</u>, 249 Va. at 507 (subsequent treatment consistent with creation of an express easement...reference in subsequent surveys formerly designate [the lot] as encumbered by an express easement).

was satisfied. Moreover, Hedrick could have objected to the conditioned release, but the evidence on the record supports he accepted the partial release.[28]

Significantly, there is no Virginia law supporting Defendant's position that a property owner is required to sign a partial release. The Virginia Code does require a creditor (note-holder) to sign: "to accomplish a marginal partial release, a *creditor or his duly authorized agent*, must make affidavit to the clerk …*such partial release shall be valid and binding as a proper release deed duly executed*." Va. Code Ann. § 55-66.4 (emphasis added). In this case, the note-holder signed the Deed of Partial Release and reserved the ROW under its lien. Such reservation did not disturb or impair any vested rights; therefore, the property owner was not required to sign.[29] The note-holder maintained a valid lien over the ROW until foreclosure, whereby it sold all its rights, title and interests in the encumbered property, including the present right of entry to use the ROW.

Third, Defendant's assertion that Virginia law in effect at the time of the partial release did not contemplate partial releases is inaccurate. The Virginia Code does not prohibit a creditor from partially releasing its debt.[30] The Virginia Supreme Court discussed release of liens, in particular under § 6456 of the Code of 1919, whereby it states the "lien creditor must cause the payment… to be entered on the margin of the page of the book where the incumbrance is recorded…*signed by the creditor.*"[31] Moreover, the Virginia Supreme Court ruled in 1925 that "payment of a debt involves both tender by the debtor and acceptance by the creditor, with the

---

[28] See generally Pl. Ex. W-2, B.M. Hedrick familiar with VA property law, prior to being Judge, he was supervisor of Arlington County Board presiding over a zoning ordinance.
[29] See, e.g. Pl. Ex. X (excerpt Pl. Ex. D: right of way reserved in a partial release of a lien of a deed of trust); See also n. 20.
[30] See, e.g. Jt. Ex. 6 land records clerk used stamp "For Partial Release see __" to evidence such transactions.
[31] Waynesboro National Bank v. Smith, 151 Va. 481, 493 (1928).

intention...to *pay the debt in whole or in* part."[32]   Therefore, a note-holder
with power to release a lien can certainly condition the release.

In this case, a partial payment of the debt was made and accordingly
a partial release was entered on the margin of the Deed of Trust.   The
partial release was signed by the note-holder (creditor) and a portion of
lien released in accordance with the corresponding Virginia Code.   The Deed
of Partial Release was duly signed, sealed, acknowledged and recorded,
according to Virginia law; thus, the ROW of record is valid.

Moreover, there is evidence of B.M. Hedrick's acquiescence to a
partial release by selling the parcels released.   One part, not affected by
the reservation of the ROW, was made to Enoch Norris accordingly with no
mention of reservation in her deed, and recorded directly after the Deed of
Partial Release.[33]   The second part, over which the ROW *was reserved*, was
conveyed later to Hannah Hedrick.   Significantly, this conveyance inserted
a provision stating the conveyance was made "subject to the restrictions
and *reservations of record*." Jt. Ex. 13 (emphasis added).

Lastly, Virginia Code deemed *all partial marginal releases prior to
1966*, of one or more separate pieces or parcels of real estate *validated,
and binding upon all parties in interest*.   Id. (emphasis added).   The Deed
of Partial Release and partial margin release recorded on the Deed of Trust
were made prior to 1966; therefore, this partial release is valid and
binding on Defendant.   Virginia Code. Va. Code Ann. § 55-66.4.

 **D.** **There was not unity of title at time of reservation or conveyance.**

Defendant's argument of unity of title fails because according to
Virginia law, unity of title is severed when there is a deed of trust
placed on one parcel of a property.[34]   The Court ruled when an owner of
parcels A and B placed a deed of trust on only parcel A, unity is severed
between parcel A and parcel B.   Id.

---

[32] Hall Building Corp. v. Edwards, 142 Va. 209, 212 (1925) (emphasis added).
[33] Jt. Ex. 11 (DB 331, P 310) & Jt. Ex.12 (DB 331, P 312).
[34] American Small Business Invest. Co. v. Frenzel, 238 Va. 452 (1989) (citing Larchmont Homes, Inc. v. Annandale Water Co., 201 Va. 178 (1959).

In the present case, the Deed of Trust initially encumbered the whole property; however, upon execution and recordation of the partial release, unity was severed from the parcels released from the lien of the Deed of Trust.   Therefore, in 1932 when the ROW was reserved, certain parcels of land were released from the Deed of Trust (servient estate), thereby severing the unity of title from the remainder of the parcels still encumbered by the Deed of Trust (the dominant estate).   The subsequent conveyance to Hannah Hedrick, the servient estate, was recorded after the Deed of Partial Release severance; therefore, there was no unity of title between the dominant and servient estates.

