# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (ALEXANDRIA DIVISION)

| | |
|---|---|
| SUN YUNG LEE | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:09cv402 |
| | ) |
| ZOM CLARENDON, L.P., | ) |
| | ) |
|     Defendant. | ) |

## AFFIDAVIT

COMES NOW Donald Williams and for his affidavit states as follows:

1.     I am a son-in-law of the Plaintiff, Sun Yung Lee.

2.     My wife, Jeannie Williams, and I were married in 1974. Since 1990 we have operated a small little sandwich shop on the corner of Washington Boulevard and N. Irving Street in Arlington, Virginia called "Sam's Corner" which is part of the Lee Property.

3.     During the 1980's, after my wife's grandfather passed away, I helped my in-laws periodically with maintenance for the buildings on the Lee Property such as painting and minor repairs before leasing out a storefront.

4.     In the years that I was helping my in-laws with the Lee Property in the 1980s before my wife and I started Sam's Corner, I did not see anyone placing any permanent objects obstructing the Right of Way and there was always cooperation between the businesses surrounding the Lee Property.

5.     In 1995, we had a problem with the proprietor of Madhu Ban restaurant, which was one of the two (2) tenants of the Strother family, who is a predecessor-in-title of ZOM. The owner of Madhu Ban was trespassing on the Lee Property continuously. He used the trash



**EXHIBIT**

U

containers and the oil drums on the Lee Property that belonged to the Lee tenants and left his

discarded items and trash around these trash bins. Madhu Ban's supply trucks were also

accessing the Lee's lot for delivery to Madhu Ban and in the course, had damaged the Lee's

Property on the lot pulling off a cable from one of the buildings along with the flashing.

6.       When the tenants complained to Mr. Lee, my father-in-law, about Madhu Ban's

use of their trash dumpsters and oil drum, Mr. Lee asked me to speak to John Strother regarding

the Madhu Ban problem and to request that the Strothers restrain their tenant from this

continuous trespass upon the Lee Property.

7.       I spoke with John Strother about the Madhu Ban situation, but John Strother

refused to intercede. Mr. Lee decided to install a fence to prevent future dumping of trash and

trespassing.

8.       Mr. Lee instructed me to gather and negotiate bids to install a fence. Mr. Lee

originally wanted a gate installed with the fence, but the contractors informed us that it was not

feasible to install a permanent swinging gate due to the configuration of the property. The fence

was installed with an easily removable section for control of access onto the Lee Property to

mitigate the Madhu Ban problem.

9.       The fence was purposely constructed completely within the Lee Property. The

fence is not on the Right of Way, nor did it ever permanently prevent the use of the Right of

Way. I was able to take off the removable section at will and have done so numerous times since

it was first installed.

10.      Since the installation of Mr. Lee's fence, John Strother often parked his red truck

on the Right of Way behind his shop for the convenience of loading his truck for deliveries but

he also drove his father's Oldsmobile, sometimes parking on the Right of Way and other times

2

parking on the other side of the his shop as illustrated in the attached aerial photographs identified by Mr. Strother in his deposition, Exhibit U-1 attached hereto. In any event, when Strother did park on the Right of Way it did not interfere with our use of the Right of Way.

11.     Since the 1980's when I first became involved with the Lee Property, there were many occasions where I have parked my vehicle in the Right of Way area. Neither Channing Strother nor his son, John Strother, ever complained or demanded that I remove my vehicle in all those years that they owned the adjacent property.

12.     In all the years that I have been involved with the Lee Property, I have never asked for permission from the Strother family to use the Right of Way for any purpose whatsoever because the Lees had a right to the use of the Right of Way so there was not a need to request permission from anyone. In fact, I do not recall any discussion about the Right of Way with anyone until ZOM installed their fence in 2007.

13.     In addition, until ZOM erected their fence in 2007 I have never seen any object of any kind blocking the entrance to the Right of Way.

14.     Until ZOM erected their fence blocking the entrance to the easement on or about March 19, 2007, no one has ever interfered with my use of the Right of Way.

_____
DONALD WILLIAMS

COMMONWEALTH OF VIRGINIA,
COUNTY OF ARLINGTON, to-wit:

The foregoing instrument was acknowledged by Donald Williams before me this 4th day of September 2009.

My Commission Expires: 10·31·12

LAUREN ANN KIEFER
NOTARY PUBLIC
REG #
7207128
COMMISSION
EXPIRES
10/31/2012
COMMONWEALTH OF VIRGINIA

3