## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (ALEXANDRIA DIVISION)

| | | |
|---|---|---|
| **SUN YUNG LEE** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Civil Action No. 1:09cv402** |
| | ) | |
| **ZOM CLARENDON, L.P.** | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S REPLY TO
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant ZOM CLARENDON, L.P. ("ZOM"), by Counsel, pursuant to the Court's Order of July 16, 2009, hereby submits its Reply to the Plaintiff's Motion for Summary Judgment and states the following:

### SUMMARY OF ARGUMENT

The Plaintiff asks the Court to ignore both the facts and the law in order to reach a conclusion that she is entitled to an ingress/egress easement across the ZOM Property[1]. The Plaintiff's Statement of Facts ignores the deposition testimony of not only the Plaintiff and her agents, but also an important witness who was best situated to observe what actually happened at the both the Lee and ZOM Properties, John Strother. In addition, the Plaintiff relies on not only documents that have not been properly authenticated, but also the improper opinion testimony.

Plaintiff's position appears to be that the mere act of recording an otherwise ineffective document somehow transforms that document into a legitimate conveyance of an interest in real property. It does not. Plaintiff also asks the court to declare an easement by implication, which must be proved by clear and convincing evidence, but gives no factual support for her claim.

---

[1] The definitions of capitalized terms in Defendant's Memorandum in Support of Motion for Summary Judgment carry over to this Memorandum.

Finally, the Plaintiff asks the Court to ignore established Virginia law by declaring the existence of an easement by prescription, despite her own admission that her use of the Purported Easement, if any, was under the mistaken belief that that she had a recorded right to do so.

Based solely on the documents recorded among the Arlington County Land Records and Virginia law, the Court should grant Summary Judgment in favor of the Defendant. The recorded documents are, on their face and as a matter of law, insufficient to create an easement. This is because the trustees, who the Plaintiff claims to have created the Purported Easement, had no authority to do so. The fee simple title owner of the ZOM Property, the only person who could have created the Purported Easement, neither created nor consented to the Creation of the Purported Easement. As a matter of law, Plaintiff's use of the Purported Easement under the mistaken belief that she had the right to do so cannot be adverse so long as such mistake continues.

### DISPUTED FACTS

Many of Plaintiff's recitals of "facts" are not only in direct contradiction to the record in this case but also in many cases are in direct contravention to the testimony of the Plaintiff or her own agents. In addition, the Plaintiff completely ignores the deposition testimony of John B. Strother ("Strother"). Strother's mother and father bought the ZOM Property on November 15, 1979.[2] Strother worked in the family print shop on the portion of the ZOM Property immediately adjoining the Purported Easement, eight or more hours a day, six days a week or more, from 1979 until 2006.[3] Strother's business was adjacent to the Purported Easement and

---

[2] Jt. Ex. 33.
[3] Strother Dep. 39:8-20, 77:14 (Exhibit A); Declaration of John Strother ("Strother Dec.", Exhibit B), ¶3; D. Williams Dep. 25:8-10, 27:10-14 (Exhibit C).

used the Purported Easement as its sole means of access.[4]  Strother's title examination and title insurance policy contained no exception for the Purported Easement.[5]  In 2006, Strother sold the ZOM Property to ZOM's immediate predecessor in title, Faison-Clarendon, LLC,[6] having inherited the ZOM Property from his Mother in 1999.[7]  Strother's testimony on the Plaintiff's use of the Purported Easement is often in direct contravention to the testimony of the Plaintiff and her agents in this matter.