Furthermore, in 1935 when foreclosure ensued and the land, including the reserved ROW, was conveyed under the Trustees' Deed, there was no unity of title between the dominant and servient estates.   Hannah Hedrick owned the servient estate, and B.M. Hedrick was owner the dominant estate, subject to the Deed of Trust which foreclosed upon the land passing title to the purchaser.   Therefore, in 1932 when the ROW was reserved, and in 1935 when the ROW conveyed appurtenant to the estate, there was no unity of title, thus Defendant's claim of unity of title fails.

## II.   PLAINTIFF DID NOT ABANDON THE ROW

Defendant has not shown by "clear and unequivocal evidence" intent by Plaintiff to abandon; in fact, the record establishes Plaintiff's clear and extensive use of such ROW and easement area.   Defendant has not met its burden to show by "clear and unequivocal evidence" either (a) an act showing intent to abandon *combined with* non-use by Plaintiff; or (b) non-use by Plaintiff coupled with adverse use by a servient owner amounting to abandonment.   Hudson v. Pillow, 261 Va. 296, 302 (2001).   The Plaintiff has continuously and openly used the ROW and easement area for over 50 years. The abandonment claim by Defendant fails because there is no support in the record of "non-use," a required element for abandonment.   Id.   Moreover, the record lacks sufficient evidence to support Defendant's claim that Plaintiff's acts show intent to abandon or adverse use for the prescriptive period of 20 years.

Defendant has no personal knowledge of the use of the ROW or easement area, and relies solely on the testimony of Strother, who did not occupy the property in question until 1979, *23 years after* the Plaintiff had been openly and continuously using the ROW and easement area.   Also, for the reasons previously identified herein, Strother's statements are not credible.   See supra §I Part 6 ¶¶ 5 & 6.

Defendant asserts Strother adversely used the ROW by parking his car on the ROW.   However, even when the car was parked on the ROW, access for ingress and egress was not completely or permanently blocked.   The partial release stated the purpose of the ROW was for ingress/egress and did not limit the type of ingress/egress, it could be driving, walking, etc. Plaintiff stated there was no interference with her use of the ROW and easement area.   The Virginia Supreme Court ruled where an easement remains open and useable for some forms of ingress/egress, *it is not abandoned*. Pizzarelle v. Dempsey, 259 Va. 521, 529 (2000) (emphasis added).   In addition, an essential element to establish abandonment is proof of acquiescence by the dominant estate holder to such adverse use for a period of 20 years.[35]   The record as presented puts forth no supporting evidence of any interference with the Plaintiff's use of the ROW; therefore, there can be no adverse use and no acquiescence.[36]

Moreover, Don Williams stated Strother's car was parked on the ROW sometimes; however, there were other times when it was parked on the other side of his shop, not on the ROW.[37]   When it was parked on the ROW, it did not interfere with Plaintiff's use of the ROW; therefore, the use was not adverse.   Walton, 252 Va. at 326.   Lastly, Plaintiff's act of putting a chain link fence up on her own property, *not on the ROW*, does not demonstrate intent to abandon her ROW.   The reason for putting the fence up was to prevent trespassing.   See supra §I Part 3&6 ¶4; see also, Pl. Mem. in Supp. p7.   Notwithstanding Defendant's claims of adverse use or acts of intent,

---

[35] Robertson v. Robertson, 214 Va. 76, 81 (1973); Hudson, 261 Va. 302.
[36] Walton v. Capital Land Inc., 252 Va. 324, 326 (1996) (use by servient owner is permissible, and not adverse, if it does not interfere with rights of the easement holder).
[37] Pl. Ex. U D. Williams Aff.¶10&U-1 (photos & Strother Dep. 22:13-18).

Defendant's claim of abandonment fails because there is no evidence of "non-use;" to the contrary, the record establishes Plaintiff utilized and asserted her rights over the ROW and easement area since 1956.

III. **PLAINTIFF ESTABLISHED AN IMPLIED EASEMENT FOR THE REAMY PROPERTY.**

Plaintiff established all the required elements for easement by implication. Pl.'s Mem. in Supp § B.1. Defendant does not dispute the common grantor of both the servient and dominant estates at the time of severance were Lulu and Frank Follansbee. Jt. Ex. 2 & 3. Second, it is undisputed that at the time of severance, the easement area was in use. It is evident from the deeds themselves and the survey done in 1935, that there was no access to three sides of the Reamy House other than over the servient estate. Pl. Ex. A. The Reamy House has openings on all sides of the building, three of those sides at the time of severance were owned by the common grantor. Significantly, there would be an expectation of a right to use the easement area because the utility closet for the Reamy House does not have access from inside the building, it must be accessed through the implied easement area.[38]