### A. Plaintiff's Statement of Facts Contains Numerous Unsupported Statements.

On page 6 of her Memorandum, Plaintiff states:  "From 1979 through 1997, Plaintiff and her co-owners continued to use the ROW for ingress/egress access to Lots 238, 239 and 240 of Plaintiff's property."  Plaintiff cites unspecified lines of Jeannie Williams' (Plaintiff's daughter) Deposition at pages 23-24, and 27 for this statement.  This ignores Mrs. Williams' testimony that her visits to the Lee Property were less frequent than once a month[8] and further ignores her testimony that, when it came to the use of the Purported Easement, "I don't even know what is going on.."[9]  In fact, Jeannie Williams testified that her husband, Don Williams, would usually drop her off at the corner of N. Irving Street and Washington Boulevard and she would walk the few feet from the street to the front door of her shop.[10]  The statement is also in direct conflict with Strother's testimony.  Strother never observed any member of the Lee family or their tenants use the Purported Easement for access to the Lee Property.[11]  He did observe Don

---

[4] Strother Dep. 11:15-12:3
[5] Strother Dep. 13:10-16 and 56:14-22.
[6] Jt. Ex. 36.
[7] Strother Dec. ¶5.  It is interesting to note that Mackall, Mackall, and Gibb prepared two of the Deeds under which Strother acquired title (Strother Dec. Ex. 3 & 4).  It is not clear whom Mackall, Mackall, and Gibb represented in the preparation of these documents.
[8] J. Williams Dep. (Exhibit D) 24:12-21.
[9] J. Williams Dep. 37:16.
[10] J. Williams Dep. 103:15-16.
[11] Strother Declaration, ¶ 11.

3

Williams using the Purported Easement three times to access the back of the Reamy Property. Each time, it was with Strother's permission.[12]

In 1995, Mr. Lee erected a fence that ran just inside the Lee Property boundary line, terminating at the southwestern corner of the Reamy Building.[13]   The location of the fence is not in dispute.[14]   Plaintiff contends that the fence was on the Lee Property and not on the Purported Easement.[15]   This is really just semantics.   The metes and bounds description of the Purported Easement describes the Purported Easement as extending 10 feet past the southwestern corner of the Reamy Property into the Lee Property.[16]   Accordingly, while the fence was within the bounds of the Lee Property, it nonetheless crossed the Purported Easement as it is described in the Partial Release.[17]   In any event, the fence completely precluded access to the Lee Property by way of the Purported Easement.

Plaintiff also states that Don Williams would "move the unlocked fence when necessary."[18]   However, what Mr. Williams actually stated was that he removed the fence "two, three times maybe" and that he could not recall any specific dates that he had done so.[19]   Jeannie Williams, who has worked at the Lee Property since 1990, could not recall a single instance in which anyone moved the fence.[20]   Strother, on the hand, testified that he never observed anyone removing the portion of the Lee Fence that crossed the Easement.[21]

---

[12] Strother Dep. 80:1-19.
[13] Lee Dep. (Exhibit E) 38:11
[14] See Strother Dep. 89:17; J. Williams Dep. 73:7; D. Williams Dep. 95:16 – 96:1.
[15] Plaintiff's Mem.  P. 19, ¶3.
[16] Jt. Ex. 3 & 11.
[17] Plaintiff's position appears to concede tacitly the legal principle that one cannot have an easement across his or her own property.  This naturally leads to the conclusion that the Partial Release could not have created an Easement because B.M. Hedrick continued to own both the dominant and servient estates before and after the Partial Release was recorded.
[18] Pl. Mem. p. 7.  ¶2.
[19] D. Williams Dep. 28:23-29:2.
[20] J. Williams Dep. 8:16-18 and 59:14 – 60:3.
[21] Strother Dep. 87:9-13.

Plaintiff states, "Plaintiff's use of the ROW has not been interfered with or interrupted until 2007 when Defendant erected the fence blocking access."[22]   As stated above, Plaintiff admits that her husband built a fence that prevented her own access to her property by way of the Purported Easement.[23]   Don Williams acknowledged that Strother would park in the Purported Easement during business hours and sometimes on weekends.   Don Williams further testified that Strother would commonly park up against the very fence that blocked the Purported Easement[24] and that Mr. Lee never asked Strother to move his car.[25]   The bottom line is that Strother parked right in the middle of the Purported Easement at least six days a week, 12 or more ours a day from 1979 until 2006.[26]