Lastly, Defendant asserts the use of the implied easement area is not reasonably necessary. In order to maintain the Reamy House, the implied easement area is reasonably necessary. The record establishes continuous and open use of the implied easement area. Plaintiff's in-laws maintained the Reamy house and easement area until 1979, after that Plaintiff's son-in-law routinely used the easement area to perform necessary maintenance.[39]

In _Russakoff_, the court ruled access to a lake for recreational purposes was a legitimate expectation and reasonably necessary for the enjoyment of the dominant estate.[40] Similarly, if open and continuous recreational use creates a legitimate expectation and is reasonably necessary for the enjoyment of the dominant estate, than use for maintenance and access to the utility closet for the Reamy Property is also

---

[38] Pl.Ex. F J. Williams Dep at 88:9-18; 105:21-23; Pl.Ex.H D. Williams Dep. at 85:1-23; 86:1-3.
[39] Pl.Ex. F J. Williams Dep. at 40:5; Pl.Ex.H D. Williams Dep. at 24:3, 30:20-23; 31:1, 19-20; 55:8,16-18; 78:7-19; 83:14-23; 84:1-3.
[40] 241 Va. at 139.

a legitimate expectation and reasonably necessary for the enjoyment of the Reamy Property.   Therefore, Plaintiff has established and acquired an implied easement for the Reamy House located on her property.

IV.  PLAINTIFF ESTABLISHED A PRESCRIPTIVE EASEMENT FOR THE REAMY HOUSE.

Plaintiff established a prescriptive easement for the Reamy House located on her property.  Defendant's assertion that Plaintiff's claim is based on a mistaken belief an express easement is inaccurate.  Plaintiff's claim for the express easement is solely for ingress/egress access to lots 238-240 of her current property.  Plaintiff's claim for a prescriptive easement is solely for the use and benefit of part of lots 217 and 241, the Reamy House, which is also located on Plaintiff's property.  Therefore, Defendant is incorrect in asserting a lack of adverse use due to a mistaken belief. Chaney v. Haynes, 250 Va. 155 (1995).

Furthermore, Plaintiff established open, visible, continuous, unmolested use for 20 years, thereby entitling her to the rebuttable presumption of adverse use under a claim of right.[41]  The record shows Plaintiff used the easement area for the benefit of the Reamy Property since the early 60s when Plaintiff's in-laws resided there and maintained the Reamy House and easement area until 1979 when her father-in-law passed away.  In the 1980s, Don Williams, Plaintiff's son-in-law, assisted in the maintenance of the property and when he opened a business on the property in 1990 used the Reamy House for storage and openly maintained the building using the easement area.  Therefore, the burden of proof shifted to Defendant to present "a positive showing: sufficient to establish permissive use."[42]

Plaintiff began using the ROW and easement area in 1956, 23 years prior to the claim of permissive use by Strother.  There is simply no evidence to support a claim of permissive use, and Plaintiff emphatically stated the use of the ROW was not permissive.[43] Defendant's did not come onto the property

---

[41] Martin v. Moore, 263 Va. 640, 645 (2002).
[42] Id. at 647.
[43] Pl.Ex.T Aff.¶¶6,7,13; Pl.Ex.U Aff.¶12; Pl.Ex.H D.Williams Dep.24:12-23;25:1

until 2006; thus, the record lacks a "positive showing" to establish such permissive use.

CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion for Summary Judgment and grant Plaintiff's Motion declaring the ROW and easement valid and enforceable.

Dated:   September 8, 2009

Respectfully submitted,

SUN YUNG LEE
By Counsel

SHER CUMMINGS AND ELLIS
_____/s/_____
Mark Cummings, Esq. VSB # 18271
Attorney for Sun Yung Lee
Sher, Cummings & Ellis
3800 North Fairfax Drive, Suite 7
Arlington, Virginia 22203
Phone: (703) 525-1200
Fax: (703) 525-0067
Email: mcummings@SherandCummings.com

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on this 8th day of September 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

E.Andrew Burcher, Esq., VSB # 41310
G. Evan Pritchard, Esq., VSB # 47309
WALSH, COLUCCI, LUBELEY,
EMRICH & WALSH, P.C.
4310 Prince William Parkway, Suite 300
Prince William, VA 22192
Phone: (703) 680-4664
Fax: (703) 680-2161
<u>eaburcher@thelandlawyers.com</u>
<u>gepritchard@thelandlawyers.com</u>


                             /s/
                         Mark Cummings, Esq., VSB # 18271
                         Attorney for Sun Yung Lee
                         Sher, Cummings & Ellis
                         3800 North Fairfax Drive, Suite 7
                         Arlington, Virginia 22203
                         Phone: (703) 525-1200
                         Fax: (703) 525-0067
                         Email: mcummings@SherandCummings.com