Plaintiff also completely ignores the fact that sometime in the early 1980's, before the Plaintiff's husband erected the fence, Strother placed a small earth and cinderblock berm across the Purported Easement to prevent people from driving through the Purported Easement.  This was done with the permission of the Plaintiff's husband.  The berm stayed in place until the Plaintiff's husband erected the fence.[27]   In addition to the fence, the Plaintiff traditionally used the vacant portion of the Lee Property to the south of the Reamy Property as a parking lot.[28]   The cars parked on the Lee Property would often block the Purported Easement.[29]   In fact, when Strother's parents bought the ZOM Property in 1979, there were three or four rusted dumpsters directly behind the Reamy Building, blocking the Purported Easement.   One of the Plaintiff's

---

[22] Pl. Mem.  P. 7, ¶3.
[23] Lee Dep.  37:3-8.
[24] D. Williams Dep. 25:2-15; 26:8-14; 27:1-10
[25] Id. at 26:21-23
[26] Strother Dep. 90:7-91:4
[27] Strother Dep.  49:15–50:18; 99:17-100:4.  Strother Dec. ¶¶15 & 16.
[28] See Strother Dep. Ex. 3, 5, 9, and 10; Strother Decl. ¶22 & 23; D. Williams Dep. Ex. 2, 3, 8, 13, and 14; D. Williams Dep. 59:18-60:5; J. Williams Dep. 44:5-21, 69:5-9.
[29] Strother Dep. 46:10-14.

tenants had placed the dumpsters in that location and it took the Strothers about three months to secure their removal.[30]

Plaintiff states that she "has never asked a servient owner for permission to use the ROW."[31] This statement might be considered to be technically true because the Plaintiff does not even recall how often she would visit her own property.[32] However, the truth is that Don Williams asked Strother for permission to use the Purported Easement on three different occasions to make repairs to the second floor closet of the Reamy Building and paint the side of the Reamy Building.[33] Strother told Williams to go ahead and use the driveway rather than go through the Reamy Building.[34]

### B. Plaintiff's Exhibits A and E are Inadmissible.

Plaintiff relies heavily on two surveys, which she identifies as the Sunderman Survey and the Arlington Survey.[35] Neither survey is recorded among the land records. The Defendant does not concede to either the authenticity or relevance of these two surveys. Both surveys constitute classic hearsay, for which there is no exception. Accordingly, the Court should not consider these two surveys in determining whether the easement exists.

The Plaintiff has made no attempt to authenticate the Sunderman Survey[36]. In an interrogatory answer, the Plaintiff claims to have been provided with the Sunderman Survey at when she purchased the Lee Property in 1963.[37] However, the Plaintiff did not recognize the

---

[30] Strother Dec. ¶3.
[31] Pl. Mem.  P. 7 ¶3.
[32] Lee Dep. 33:22.
[33] Strother Dep. 80:3-19, 96:9-13.
[34] Id. at 82:2-13.
[35] Pl. Mem Ex.  A and E.
[36] See Fed.  R. Evid.  901
[37] Pl. Suppl. Resp. to Int. #3 (Exhibit F).

6

Sunderman Survey when confronted with it in her deposition.[38]  The Plaintiff's daughter could not remember the first time that she ever saw the Sunderman Survey and admitted that she was not present at the closing on the Lee Property.[39]  Strother testified that he had never seen the Sunderman Survey before his deposition.[40]  The Plaintiff has not attempted to validate the Plaintiff's source of the Sunderman Survey, it was simply provided to them by an un-named lawyer at closing.  As such, it is not properly authenticated and should not be admitted into evidence.

In any event, the Sunderman Survey is not relevant to the question of whether an easement was ever properly granted.  The issue before the court is whether, as a matter of law, the Partial Release was sufficient to create the Purported Easement.  The only truly relevant documents to that issue are the Partial Release itself, the underlying Woodward Deed of Trust, and the Trustee's Deed.  The Sunderman Survey only shows that the Plaintiff mistakenly thought she had the right to use the Purported Easement.  Plaintiff's mistaken belief that she had the right to use the Purported Easement negates any claim that her use of the Purported Easement, if any, did not rise to the level of an adverse use.[41]

The Arlington Survey is an even less reliable source than the Sunderman Survey is.  The only attempted authentication of the Arlington Survey is a bald statement that it was "found in the mapping division of Arlington Virginia Survey Division."[42]  Plaintiff might have meant the Customer Service Counter at the Arlington County Department of Environmental Services Division of Transportation, Development Services Bureau, but there is no "mapping division of

---

[38] Lee Dep. 20:1 – 21:23.
[39] J. Williams Dep. 29:21-23 & 55:16-23.
[40] Strother Dep. 70:22-71:2 and 71:13-15.
[41] *Chaney v. Haynes*, 250 Va. 155, 159, 458 S.E.2d 451, 453 (1995).
[42] Pl. Mem.  p.6. ¶1.

{P0133109.DOC / 1 Final Reply Brief 000267 000155}

Arlington Virginia Survey Division."  The only evidence regarding the Arlington Survey is that Jeannie Williams found it after she discovered there was an issue regarding the use of the Purported Easement.[43]

The Arlington Survey contains no Surveyor's Certificate, so there is no way of telling who prepared it and therefore no way to question its validity.  Like the Sunderman Survey, the Arlington Survey was never recorded among the land records and there is no evidence that anyone ever relied on it for any reason.  The Arlington Survey is not properly authenticated and has no tendency to make the existence of any fact that is of consequence to the determination of this outcome of this action more or less probably than it would be without the Arlington Survey.[44]

Both the Arlington Survey and the Sunderman Survey constitute classic hearsay to which there are no valid exceptions.  They are both out of court statements, of W.F. Sunderman in the case of the Sunderman Survey, and of an unknown and unidentifiable surveyor in the case of the Arlington Survey, offered to prove that the Purported Easement existed.[45]  Without proper authentication, the Court should disregard both documents.

## C.  The Court Should Reject Plaintiff's Expert Reports.

The Plaintiff also relies heavily on three expert reports, all of which state the opinion that the documents that supposedly created the Purported Easement are "in the chain of title" to the ZOM Property.[46]  None of the opinions provide with the Court with a definition of the term "chain of title" or the significance, if any, of a document appearing within the chain of title to a

---

[43] J. Williams Dep. 60:8.
[44] See Fed. R. Evid. 401
[45] Fed R. Evid. 801(c).
[46] The initial opinion of Neil Title, Esq. appears to have been more the opinion of Plaintiff's prior counsel than his own.  See Exhibit G.

8

parcel of real property.  None of the opinions cite any legal authority whatsoever for the opinions and legal conclusions rendered by the experts.

The Defendant has stipulated to the authenticity of the relevant documents that are recorded among the Land Records of Arlington County.[47]  Accordingly, there is no issue of fact regarding the contents of the land records.  The Defendant contests the Plaintiff's legal conclusion that the documents are sufficient to create an express easement.

Rule of 702 the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist *the trier of fact to understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. (Emphasis added).

The Court is the trier of fact in this case.  It is the Court's function to apply the law to those facts.  This, in part, is why "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."  *United States v. McIver*, 470 F.3d 550 (4th Cir. 2006) (Citations Omitted).  See also, *United States v. Jefferson*, 623 F. Supp. 2d 683 (E.D. Va. 2009).  None of the three opinions are necessary for the Court to "understand the evidence or determine a fact in issue."

---

[47] Jt. Ex. 1-36.

## ARGUMENT

### I. The Mere Act of Recording Does Not Validate an Otherwise Invalid Conveyance.

The Plaintiff relies very heavily on *Chavis v. Gibbs*[48] for the proposition that ZOM had notice of the Partial Release, the document that supposedly created the Purported Easement. The Plaintiff then makes the logical leap that if ZOM had notice of the Partial Release, the Easement must therefore be valid. The Plaintiff does not address the validity of the underlying conveyance in any way.

It is a long-held tenet of Virginia law that the admission of a document to record is a mere ministerial act, intended to give the world notice of its existence. The admission of a document to record does not validate an otherwise invalid document. See e.g. *Corey v. Moore*, 86 Va. 721, 11 S.E. 114 (1890), *Paul v. Baugh*, 85 Va. 955, 9 S.E. 329 (1889), *Dawson v. Thurston*, 12 Va. (2 Henn.) 132 (1808). Under the Virginia Code, the only requirement for admission of a document to record is that the document be signed and either acknowledged by a notary or proved by two witnesses. Va. Code §55-106. The only circumstances under which a clerk of court can refuse a document for recording is when the name of the person under which the document is to be indexed is illegible or, only recently, if the document does not have the required cover sheet. Va. Code §55-106.5 and §55-108 (Referencing Va. Code §7.1-227). There was no magical transformation of the Partial Release when it was recorded. The trustee had no authority to create the Purported Easement on the day before the recordation of the Partial Release and had no authority to create the Purported Easement on the day after the recordation of the Partial Release.

---

[48] 198 Va. 379, 94 S.E.2d 195 (1956).

Virginia law is rife with cases in which the Supreme Court of Virginia has found recorded documents to be invalid.  One case of particular interest is *Home Building Association v. Henry C. Mackall, Trustee*, 205 Va. 73, 135 S.E. 2d 171 (1964).[49]  In that case, the Supreme Court of Virginia upheld the trial court's determination that a recorded deed of release was not valid because one of the two trustees under a deed of trust, Henry Mackall, did not sign the document.  Because not all necessary parties signed the document, the instrument was invalid.  The *Mackall* case is analogous to the case before this Court.  In the case before this Court, B.M. Hedrick, the fee simply title owner of the property and the only person with the power and authority to create the Purported Easement, did not sign the Partial Release or any other document creating or consenting to the Purported Easement.  Like the deed of release in *Mackall,* the Partial Release did not create any rights because the only party that could create the Purported Easement did not execute it.

There are many other examples of recorded documents being held invalid.  See e.g. *Beeren & Barry Investments, LLC v. AHC*, 277 Va. 32, 671 S.E.2d 147 (2009) (Attempted reservation of a recorded option to purchase as a covenant running with the land through a "certificate of partial satisfaction" of a deed of trust held to be invalid.),  *Smith Mountain Supply v. Windstar Prop.*, 277 Va. 387, 672 S.E.2d 845 (2009) (Recorded Mechanic's Liens held to be invalid), *FDIC v. Hish*, 76 F.3d 620(4th Cir. 1995) (Deed of Trust held to be invalid), *Forbes v. Schaefer*, 226 Va. 391, 310 S.E.2d 457 (1983) (Recorded covenants found to be invalid).

Plaintiff also relies upon both Virginia Code §55-66.4 and Virginia Code §55-50.  However, neither Virginia Code §55-66.4 nor Virginia Code §55-50 support the Plaintiff's claim of an easement.  As set forth in the Defendant's Memorandum in Support of its Motion for

---

[49] Henry C. Mackall, Esq. of Keith & Mackall, a predecessor to Mackall, Mackall, and Gibb, also acted as counsel for the appellees.

{P0133109.DOC / 1 Final Reply Brief 000267 000155}

Summary Judgment, Virginia Code §55-66.4 does not currently contemplate the release of less than a fee simple interest in Real Property.  Rather, it only contemplates the release of "one or more of the *separate pieces or parcels of property*.  (Emphasis Added).  Furthermore, the predecessor to §55-66.4 in effect at the time of the Partial Release did not contemplate partial releases at all.[50]  Virginia Code §55-50 does not in any way address the requisites of a validly created easement and the Purported Easement.  While §55-50 does state that appurtenances to real property, such as an easement, convey with the land, the Purported Easement is not an appurtenance to the Lee Property because it was never created in the first instance.

Plaintiff has provided no law that contradicts the statement, "it is only the owner of a fee simple title that can create [an ingress/egress] easement."  *United States v. Belle View Apartments*, 217 F.2d 636, 639 (4th Cir. 1954).  The evidence clearly shows that the owner of fee simple title never created the Purported Easement.  The Plaintiff bears the burden of proof in this matter and has not met her burden.

## II.    Ball Deed of Trust and Ball Release are Not Relevant.

The Court should not consider the Ball Deed of Trust or the Ball Release in its analysis of whether the Purported Easement was validly created.  As an initial consideration, any claim of an easement by virtue of the Ball Deed of Trust and Ball Release would fail for the same reasons that the Plaintiff's claim of an easement by virtue of the Woodward Deed of Trust and Partial Release fails.  In addition, even though the Ball Deed of Trust and Ball Release are recorded in the Arlington County Land Records, they are not in the "chain of title" to either the ZOM Property or the Lee Property.

---

[50] See Exhibit H to Def.'s Mem.  in Supp. of Mot.  Sum.  J.

Unfortunately, there is no Virginia authority that specifically defines the term "chain of title". Black's Law Dictionary defines "Chain of Title" as "successive conveyances, or other forms of alienation, affecting a particular parcel of land, arranged consecutively, from the government or original source of title down to the present holder." *Black's Law Dictionary* 208 (5th ed. 1979). "Chain of Title" has also been defined as "a capsule history of the transfers of ownership of a particular parcel of real estate." Douglas Dewing, *A Virginia Title Examiners' Manual*, §8-1 (3rd ed.1998). The Ball Deed of Trust and Ball Release are not a part of the succession of conveyances of either the ZOM Property or the Lee Property.

The Woodward Deed of Trust was recorded in Deed Book 282 at page 570.[51] The Ball Deed of Trust was subsequently recorded in Deed Book 303 at page 126.[52] The Ball Deed of Trust was therefore inferior in priority to the Woodward Deed of Trust. The foreclosure of the Woodward Deed of Trust eliminated not only the Ball Deed of Trust but also any conveyance subsequent to the Woodward Deed of Trust from the chain of title to the Lee Property.

Because there could be no further transfers or conveyances of any interest out of the Ball Deed of Trust, the Ball Deed of Trust became a nullity as a matter of law upon the foreclosure of the Woodward Deed of Trust.

### III.    The Facts Do Not Support an Implied Easement.

There is no question that in order to prove an easement by implication, the Plaintiff must prove, by clear and convincing evidence, that (1) the dominant and servient tracts originated from a common grantor, (2) the use was in existence at the time of the severance, and (3) the use is apparent, continuous, and reasonably necessary for the enjoyment of the dominant tract.

---

[51] Jt. Ex. 6
[52] Jt. Ex. 9.

*Russakoff v. Scruggs*, 241 Va. 135, 400 S.E.2d 529, 532 (1991).  The Plaintiff cannot meet this burden.

The Plaintiff contends that the conveyance from Follansbee to Reamy on July 7, 1926 gave rise to an easement by implication serving the Reamy Property.[53]  The Plaintiff's only evidence that the use of the Purported Easement was in existence at the time of the severance is the Sunderman Survey.  However, in addition to being inadmissible as evidence for the reasons stated above, the Sunderman Survey is dated July 30, 1935, nine years after the conveyance from Follansbee to Reamy.  There is no evidence that the Reamy Building in existence before the conveyance from Follansbee to Reamy.

In addition, there is no need for an easement to the rear of the Reamy Building.  The rear of the Reamy Building is approximately 3 feet from the rear boundary of the Reamy Property.[54] The rear of the Reamy Building can be, and often was, accessed by simply entering the Reamy Building at its entrance of N. Irving Street, walking through the first floor of the Reamy Building and exiting through the back door of the Reamy Building.[55]

Title to the Reamy Property became unified with the title to the rest of the Lee Property on November 3, 1958.[56]  At that point, the owner of the Reamy Property, who always had direct access to N. Irving Street and access to the rear of the Reamy Property through the interior of the Reamy Building, also obtained direct access to both the south side and rear of the Reamy Property.  There is no necessity for access to the north side of the Reamy Property because there are no doors or other access points to the Reamy Property on the north side of the Reamy

---

[53] Jt. Ex. 3
[54] See Exhibit A to Def.'s Mem in Supp. of Mot.  S. J.; D. Williams Dep. 73:15-77:3; J. Williams Dep. 71:8-72:23.
[55] Strother Dep. 82:6-11; Strother Decl. ¶21;  D. Williams Dep. 36:8-23
[56] Jt. Ex. 23.

Building.[57]   To the extent that could have ever been considered necessary, the Purported Easement was no longer necessary when the titles to the Lee and Reamy Properties became unified.

The Plaintiff simply cannot meet its burden of proof to establish an easement by implication.  Plaintiff also cannot prove an easement by prescription.

### IV.   Facts Do Not Support an Easement by Prescription

The Plaintiff's own evidence clearly shows that any use of the easement was under the mistaken belief that she had a recorded right to do so.  Because of this, she cannot claim an easement by prescription, because her use could not have been adverse.[58]   On top of that, the Plaintiff cannot show a continuous use for the prescriptive period of 20 years.  The Plaintiff admits that she rarely visited the Lee Property, much less used the Purported Easement to access her property.  Her daughter, Jeannie Williams stated that she had no personal knowledge of the use of the easement and her son-in-law, Don Williams testified that he did not use the Purported Easement on a regular basis.  The fact is that in 1995 the Plaintiff's husband constructed a fence that made the continuous use of the Purported Easement impossible.  Even when viewed in a light most favorable to the Plaintiff, the Plaintiff can only prove that Don Williams used the easement two or three times on dates that he cannot recall and that was only to gain access to the back of the Reamy Property from the rest of the Lee Property to the south and not to gain access to N. Irving Street.  This falls far short of the evidence necessary to prove a prescriptive easement by clear and convincing evidence.

### V.   The Easement, if any, was Abandoned.

---

[57] See Ex. 2 to J. Williams Dep.
[58] *Chaney v. Haynes*, supra.

The Defendant maintains that the Plaintiff has failed to prove an easement, whether it be by express grant, implication, or prescription.  The Plaintiff's evidence simply falls short of the burden of proof necessary to establish an easement.  However, what the evidence does show, by clear and convincing evidence, is that Lee abandoned the easement.

Plaintiff is correct in stating that mere non-use of an easement will not constitute abandonment.  In addition to non-use, there must also be either (i) an act of the dominant estate holder showing an intent to abandon *or* (ii) an adverse use for 20 years.  *Hudson v. Pillow*, 261 Va. 296, 302, 541 S.E.2d 556, 560 (2001).  See also, *Helms v. Manspile*, 277 Va. 1, 671 S.E.2d 127 (2009).  In this case, there is non-use along with an act by the dominant estate holder showing an intent to abandon, *and* an adverse use for a period of more than 20 years.

There is no requirement that acts by the dominant estate holder evidencing an intent to abandon continue for a period of 20 years.  "A party entitled to a right of way or other mere easement in land may abandon and extinguish such right by acts in pais and without deed or other writing; and a cessation of the use coupled with any act indicating an intention to abandon the right, would have the same effect as an express release of the easement without any reference to time."  *Magee v. Omansky*, 187 Va. 422, 430, 46 S.E.2d 443 (1948).  "[A]n abandonment will be presumed where the owner of the right does, or permits to be done, any act inconsistent with the future enjoyment of the right."  *Oney v. West Buena Vista Land Co.*, 104 Va. 580, 585, 52 S.E. 343, 345 (1905).  When the Strothers bought the ZOM Property in 1979, the Plaintiff had allowed her tenants to block the Purported Easement with their dumpsters.  Mr. Lee allowed cars to park on the vacant portion of the Lee Property south of the Reamy Building and in such a way as to block his own access to the Purported Easement. Mr. Lee encouraged Strother to construct a small berm blocking the Purported Easement.  Furthermore, Mr. Lee placed his fence across the

16

Purported Easement, without a gate and in such a way to make the use of the Purported Easement impossible.   These acts are clearly inconsistent with any future enjoyment of the Purported Easement.

In any event, Strother parked his car in the middle of the Purported Easement while he worked in his print shop for eight to ten hours a day, six days a week from 1979 to 2006. Occasionally, Strother would park within the Purported Easement for up to two weeks when he took vacations.   So ubiquitous was Strother's parking within the Purported Easement that a Strother vehicle appears in two random satellite photos of the Lee and ZOM Properties.[59]   The Plaintiff never objected to Strother's obstruction of the easement.   These acts, when taken together, show an intent to abandon any claim the Purported Easement.

## Conclusion

The Court can and should grant Summary Judgment in favor of the Defendant in this matter based solely on the contents of the Arlington County Land Records.   The land records reflect an illegitimate attempt to reserve an easement by a trustee who had no power or authority to do so.   Because B.M. Hedrick, the fee simple owner of the property, never executed any document creating the easement, the Plaintiff's claim to an express easement fails. As a matter of law, any subsequent use of the Purported Easement could not have been adverse, because any use of the Purported Easement by the Plaintiff was, by her own admission, under the mistaken belief that she had the right to do so.   In any event, the Plaintiff's evidence does not meet the burden of proving an easement by implication or a prescriptive easement by clear and convincing evidence.   If anything, the facts clearly show that the Plaintiff abandoned any claim that she might have had to an easement.

[59] Strother Dec. ¶6-10.

{P0133109.DOC / 1 Final Reply Brief 000267 000155}

The Defendants respectfully request that this honorable Court grant Summary Judgment in its favor and enter a Final Order in this matter denying the Plaintiff's claim for an easement and dismissing the Complaint with prejudice.

Dated:  September 8, 2009

ZOM CLARENDON, L.P.
By Counsel

WALSH, COLUCCI, LUBELEY,
 EMRICH & WALSH, P.C.


/s/ John E. Rinaldi
John E. Rinaldi, Esq., VSB #31580
E. Andrew Burcher, Esq., VSB #41310
G. Evan Pritchard, Esq., VSB # 47309
WALSH, COLUCCI, LUBELEY,
EMRICH & WALSH, P.C.
4310 Prince William Parkway, Suite 300
Prince William, VA 22192
Phone: (703) 680-4664
Fax:  (703) 680-2161
jrinaldi@thelandlawyers.com
eaburcher@thelandlawyers.com
gepritchard@thelandlawyers.com
Attorneys for Defendant

{P0133109.DOC / 1 Final Reply Brief 000267 000155}

## CERTIFICATE OF SERVICE

I, E. Andrew Burcher, hereby certify that on the 8th day of September 2009, I filed the foregoing Memorandum using the CM/ECF system, which will send a notice of electronic filing through the Court's electronic filing systems to counsel for the Plaintiffs as follows:

> Mark D. Cummings, Esq., VSB #18271
> SHER, CUMMINGS & ELLIS
> 3800 N. Fairfax Drive, Suite 7
> Arlington, VA 22203
> Phone: (703) 525-1200
> Fax: (703) 525-0067
> mcummings@sherandcummings.com

> WALSH, COLUCCI, LUBELEY, EMRICH & WALSH, P.C.
>
> /s/ John E. Rinaldi
> John E. Rinaldi, VSB #31580
> Attorney for Defendant
> 4310 Prince William Parkway, Suite 300
> Prince William, VA 22192
> Phone: (703) 680-4664
> Fax:  (703) 680-2161
> jrinaldi@thelandlawyers.com

{P0133109.DOC / 1 Final Reply Brief 000267 000155}