1

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

```
- - - - - - - - - - x
                     :
SUN YUNG LEE,        :
                     :
         Plaintiff,  :
                     :
         -vs-        :
                     :    Civil 1:09cv402
ZOM CLARENDON, L.P., :
                     :
         Defendant.  :
                     :
- - - - - - - - - - x
```

Courtroom Number 900
U.S. District Courthouse
Alexandria, Virginia

Friday, October 9, 2009

The above-entitled matter came on to be heard

before the HONORABLE T. S. ELLIS, III, a District Judge,

in and for the United States District Court for the

Eastern District of Virginia, 401 Courthouse Square,

Alexandria, Virginia, beginning 11:31 o'clock a.m.

APPEARANCES:

On Behalf of the Plaintiff:

MARK CUMMINGS, ESQUIRE
KERRY SHANNON, ESQUIRE

On Behalf of the Defendant:

JOHN RINALDI, ESQUIRE
ANDREW BIRCH, ESQUIRE

1                      P R O C E E D I N G S

2              THE COURT:  Call the next matter.

3              THE CLERK:  Case No. 09cv402, Sun Yung Lee

4     versus Zom Clarendon, L.P.  Would counsel please state

5     your appearance for the record.

6              THE COURT:  All right.  Who is here on behalf

7     of the Plaintiff?

8              MR. CUMMINGS:  Mark Cummings and Kerry (ph.)

9     Shannon.

10              THE COURT:  Who will argue today?

11              MR. CUMMINGS:  Mark Cummings.

12              THE COURT:  All right.  Thank you, Mr.

13     Cummings.

14              MR. CUMMINGS:  Thank you, sir.

15              THE COURT:  And good morning to the others of

16     you.  Who's here for the Defendant?

17              MR. RINALDI:  John Rinaldi on behalf of Zom

18     Clarendon and Andrew Birch (ph.) is here with me and I

19     will be arguing today, Your Honor.

20              THE COURT:  Mr. Rinaldi?

21              MR. RINALDI:  Yes.

22              THE COURT:  All right.  Thank you.  All right.

23     You may be seated for a moment.  I think the facts -- I

1    think are fairly well set out.  They may not be

2    dispositive of all the facts but in essence, this is a

3    dispute over the existence and validity of an easement.

4            And the Plaintiff argues that the easement

5    exists and is valid in one of three ways.  Either it is

6    expressly created by this deed of release or it is an

7    implied easement under the law or it is an easement gained

8    by prescription under the law.

9            I want to focus first on the -- whether --

10   the Defendant, of course, denies that it is an easement

11   for any of those reasons.  It argues -- makes three

12   principal reasons or arguments against an express

13   easement.

14           First, is the words necessary to create it are

15   not present in the deed of trust focusing on, "subject

16   to."  Next, that it was extinguished, if it existed,

17   through the doctrine of merger and unity of title.

18           And third is the trustee didn't have the power

19   to create the easement.  All right.  Let's focus first on

20   that.  We'll come to the second two arguments, that is

21   prescription and implication in a few moments.  Let me

22   hear first from Mr. Rinaldi.

23           Let's take up first, Mr. Rinaldi, your

4

1   argument that the word, "subject to."  And you point out

2   the cases that, "subject to," are words of qualification

3   and notice and they don't typically create affirmative

4   rights.

5          But isn't it true that the cases now make

6   clear that using the word, "subject to," would not

7   necessarily eliminate the possibility of an easement, that

8   it would have to be whether the partial release taken as a

9   whole -- looking at it as a whole would manifest the

10  Woodward trustee's intention to reserve an express

11  easement.

12         MR. RINALDI:  Well, first of all, Your Honor,

13  our position would be that Woodward trustee never held

14  sufficient title to create an easement --

15         THE COURT:  Well, I understand that.  Would

16  you take it as I give it to you.  I've read your briefs so

17  address my question.

18         MR. RINALDI:  I apologize, Your Honor.

19         THE COURT:  We're coming to the authority

20  issue in a moment.

21         MR. RINALDI:  I apologize, Your Honor.

22         THE COURT:  I have chosen to pick the language

23  first.

1          MR. RINALDI:  I apologize, Your Honor, I just

2     don't want to be -- I don't want to seem like I'm giving

3     up any ground that's all.

4          THE COURT:  All right.  Well, that's the last

5     thing I ascribe with lawyers around here.

6          MR. RINALDI:  Thank you, Your Honor.

7          THE COURT:  Not to say that they shouldn't on

8     occasion.

9          MR. RINALDI:  Very recently the Virginia

10    Supreme Court -- September 18, 2009, in fact, the Supreme

11    Court handed down the Burdette versus Brush Mountain

12    Estates case.  That case was one in which much like the

13    case here, there was a lot of language that was -- that --

14    the property was subject to an easement.

15          That case specifically considered and upheld

16    Davis versus Henning and said, no, "subject to," only

17    refers to existing rights and there's only words of notice

18    of existing rights.

19          THE COURT:  But don't both of those cases make

20    clear that simply the use of the words, "subject to," is

21    not dispositive?  That one has to consult the document as

22    a whole and consider whether the document as a whole may

23    be sufficient to create an express easement.

6

1          MR. RINALDI:  Yes, Your Honor, they both --

2    they all say that you do consider the document as a whole.

3    But even in considering the deed of release as a whole, it

4    still does not show the person intended to create an

5    easement.  It was a deed of release.  I was simply

6    releasing an interest on a deed of trust of property.

7          THE COURT:  Yes, but that goes to a separate

8    issue.  How about contrasting if you want to argue these

9    two cases, Davis and the other one.  How do you contrast

10   the, "subject to," language there to the, "subject to,"

11   language, or don't contrast it if you say they're the

12   same, it does seem to me that this document, this deed of

13   release, putting to one side whether he had the authority

14   to do it, putting to one side merger of title, --

15          MR. RINALDI:  Uh-huh.

16          THE COURT:  -- that if you read it, as a

17   whole, it purports to create an express easement.

18          MR. RINALDI:  I think what it does is it

19   manifests an intent to create an easement but that intent

20   didn't get to the finish line.  It was an intent to create

21   a --

22          THE COURT:  And why didn't it get to the

23   finish line, because it was no authority to do it or

1  because it was a merger of title?

2          MR. RINALDI:  Those two reasons and the reason

3  that in order to create an easement you have to do

4  sufficient words to grant and, "subject to," -- I mean,

5  yes, you can be held to be words of grant in certain

6  circumstances but in this circumstance I don't think that

7  it shows a manifest -- it shows an intent but it's not an

8  effective intent.

9          THE COURT:  Why not?

10          MR. RINALDI:  Because once again, there were

11  no words conveyance here.  I'm letting this go subject to

12  an easement while the easement is never created.  We never

13  hear about (unintelligible)-- we -- we don't reserve, we

14  don't do anything else.  We're saying it's subject to an

15  easement.

16          So when taken as a whole -- and when you take

17  the partial release as a whole, look at the intent of the

18  document, which is to release the deed of trust and to do

19  nothing else, it's not conveying any title to the

20  property.

21          Just like in Kelly and Burdette, a plat is not

22  a document that conveys title to a property and that

23  language that was much more clear in Kelly versus -- I

8

1    mean, in Burdette versus Brush Mountain Estates, that was

2    held to be insufficient language.

3            Because the plat -- even though it said,

4    "Hereby convey an easement," the plat is not a document of

5    conveyance.  In this case, the deed of release is not a

6    document of conveyance.  Woodward trustee was not

7    conveying title to another party.  He was releasing his

8    interest in the deed of trust to the original owner of the

9    property.

10           He was letting go of an interest that he held

11   -- the interest pursuant to the deed of trust.  And so

12   when you deal with the document as a whole there's no

13   intent because even though the language says, "subject

14   to," the intent of the overall document is simply to

15   release the deed of trust, not to convey an interest in

16   the property.

17           THE COURT:  All right.  Let me hear from you,

18   Mr. Cummings, on the -- on that issue of law.

19           MR. CUMMINGS:  Yes, Your Honor, I'm glad you

20   brought up this whole idea of looking at the -- these

21   deeds of partial release as a whole because --

22           THE COURT:  I didn't bring it up.

23           MR. CUMMINGS:  Well, --

9

1              THE COURT:  The Supreme Court of Virginia --

2              MR. CUMMINGS:  The Supreme Court -- they --

3              THE COURT:  -- made it pretty clear about

4    what --

5              MR. CUMMINGS:  -- in Davis v Henning --

6              THE COURT:  -- has to be done.  What has to be

7    done -- now, --

8              MR. CUMMINGS:  It --

9              THE COURT:  -- why do you think, given the

10   argument that he's made, that there was a creation of an

11   express easement in a document that was intended only to

12   release certain things?

13             MR. CUMMINGS:  Well, it's a partial release

14   that benefitted the debtor.  In other words, they took two

15   lots and cut them out of the deed of trust and said but --

16   the note holder and her trustees, they never addressed the

17   fact that the note holder signs this.

18             The note holder says Mr. Hedrick -- Judge

19   Hedrick, I'm going to release these two pieces of property

20   from my deed of trust.  You're going to hold them free and

21   clear.  You're free to convey them but I'm going to

22   reserve this right of way right over here.  And unlike the

23   situation with the debtor --

1          THE COURT:  Well, is there anything in the

2     chain of title that would indicate that this right of way

3     existed as a matter of record before this deed of release?

4          MR. CUMMINGS:  No, Your Honor.  No, Your

5     Honor.  It's 1932 and there are three instruments that are

6     filed together.  They're dated different dates.  The Ball

7     and Woodward partial release are dated 3/1/32.  But then

8     there's that January 8, '32, conveyance from Hedrick to

9     Enoch Norris (ph.) for the southern part of that property.

10          And in that deed from -- that's dated January

11    8th, but remarkably, they're all recorded on the same day;

12    okay, which shows as a matter of a whole what these people

13    were doing were -- they're taking that deed of trust and

14    they're cutting out a section of this property and saying

15    -- and the note holder is saying, Judge Hedrick, you can

16    convey this property as you will subject -- however, I'm

17    going to reserve a right of way so that if I have to

18    foreclose on this other property that I'm keeping my lien

19    on, if I have to sell that in foreclosure, I'm reserving

20    that right.

21          It didn't create the easement in 1932.  It

22    doesn't create the easement until that condition is

23    fulfilled.  If Judge Hedrick had paid off the lien it

1   would have been extinguished but he didn't.  And he

2   acquiesced to it.

3           THE COURT:  I thought -- did you just say it

4   didn't create the easement?

5           MR. CUMMINGS:  It reserved the easement; okay.

6           THE COURT:  Reserved the easement.

7           MR. CUMMINGS:  But it doesn't -- it doesn't

8   come into existence until there's a foreclosure, that's

9   the condition.  In 1935 --

10          THE COURT:  You're going to have to explain

11  that a little bit more to me.  Try it again cause I think

12  this is important.

13          MR. CUMMINGS:  All right.  The deeds of

14  partial release that supply all the conditions and

15  describes the reserved right of way by metes and bounds.

16  What the note holder, Mary Hutchinson (ph.), is doing is

17  carving out.  And she describes it -- there's two

18  paragraphs describing that reserved right of way.

19          And she directs her trustees that in the event

20  of a foreclosure, I'm going to add this right of way.

21  It's an asset which goes with that property on the

22  condition of foreclosure.  If the property had not been

23  foreclosed on, it would have been extinguished.

12

1          So it's created in 1935 -- that reservation is

2     created in '35 when B. M. Hedrick (ph.) is foreclosed on.

3     Jump forward to 1941, B. M. Hedrick files it now -- by

4     that time the two properties that weren't subject to the

5     lien, the southern piece of property doesn't contain the

6     language, "subject to a right of way."

7          But the northern part that he conveyed that

8     Hannah Hedrick, I think in '33, does contain, "subject

9     to," the reservation of the right of way in the 1932 --

10    the deeds of the partial release.

11         So in 1941, Judge Hedrick files a deed of

12    correction and corrects some of the metes and bounds of

13    the property, doesn't address the -- acknowledges that

14    there is an easement by referring to it, "subject to the

15    reserved right of way."  So he didn't acquiesce to it.

16    That was the time for him to object to it.

17         THE COURT:  You're now skipping ahead to

18    another issue.  That has nothing to do with an express,

19    that goes to prescription, implication or something else.

20         MR. CUMMINGS:  Well, I think it should.  What

21    they're trying to say is well, he had no idea what was

22    going on.  They just --

23         THE COURT:  No, they haven't argued that yet.

13

1    That isn't -- all I'm interested in right now is, is the

2    language in the deed of release sufficient to create an

3    express easement.

4              And generally, the words, "subject to," are

5    not adequate.  But the Supreme Court of Virginia says that

6    may not be dispositive.  You have to look at the document

7    as a whole.  Are you with me?

8              MR. CUMMINGS:  Yeah, I'm with you.

9              THE COURT:  Now, what is there in the

10   document, as a whole, that leads you to conclude that

11   there is an express creation of an easement?

12             MR. CUMMINGS:  Because it unambiguously

13   defines what they're talking to -- what, "subject to,"

14   modifies is unambiguous to paragraphs setting forth the

15   outline by metes and bounds of this easement.

16             THE COURT:  All right.  Thank you.  Let me go

17   back to Mr. Rinaldi.  You've cited two cases on this

18   issue.  I'm still on this issue.

19             MR. RINALDI:  Yes, sir.

20             THE COURT:  Davis and what was the other case?

21             MR. RINALDI:  Davis versus Henning.

22             THE COURT:  All right.  I'm familiar with

23   Davis against Henning but let's go back to that -- there

14

1  was a second case.  What was the second case?

2          MR. RINALDI:  There was -- the new case that

3  is Burdette versus Brush Mountain Estates.

4          THE COURT:  All right.  Let's go first to

5  Davis.

6          MR. RINALDI:  Okay.

7          THE COURT:  What was the result in Davis?

8          MR. RINALDI:  The result in Davis was that the

9  Courts found that there was no express easement but then

10 went on to find that there was an easement by necessity.

11         THE COURT:  All right.  Now, with respect to

12 the first part, what's the holding of the Court?

13         MR. RINALDI:  The first part was -- the

14 holding of the Court was that because there was a merger

15 of title a previously granted easement had become null and

16 void as a matter of law.

17         THE COURT:  Now, that really doesn't go to

18 the, "subject to," issue, does it?

19         MR. RINALDI:  Well, it does because the

20 subsequent deed that conveyed the property said, "subject

21 to the easement," and that "subject to," was of an

22 easement that was of -- no longer of any legal effect.

23         THE COURT:  All right.

1          MR. RINALDI:  And so --

2          THE COURT:  What did the Davis Court say about

3    the language, "subject to?"

4          MR. RINALDI:  Well, it said that the language,

5    "subject to," is -- is -- let me see if I have a quote.

6          THE COURT:  Words and qualification and

7    notice?

8          MR. RINALDI:  Words and qualification and

9    notice; yes, of an existing right.

10         THE COURT:  And -- all right, let's go to the

11   second case.

12         MR. RINALDI:  Burdette versus Brush Mountain

13   Estates.

14         THE COURT:  What was the result there?

15         MR. RINALDI:  They found that there was no

16   easement.

17         THE COURT:  And why?

18         MR. RINALDI:  Because the document that

19   purported to create the easement was not sufficient to

20   create an easement.  So even making reference to --

21         THE COURT:  Was the word -- was the term,

22   "subject to," part of that decision?

23         MR. RINALDI:  Yes, they were.

16

1        THE COURT:  And what did the Court say about,

2   "subject to," in that case?

3        MR. RINALDI:  Once again, they said that these

4   are words of notice and qualification and not words of an

5   affirmative grant.

6        THE COURT:  If -- are there cases in the

7   Supreme Court of Virginia where, "subject to," does

8   suffice to create an express easement?

9        MR. RINALDI:  There is a single case which was

10  distinguished in Burnette and that case was -- I'm looking

11  for it now.  I've highlighted it here.  It was the

12  Strickland case.  Now the Strickland case was somewhat

13  different than the case before us because what it was, was

14  that it was a plat attached to a deed and there was a

15  notation on the plat that said, "area reserved for railway

16  -- RR -- R period, R period, railroad sighting."

17        And in that deed, the deed said, "This

18  conveyance is subject to all easements and restrictions

19  set forth on the attached plat."  And then what the Court

20  went on to find was that because the owner of both

21  properties they wanted to give effect to the language on

22  the plat dealing with the railroad sighting and they found

23  that -- what they found is that there was an easement for

1  a railroad sighting that -- forgive me, I might be -- I

2  might have this confused with another case.

3         But then I think they found that since there

4  was no railroad there to begin with that there was no

5  easement anyway.  I might have this confused with another

6  case.  But I think that is the only --

7         THE COURT:  Why don't you check to make sure

8  so that I don't --

9         MR. RINALDI:  I will do that.

10        THE COURT:  I'll give you a moment.

11        MR. RINALDI:  Okay.  Let me go over what I've

12  got.  Let me read from Burdette since I've got it here.

13  And this is where they -- where they talk about the

14  Strickland case.

15        "Although the crucial question in the case was

16  whether the deed was granted an easement for ingress and

17  egress across a 25 foot strip or only an easement to use

18  the railroad sighting if one was constructed on the 25

19  foot strip sometime in the future, we first addressed the

20  Defendant's assertion that their predecessor in title did

21  not convey any easement across the 25 foot strip but

22  merely reserved the strip for his own use.

23        We rejected the argument because the

1    Defendant's predecessor owned a fee simple title to the 25

2    foot strip and as such the reservation that was there

3    before had been meaningless.

4          Thus we concluded that in the context of the

5    particular deed at issue and the language stating this

6    easement is made subject to the easements and restrictions

7    shown on the said plat were appropriate words of

8    conveyance."

9          Now let me go to my notes on Strickland here.

10          THE COURT:  That's in the more recent case.

11          MR. RINALDI:  That's the more recent case in

12    interpreting Strickland.  And let me -- I've got

13    Strickland here.

14          THE COURT:  Tell me again why you think this

15    case is like Strickland and not like the case you've just

16    read from.

17          MR. RINALDI:  Oh, I don't think this case is

18    like Strickland at all.  I think this case is like the

19    regular case we just -- the case I just read from.  I

20    think what we have here is an ineffective attempt to

21    reserve an easement.

22          In the Strickland case somebody was trying to

23    reserve an easement to himself.  And in that case they

1    were found to be sufficient words were granted.

2           THE COURT:  All right.  I'm going to switch

3    issues now but let me give Mr. Cummings an opportunity,

4    very briefly, to respond to those.

5           MR. CUMMINGS:  Well, Judge, in the Burdette

6    case they didn't describe it.  They described by referring

7    to a plat.  And they described it by referring to a

8    previously recorded deed that was now defunct.

9           In our case, Exhibit 11 says specifically,

10   "Subject, however, to a right of way for ingress and

11   egress purposes for the benefit of the owners of lots 238,

12   239, 240 over the following portion of land hereby

13   released and contiguous said right of way being bound and

14   described as follows."

15          That is within the four corners of Exhibit 11.

16   There is no question that subject means to -- it means

17   there in the Burdette case they had two plats that weren't

18   in the language that made it clear to the reader that they

19   were trying to create an easement.

20          They just referred to a plat.  The plat didn't

21   have any language on it referring to easement or

22   description by metes and bounds.  And it referred to a

23   deed, as he said, which was defunct.  We've distinguished

1    that case.

2            And in the Davis case, the Court ruled that

3    under the circumstances of that case only there wasn't an

4    easement.  It's distinguishable from our case because the

5    deed there used the, "subject to," language which

6    specifically referred to a prior recorded deed that

7    created an easement which was no longer valid.

8            That's the distinction.  And there's also nice

9    language in Burdette that says you can create an easement

10   by reservation.  It's specifically in there.

11           THE COURT:  All right.  Now, let's turn to a

12   second issue.  That is the question whether or not the

13   trustees had the power to create an easement.  Mr.

14   Cummings, let's begin with you.  I think you would agree

15   that a trustee appointed in the deed of trust is empowered

16   only to undertake the -- those facts that are expressly

17   permitted by the deed of trust that are incidental to or

18   necessarily apply to the authority that is expressly

19   confirmed.

20           MR. CUMMINGS:  Yes, if you're talking about

21   purely a trustee I'll agree with that.  But when the trust

22   -- in this case, the trustee is joined by their note

23   holder.  And the note holder directs in that same document

21

1    it's referred to in the event of default, we're reserving

2    this right of way.

3             So that it's the note holder who has that

4    power to reserve the easement.  It's a contractual --

5             THE COURT:  You agree that the trustee didn't

6    have the power.

7             MR. CUMMINGS:  In and of itself, no.  The

8    trustee by themselves, in a vacuum, couldn't create an

9    easement, I agree with that.

10            THE COURT:  So the answer to the argument that

11   the trustee didn't have the power -- is it -- it's the

12   note holder that had the power.

13            MR. CUMMINGS:  The note holder has the power

14   and that's something they never addressed in their briefs.

15            THE COURT:  All right.  Mr. Rinaldi.

16            MR. RINALDI:  We don't address it because the

17   note holder doesn't have any interest in the property,

18   Your Honor.  The note holder is simply a party that is

19   owed money by someone who has a security interest in the

20   deed of trust.

21            I mean, strictly speaking going back to law

22   school and the common law, what you have is a conveyance

23   of bear legal title to a trustee to hold in the case of a

22

1 default under the note in which case the trustee is

2 authorized to sell the property under very specific

3 circumstances.  Only those circumstances set forth in the

4 note.

5     THE COURT:  Well, I understand.  Let me go

6 back to Mr. Cummings because I didn't ask you the question

7 I should have asked you and then you can respond to that.

8 Mr. Cummings, why does the note holder have any power in

9 this case to do anything?

10     MR. CUMMINGS:  Cause the note holder has an

11 interest to get the full value if there is -- in the event

12 of default.

13     THE COURT:  Well that's -- that may be true

14 but so what?  What property -- what power or authority

15 does that give him to authorize the creation of an

16 easement?

17     MR. CUMMINGS:  That -- well, that lien --

18     THE COURT:  In other words, what I'm saying is

19 that he had or the note holder -- because the note holder

20 has an interest in the value of the property hoping to get

21 paid that if the note holder acquiesces in this easement,

22 which might diminish the value of the property, that that

23 authorizes the easement.

23

1          MR. CUMMINGS:  With the deed -- the deed of

2    partial release, absolutely, because she's giving up

3    something.  She's giving up part of her lien on a major

4    portion of that property for Mr. Hedrick.

5          And she's retaining -- as consideration for

6    that, she is retaining a right of way to enhance the value

7    of the property the lien is on.  It's pretty axiomatic.

8          THE COURT:  All right.

9          MR. CUMMINGS:  And it's -- we're talking

10   common law contract principles here.  You don't need a

11   statute to create that.  And Judge Hedrick acquiesced in

12   it and the consideration is referenced in the document

13   itself.  And in every document that follows it's referred

14   to.

15         THE COURT:  All right.  Let me go back to Mr.

16   Rinaldi on that issue, namely, whether or not -- who

17   signed the deed of release?  Of course, it was the

18   trustee.

19         MR. RINALDI:  The trustee and the note holder.

20         THE COURT:  And the note holder.

21         MR. RINALDI:  Mr. Leonard, whose the owner of

22   the property --

23         THE COURT:  Now, tell me, succinctly, why the

24

1  note holder's signing of that deed of release is

2  irrelevant or insufficient to create an easement.

3        MR. RINALDI:  The deed itself states the

4  reason why the note holder joins in and the note holder

5  just joins in to authorize the trustees to sign the

6  release that -- and let me find that quote in the deed of

7  release, Your Honor.

8        What it says is that -- if I can find it --

9  "The said party in the second part has sold -- has sold,

10  and hereafter describe lots and parcels conveyed and has

11  paid $45,000 on the account of the said indebtedness to

12  the party of the third part the holder of the note" --

13        THE COURT:  Just a moment, please.

14        MR. RINALDI:  Okay.

15        (Pause.)

16        THE COURT:  I'm sorry, Mr. Rinaldi, you can

17  proceed.

18        MR. RINALDI:  Quite alright, Your Honor.

19  First, let me point out that the Plaintiff has offered no

20  legal authority that says that the note holder has an

21  interest in the real estate.  We haven't seen a case on

22  that I think because there is none I don't think.

23        But what the deed of release says it says that

1    the note holder who has directed the parties hereto of the

2    first part being the trustees to execute these presents as

3    evidenced by joining herein.

4              So the only reason the note holder signs in

5    the deed of release is to evidence his consent or her

6    consent to the release but not to the creation of an

7    easement.

8              That's just to cover the trustees in case

9    there's an argument that the trustee were not authorized

10   by the note holder, the beneficial owner of the note, but

11   has no interest in the property to release the deed of

12   trust.

13             That's still done today.  It's a standard

14   occurrence.  The note holder can now unilaterally release

15   the deed of trust without the joiner by signing a

16   certificate of satisfaction.

17             THE COURT:  Well, I'm usually not much

18   interested in what normally happens because often what

19   normally happens may be defective in some way.  So let me

20   go on to the next issue.  And I'll start with you, Mr.

21   Rinaldi.

22             I think everyone would agree that when the

23   legal title to both the dominant and servient parcels is

26

1    held by the same person or entity, a valid easement is

2    extinguished because the doctrine of merger applies.

3    Indeed that is one -- came up in one of the cases you

4    cited earlier.

5            Now, I think there is -- that's a black letter

6    statement of indisputable law.  But here -- the exit --

7    following the execution of the partial release of 1932, I

8    think the trustees held legal title to the dominant tract,

9    that's 238, 239 and 240, under the terms of the Woodward

10   deed of trust.  Am I right?

11           MR. RINALDI:  Exactly, Your Honor.

12           THE COURT:  Now, Hedrick held legal title to

13   the servient tract, lots 217 and 241, with the exception

14   of the Remy (ph.) property.  Is that correct?

15           MR. RINALDI:  That's correct, Your Honor.

16           THE COURT:  So in your view, there isn't unity

17   of title?

18           MR. RINALDI:  Your Honor, --

19           THE COURT:  Or there is?

20           MR. RINALDI:  Well, Your Honor, we cited Scott

21   versus Utah, which is an 1873 case for the general

22   proposition unity of title destroys the easement.  In

23   thinking about this, actually last night, in reading the

1   two cases that they've cited, first the American Small

2   Business versus Frenzelle (ph.), that says you knew the

3   title was destroyed when a deed of trust is conveyed on

4   one property.  That property was a case where the Court

5   was deciding --

6           THE COURT:  I'm a little disappointed you read

7   them only last night.

8           MR. RINALDI:  No, I read them before that as

9   well.  I was just boning up on them last night believe me,

10  Your Honor.  But in that case, unity of title was an issue

11  because of a combination that landlocked one parcel.  And

12  that was long after the deed of trust was put on the one

13  parcel and not on the other.

14          In that case, they said that unity of title

15  was severed for the purposes of determining whether there

16  was an easement by necessity because the severance of the

17  unity of title did not take place at the same time as the

18  act that made the property landlocked.

19          In the Larchmont Homes case, also which they

20  cite, is -- has to do with whether a conveyance under a

21  contract constitutes a conveyance which would make one of

22  the parties entitled to a payment for water and sewer tax.

23  It really has nothing to do with easements.

1            But with -- the case I want to bring your

2     attention to is Reed versus Jones.  And I apologize that

3     this wasn't in our briefs, but it's 152-226.  It's a 1929

4     case and it's a merger case.  And it says that, "Easements

5     are also extinguished by operation of law if the season of

6     the dominant and servient tenant becomes united and one in

7     the same person."

8            Now season is a different concept than title.

9     You can have two people who have different types of -- you

10    can have different types of title on the property but you

11    can have possession or a season of both pieces of

12    property.

13            This has been an established principle in the

14    English law from a very early time.  And it was distinctly

15    recognized in the case of Surry versus Piggott (ph.)

16    (unintelligible) in which the difference between easements

17    and natural rights in this respect was pointed out.

18            The true reason why unity of season has the

19    effect of extinguishing easements is very apparent on

20    consideration of the nature of those rights and their

21    origin.  Easements are, by their nature, rights possessed

22    by the owner of --

23            THE COURT:  What is season?

29

1          MR. RINALDI:  Season is possession, Your

2    Honor.  So season is not underlying title.  So in this

3    case, we have unity of season which means that Mr. Hedrick

4    had equitable title to both properties.  He had the right

5    of access to both properties.  And that's why the merger

6    exists.  You don't have a --

7          THE COURT:  (Unintelligible).

8          MR. RINALDI:  Yes.

9          THE COURT:  The trustees held legal title to

10   the dominant tracts, 238, 239 and 240 but Hedrick had

11   beneficial.

12         MR. RINALDI:  Had beneficial title.

13         THE COURT:  And then under -- and Hedrick held

14   legal title --

15         MR. RINALDI:  And beneficial.

16         THE COURT:  -- and beneficial title to the

17   servient tract, 217 and 241, except for the Remy property.

18         MR. RINALDI:  Except for the Remy property.

19   So he, therefore, had a right of possession.  And the

20   reason the merger exists is because you cannot have a

21   right of access across your own property.  It's just

22   simply axiomatic that why would you need a recorded right

23   of access or any kind of right of access across your own

1   property.  So there --

2                   THE COURT:  All right.

3                   MR. RINALDI:  -- was no need for an easement

4   across the property for months and months and months

5   actually up until the foreclosure because Hedrick owned

6   both properties.

7                   THE COURT:  All right.

8                   MR. RINALDI:  So that the deed of partial

9   release couldn't have created an easement.

10                  THE COURT:  All right.  Mr. Cummings.

11                  MR. CUMMINGS:   Yes, Your Honor, the American

12  Small Business case very clearly says if you got a deed of

13  trust that severs the property and defeats the document of

14  merger.  And he --

15                  THE COURT:  Tell me about that case.

16                  MR. CUMMINGS:  American Small Business.

17                  THE COURT:  Or if you're not familiar with it

18  then I'm not going to take the time.

19                  MR. CUMMINGS:  It was an easement of

20  necessity, Your Honor.  It says you have to have unity

21  title -- have to be a common owner and ruling that there

22  wasn't severance --

23                  THE COURT:  What's the cite of that case I'll

1    read it myself?

2              MR. CUMMINGS:  Very good, Your Honor.  And

3    before I forget, Your Honor, on page 13 of our brief we

4    also point out Virginia Code Section 55-66.4 that says,

5    "All partial releases prior to 1966 are declared valid."

6    And we discuss -- and we also distinguish --

7              THE COURT:  I don't think there's any attack

8    on the partial release being invalid.  I think the attack

9    is the partial release doesn't create an easement.  That's

10   different.

11             MR. CUMMINGS:  Well, that comes down to the

12   point of the note holder and that's taken up extensively

13   by the expert opinions back and forth both sides have

14   cited.

15             THE COURT:  Well, the expert opinions don't

16   move me for this reason.  This is a question of law.  I

17   don't care what people think what was the practice.  An

18   issue of law in American courts is an issue for the Court,

19   not an issue of fact for testimony.

20             So it doesn't matter what the experts would

21   say about what the law is and what the practice is.  But I

22   am interested in your argument that there is merger.  He

23   says, and let me reiterate what he says so that you can

32

1  address it, he says, "Look 238, 239 and 240, legal title

2  was in the trustees of those parcels and beneficial title

3  was in Hedrick.

4          Hedrick also had legal and beneficial title to

5  the servient tract which is 214 [sic] and 241 less the

6  Remy property and, therefore, there is merger of title --

7  or merger because under this case that he cites he

8  concedes the first time today, that all you need is a

9  right of possession so the beneficial title is sufficient.

10 What's your view and what case would you cite in

11 opposition?

12         MR. CUMMINGS:  Well, I'm relying on the

13 American Small Business case.  There's no law to the

14 contrary otherwise.

15         THE COURT:  All right.  Well, let's --

16         MR. CUMMINGS:  And once that --

17         THE COURT:  -- stop for a minute.  Tell me

18 what the -- what were the facts and holding of that case.

19         MR. CUMMINGS:  Well, the Court said that unity

20 of title is severed on the date that the deed of trust was

21 placed on parcel A.

22         THE COURT:  Yes, you're reading.  I want to

23 know what the facts were, what the holding was.

1          MR. CUMMINGS:  Yes, Your Honor.

2          THE COURT:  I want to know whether those words

3    you're reading really have any application to the point

4    that you're asserting here.

5          MR. CUMMINGS:  Right.  Well, there were two

6    parcels sold.  And they were subject to a deed of trust.

7    And they claimed unity of title and --

8          THE COURT:  For what purpose?

9          MR. CUMMINGS:  -- extinguishment --

10    extinguishment of -- of the -- the right of way there.

11    And the Court said because you've got a deed of trust,

12    that severs the unity.

13          THE COURT:  What's the cite of that case, I'm

14    sorry?

15          MR. CUMMINGS:  It's at 238 Va 458, 1989.

16          THE COURT:  Do you have the southeast cite?

17    Well, it doesn't matter.

18          MR. CUMMINGS:  Yeah, it's 383 S.E. 2d 731.

19          THE COURT:  All right.  And your view is that

20    that case holds that becasue there was a deed of trust on

21    these properties that --

22          MR. CUMMINGS:  That precludes their unity of

23    title argument.

34

1         THE COURT:  All right.  Mr. Rinaldi.

2         MR. RINALDI:  Your Honor, the question of

3   American Small Business versus Frenzelle was whether an

4   easement by necessity existed.  What had happened was, was

5   that there were two parcels of land.  One was encumbered

6   by a deed of trust and the other was not.

7         Both were owned by the same person.  There was

8   later a condemnation of a road that came through and

9   landlocked the one parcel.  And this was after the two

10  parcels had been separately conveyed.

11        The question before the Court was whether an

12  easement by necessity would exit across parcel A, for lack

13  of a better way to call it, across parcel A, servient

14  parcel B, because of the condemnation that left parcel B

15  landlocked.

16        The Court said that because the act that

17  created the situation -- the act that landlocked the

18  parcel did not happen at the same time of the unity of

19  title of the property that the unity of title is severed.

20  There could be no easement by necessity.

21        It is not a merger case, Your Honor.  It is an

22  easement by necessity case and the question is when the

23  necessity arises.

35

1          THE COURT:  Do you have any case -- any

2    Virginia case in which there was unity of -- whether there

3    was merger as a result of season rather than title?

4          MR. RINALDI:  The only case is the one that I

5    just cited, which is the Rose (ph.) case and that one

6    expressly deals with the issue of season, merging two

7    documents versus -- and I don't know if the deed of trust

8    was an issue in that question.  I think just the issue was

9    whether --

10          THE COURT:  And what was the cite on that

11    case?

12          MR. RINALDI:  That case is 152 Va 226.  And if

13    you'd like a copy of it I have it.  I can give you a copy

14    of it too.

15          THE COURT:  All right.  Give a copy to Mr.

16    Cummings and hand a copy to the court security officer.

17          MR. RINALDI:  I don't have two copies.  I

18    should have said something before I volunteered.

19          THE COURT:  All right.  I'll get my own copy

20    in a moment.  You have something, Mr. Cummings?

21          MR. CUMMINGS:  Yes, Your Honor, the only --

22    with regard to this point we're discussing, it's important

23    to remember that our position is, the right of way was

36

1    reserved in '32.  It wasn't created in '35 until the

2    foreclosure.

3              In '35 there was no unity of title.  By that

4    time, Hedrick had --

5              THE COURT:  Yes, that's an interesting point.

6    Tell me again why you say it was just reserved in 1932

7    with this deed of release.

8              MR. CUMMINGS:  Right.

9              THE COURT:  Just reserved, not created?

10             MR. CUMMINGS:  That's correct.

11             THE COURT:  And then you say in 1935 it came

12   to life.  Why?

13             MR. CUMMINGS:  Because of the foreclosure.

14   That was the salient event that created the easement.  If

15   he had paid his mortgage that easement would have

16   extinguished.  But instead, that was the event that the --

17             THE COURT:  Why would -- if he had paid his

18   mortgage would the easement haven extinguished?

19             MR. CUMMINGS:  Because you would have had

20   unity of title again.  Well, you wouldn't have because he

21   conveyed the other two properties.  But that was -- it

22   would have fulfilled the condition.  And that was the only

23   thing the lienor had with -- the biggest thing she feared

37

1    was the foreclosure.

2              And then she realized, geez, if I'm going to

3    let him sell off these other two properties and release

4    the lien, I need to have access to those properties.  The

5    property was on a corner of land, you've seen the plats.

6    By reserving that right of way, she enhanced the value of

7    what was left of the property she had the lien.

8              So by '35 Hedrick had conveyed the other two

9    properties so there's no unity of title in '35 when the

10   easement was created.

11             THE COURT:  Created by what?

12             MR. CUMMINGS:  By the event of the

13   foreclosure.

14             THE COURT:  All right.  Now, I think I

15   understand your argument there.

16             MR. CUMMINGS:  And at that point -- from that

17   point every deed, every instrument from there to the

18   present refers to, "the right of way," not, "rights of

19   way, the right of way."

20             THE COURT:  All right.

21             MR. CUMMINGS:  Now, Hannah doesn't --

22             THE COURT:  It doesn't really matter if it's

23   not -- if there wasn't a valid easement.  It doesn't

38

1  matter how many --

2          MR. CUMMINGS:  Well, that's true.  And --

3          THE COURT:  -- subsequent instruments were --

4          MR. CUMMINGS:  -- if it's an invalid --

5          THE COURT:  -- referred to.

6          MR. CUMMINGS:  -- easement they can say

7  whatever they want to say.

8          THE COURT:  Mr. Rinaldi, you didn't comment on

9  this statement.  It really doesn't appear in the briefs,

10  as I recall, that the easement was not created in 1932.

11  It was created -- it was only -- it was sort of -- it was

12  inchoate to some extent till '35 when the failure to pay

13  the debt, it sprung into life.  What's your view?

14          MR. RINALDI:  We are blazing brand new trails

15  in Virginia law, Your Honor.  There's nothing -- nothing

16  that says that, Your Honor.  What we have is a deed of

17  trust that conveys the property and makes no mention of

18  the easement -- I mean not -- the trustee's deed, makes no

19  mention of the easement whatsoever.

20          All it says is it describes the property as

21  originally described in the deed of trust.  Uses the same

22  legal description as the original deed of trust and then

23  just says less and except that land released from the

1    operation of the deed of trust in deed book 331 and page

2    310.

3              There's not a single reference to the easement

4    in the trustee's deed.

5              THE COURT:  All right.

6              MR. RINALDI:  If this easement was so darned

7    important why didn't they say anything about it in the

8    trustee's deed, Your Honor?

9              THE COURT:  All right.

10             MR. RINALDI:  Because it didn't exist, that's

11   why.

12             THE COURT:  Let me switch now to the other two

13   issues.  And here I'm going to give you more of a

14   unfettered opportunity to argue beginning with Mr.

15   Cummings.

16             First, the implied -- in fact, you can string

17   them together.  Just tell me when you're through with

18   implied and when you're going on to prescription.  All

19   right.  Mr. Cummings.

20             MR. CUMMINGS:  Well, Your Honor, the Jetson

21   Remy house is an anomaly; okay, because that wasn't part

22   of these deeds of partial lease.  It was sold, I think, in

23   '28.  We've got -- it's in the joint exhibit.

1            And that property has a rear -- a clause (ph.)

2    of rear door that's only accessible from the rear of the

3    property.  They don't -- there's no easement by necessity

4    because there's access to North Irving Street from the

5    front door.

6            But the rear of the proeprty, the only access

7    is -- would be if they were able to use the right of way,

8    which we claim is a valid right of way that's already

9    present, they -- Remy has been using and then Ms. Lee

10   purchased that property.  And, I think, in '56 they bought

11   the whole plat and that of the Remy property.

12           So they assumed the easement by implication

13   for that Remy property.  It meets all the criteria for

14   easement by implication.  The Remy property is not

15   included.

16           THE COURT:  What do you contend are the

17   requirements for establishing easement by implication?

18           MR. CUMMINGS:  It -- we set that forth in our

19   brief and it's implied.  It's the only way to get there

20   and it's been in use for at least 20 years.

21           THE COURT:  Those are the elements of an

22   easement by implication?

23           MR. CUMMINGS:  I'm sorry, Your Honor?

1          THE COURT:  I don't think so.  I could be

2    mistaken but why don't you look at that and let me --

3          MR. CUMMINGS:  The common grantor -- easement

4    existed --

5          THE COURT:  What are the elements that must be

6    shown to establish an easement by implication?

7          MR. CUMMINGS:  And they're set forth on page

8    23.  You have to have a common grantor, easement in

9    existence at the time of severance, which we had.

10   Easement as apparent, continuous and reasonably necessary,

11   which we claimed through the evidence and the authorities

12   we cite in our brief and the evidence that it's been used

13   continuously.

14         THE COURT:  What easement exited -- if there

15   isn't an express easement, then what easement would be

16   created by implication?

17         MR. CUMMINGS:  Because it's apparent.  The

18   only way to get to the rear of that property is over the

19   servient state -- over the property that Hannah Hedrick

20   owned and was subsequently transferred to someone else

21   after Hannah had --

22         THE COURT:  All right.

23         MR. CUMMINGS:  And that's taken up in page 23

42

1    and 24.  And I just want to reiterate before we get

2    further along, they will cite no law precluding the note

3    holder from reserving an easement as part of the --

4              THE COURT:  Well, you haven't cited any that

5    allows the note holder to --

6              MR. CUMMINGS:  Yes, but she conditioned -- she

7    conditioned the partial release that benefitted Hedrick

8    and it references it.  And he --

9              THE COURT:  That doesn't address whether she

10   has the power -- the authority to do it.

11             MR. CUMMINGS:  As always.

12             THE COURT:  That only says that she understood

13   that by agreeing to this partial release that that

14   easement would be there.  That doesn't give her the power

15   to create it.  And I'm leaving that.

16             MR. CUMMINGS:  Okay.

17             THE COURT:  You don't have authority and it's

18   really your burden to show that a note holder has

19   authority.  But let's go now to the implication.  I'm

20   going to have you address that, Mr. Cummings, again after

21   I hear from Mr. Rinaldi.  He'll have the chance to

22   respond.

23             MR. CUMMINGS:  Thank you.

43

1          THE COURT:  What are the elements that must be

2    established to prove an easement by implication?

3          MR. RINALDI:  There must a common grantor.

4    There must be a use in existence at the time of the

5    severance and the use must be apparent, continuous and

6    reasonableness --

7          THE COURT:  So I think what Mr. Cummings said

8    there must be an easement.  He didn't -- he was trying to

9    -- he put himself too heavy a burden.

10          MR. RINALDI:  If --

11          THE COURT:  All he has to show is not an

12    easement but he has to show use.

13          MR. RINALDI:  Exactly, Your Honor.  I mean,

14    the classic situation of an easement by implication is

15    where pop sells off the back 20 acres of the farm.  And

16    there's an old farm road that leads to the back 20 acres

17    and nobody bothered to reserve an easement to it.

18          And the old farm road has been used and it was

19    used at the time of the severance and that's -- that's

20    where it comes from.

21          THE COURT:  So this would go to evidence about

22    whether it was used.

23          MR. RINALDI:  To whether it was used which we

44

1    have none of.  And also whether it's necessary which is

2    not necessary.  Now Mr. Cummings says the only way to the

3    back of the property is through the easement.  Well,

4    that's not exactly true, Your Honor.

5            The property has two doors on the front.  One

6    door goes directly to some stairs upstairs.  One door goes

7    into this building that can be charitably described as

8    maybe a shotgun shack.

9            You have another door that goes in the front

10   and you walk right through the building.  And there's a

11   back door to the building that you can open up and be in

12   the back of the property.

13           The property is about -- there's about three

14   or four feet between the back of the property and my

15   client's property line.  So they do have access to the

16   back of their property.  They have it through their own

17   property.  Now, it might not be convenient to access cause

18   you got to open two doors but it's access.  So there is --

19           THE COURT:  That isn't even in this record

20   right now.

21           MR. RINALDI:  It is in the record to the

22   extent that it is in the photographs and the --

23           THE COURT:  All right.

45

1          MR. RINALDI:  -- and the survey that we

2     submitted as an exhibit.

3          THE COURT:  But who are the common -- who is

4     the common grantor?

5          MR. RINALDI:  They submit that the common

6     grantor was one of the very first conveyances.  It has

7     nothing to do with the partial release.  It took place

8     years before the partial release.

9          It's kind of -- my thinking on this, Your

10    Honor, that if there was an easement by implication it

11    would have been hashed out before all of this other stuff

12    and the partial release took place.

13         And you've got to remember that the Remy part

14    of the property was a stranger to the title.  It was a

15    separate property until the sixties when the Lees took

16    title to the property.  Up until then it had its own

17    independent chain of title and its own independent chain

18    of ownership that went back to the 1905's I think.

19         So they're claiming a totally separate event

20    that happened well before any of this deed of release or

21    anything else.  But the bottom line is, is that an

22    easement by implication has to be proved by clear and

23    convincing evidence.  I think it's clear and unequivocal

1    evidence that it exists and simply saying we can't get to

2    our back door isn't clear and unequivocal evidence.

3              THE COURT:  All right.  Mr. Cummings, you'll

4    have the last word on the implication.

5              MR. CUMMINGS:  Yes, Your Honor, the law is, is

6    the easement apparent, continuous and reasonably necessary

7    at the time; okay.  Fallingsby (ph.) --

8              THE COURT:  At what time?

9              MR. CUMMINGS:  In 1956 when they purchased --

10   when they purchased the property.  Fallingsby owned all

11   the property around Remy.  Remy was -- the Remy Building

12   was landlocked.  There was a common grantor.

13             THE COURT:  Who was the common grantor?

14             MR. CUMMINGS:  The common -- well, the common

15   grantor -- it was originally Hedrick.  I'm sorry,

16   Fallingsby to Hedrick.  Fallingsby (ph.) owned the

17   property when Remy bought it in 1926.  So there's no way

18   to get to the -- there's no way to access that closet in

19   the back unless you come across the servient estate.

20             THE COURT:  All right.  Thank you.  Let's go

21   to the -- did you have something you wanted to add?

22             MR. RINALDI:  Your Honor, I just want to give

23   Mr. Cummings an opportunity to correct the record.  He

1   said that the Remy property is landlocked.  It has

2   frontage on North Irving Street.  Would you like to

3   correct the --

4              MR. CUMMINGS:  Yes.  It has frontage on North

5   Irving.

6              THE COURT:  All right.

7              MR. CUMMINGS:  But the rear utility closet is

8   not accessible by North Irving.

9              MR. RINALDI:  I'd like to give him the

10  opportunity to correct the record on that because I think

11  what he meant to say is that you can go through the front

12  door and get to the back door.  It just doesn't have

13  direct access to North Irving Street.

14             MR. CUMMINGS:  There's only a foot and a half

15  of space around that building, Your Honor.

16             THE COURT:  Let's go now to prescription.

17  Now, on prescription -- no, I'm sorry.  I think we've

18  covered the express.  We've now covered necessity.  Let's

19  go to prescription.  Mr. Rinaldi, what's your view -- what

20  are the elements of acquiring an easement by prescription?

21             MR. RINALDI:  It is an open, obvious and

22  notorious use for a period of 20 years.  I think we

23  learned in law school HAVEU.  HAVEU, it's a hostile,

1    actual, visible, exclusive and uninterrupted.

2              THE COURT:  So what's the state of the current

3    record on that?

4              MR. RINALDI:  The state of the current record

5    is, is that you could find, as a matter of law, that no

6    prescriptive easement exists if you find that any use by

7    the Lees was pursuant to a mistaken belief that they had a

8    recorded right of access.

9              There's two cases on that, Chaney versus

10   Haynes, 250 Va 155, Nelson v Davis 262 Va 230.  Both of

11   those say that the essence of an adverse use is the use

12   that you -- when you know that you're not supposed to be

13   using it in essence.

14             And in a way you are operating under the

15   mistaken belief that you have a right of access by

16   definition your adverse -- your use is not adverse.  So,

17   Your Honor, if you find as a matter of law, that the Lees

18   were acting under the wrong assumption that they had a

19   right of access, prescriptive rights can never arise.

20             If you decline to make that determination,

21   then you would have the issue of fact before you that has

22   to be proved by clear and convincing evidence.  What the

23   Court has in front of it now is conflicting testimony.

49

1          Testimony of Mrs. Lee and her son-in-law and

2    her daughter and the testimony of Mr. Strawver (ph.) who

3    is a former owner of the Zom property as to what the

4    extent of the use of -- of the use was and how much it was

5    used and things like that.

6          I think in order to make a proper

7    determination on the issue of prescriptive easement, if

8    you're going to find, as a matter of law, that their use

9    was not pursuant to mistaken belief that they had a right

10   of access then I think you would have to take evidence.

11         You'd have to look Mrs. Lee in the eye and let

12   -- and see what she has to say about her use of the

13   easement.  You'd have to look Mr. Strawver in the eye and

14   she what he has to say as to his use of the evidence.

15         I don't think you can have clear and

16   convincing finding of a prescriptive easement on a summary

17   judgment motion (unintelligible) you have before you, Your

18   Honor.

19         THE COURT:  Mr. Cummings, we're on

20   prescriptive easements.

21         MR. CUMMINGS:  Yeah, I think I agree with his

22   last comment.

23         THE COURT:  I would suggest --

1          MR. CUMMINGS:  I'm sorry.

2          THE COURT:  I know it hadn't been but only --

3    nearly 24 years since I was standing where you are.  It's

4    hard to believe that I've been here that long.  And I was

5    always very eager to say certain things that I thought

6    needed to be said.

7          Now, that I've been doing this for more than

8    20 years, I realize how important it is to address what

9    the Judge is thinking.  So let me begin with my question.

10   First, do you agree with the elements of a prescriptive

11   easement that Mr. Rinaldi stated?

12         MR. CUMMINGS:  Yes, Your Honor.

13         THE COURT:  Now, tell me why you think a

14   prescriptive easement exists, assuming that there isn't an

15   easement by implication and assuming there isn't an

16   express easement.

17         MR. CUMMINGS:  You have to remember these are

18   two separate properties.  And with respect -- prescriptive

19   easement with the Remy property, we're not claiming it's a

20   matter of right -- we're not looking to the recorded

21   easements.  We're saying this is for the maintenance of

22   and access to the Remy Building since the early eighties.

23         Since Plaintiff's in-laws were

51

1     (unintelligible) they maintained the Remy House and that

2     easement area till 1979 when the father-in-law passed away

3     in the 1980's.  A son-in-law, Mr. Williams, maintained

4     that property, got around that property.

5            And it's not -- there -- it's not under a

6     claim of right because of the reserved easement that we've

7     been talking about.  This is totally independent.  This is

8     two separate issues here.  It's only with respect to that

9     Remy Building.  You follow me?

10           THE COURT:  I think so but continue.

11           MR. CUMMINGS:  Okay.  So there's two different

12     accesses and there's two different reasons.  This is

13     mainly for maintenance and access to the rear of that

14     property.  If they don't have an easement there's no way

15     to maintain that building, no way to get around it.

16           Because that building basically was -- when

17     you look at Exhibit 1, the Sonnergan (ph.) survey, you

18     look at that -- you look at that Remy property, it doesn't

19     show any land around it.

20           THE COURT:  Well, I don't know that you're

21     addressing the issue of prescriptive easement.  What does

22     this record show about a right of the -- to an easement by

23     prescription?

52

1          MR. CUMMINGS:  Because it's been used

2    continuously for more than 20 years, Your Honor.

3          THE COURT:  All right.  I do -- there are

4    affidavits that reflect that, Mr. Rinaldi, aren't there?

5          MR. RINALDI:  Your Honor, what I'll say is

6    that there are conflicting affidavits and this is a matter

7    of, "Yes, it is; no, it's not".  And like I say, Your

8    Honor, this has got to be proved by clear and convincing

9    evidence.

10          And so what we have here is conflicting

11    testimony, conflicting affidavits.  So it's either a

12    question of fact or if the Court is so inclined to show

13    that the affidavits on the record are not clear and

14    convincing then the Court can find, as a matter of law,

15    that they haven't presented evidence that show a clear and

16    -- by clear and convincing evidence that the use of the

17    easement was hostile, adverse, visible, exclusive and

18    uninterrupted for a period of 20 years.

19          That's a lot of evidence you need to prove

20    that by clear and convincing evidence, Your Honor.

21          THE COURT:  All right.  Mr. Cummings, I'll

22    give you the last word.

23          MR. CUMMINGS:  Yes, Your Honor, we've been

53

1    using that property since 1926 under a claim of right.

2    We're not claiming it's part of express easement.

3              THE COURT:  All right.  What do you mean by

4    that last statement, Mr. Cummings?

5              MR. CUMMINGS:  We're not claiming it's part of

6    the express easement that was -- we talked about 20

7    minutes ago.

8              THE COURT:  Right.  I understood that you were

9    really claiming an easement by one of three arguments.

10   Either an express easement, an easement by implication or

11   an easement by prescription.  Now the easement by

12   prescription you're telling me is not contiguous or

13   exactly like the easement by -- and I understood that.  I

14   understood that.

15             MR. CUMMINGS:  It's two different things.  The

16   Remy property we're claiming easement by implication.  And

17   then easement by prescription on the other property, 238,

18   239, we're claiming an express easement was created in

19   1935 with foreclosure.

20             THE COURT:  Was that your understanding too,

21   Mr. Rinaldi?

22             MR. RINALDI:  That's my understanding of what

23   he was saying.  That's not to say that I agree with what

54

1    he was saying, Your Honor.  There's one area here.

2    There's one area in dispute.  It's not like this is a

3    separate area used to access the Remy property.

4             I think what this is is a fall back position

5    because -- because there isn't -- there is a significant

6    question about the existence of the easement by an express

7    grantor.  Virginia law says tie goes to the Defendant.

8             And so we think that it's a slam dunk that

9    there's no express easement.  And so their use of the

10   easement was under the mistaken belief that they had the

11   right to use it.  No prescriptive rights could ever occur

12   in that situation.

13            THE COURT:  All right.  I said you'd have the

14   last word, Mr. Cummings.  I want you to have it.

15            MR. CUMMINGS:  All right.  With respect to

16   that, the implied easement was created in 1928 with the

17   (unintelligible).  And the prescriptive use is only as to

18   that little Jetson Remy House, Your Honor.  The express,

19   1935 easement is for a different purpose.

20            So we're not relying on that.  We're relying

21   on separate grounds.

22            THE COURT:  Yeah, but his point was that if

23   you -- you can't get a right by prescription if it's under

1    -- I think as you put it, Mr. Rinaldi, if they're under --

2    if it's not under any color or title they can't do it;

3    right?

4              MR. RINALDI:  Yeah, the language straight from

5    Chaney v Haynes is, "Under the mistaken belief of a

6    recorded right cannot be advice [sic] -- cannot be adverse

7    as long as such mistake continues."

8              MR. CUMMINGS:  And my response to that -- that

9    case talks about the same property.  These are different

10   and distinct properties.  That's the difference.

11             THE COURT:  All right.  I'm going to take a

12   recess in this matter for ten minutes and I have another

13   matter at one.  Mr. Wood, let's change that to 1:15.

14             COURT SECURITY OFFICER:  Yes, sir.

15             THE COURT:  Court stands in recess.

16             (Recess.)

17             THE COURT:  All right.  The arguments have

18   been helpful to the Court's understanding of the issues in

19   this case.  There is already more than adequate briefing,

20   more than adequate submissions.

21             I'm going to take the matter under advisement

22   and deal with it as promptly as I can which should be

23   fairly promptly.  No further filings are either needed or

1    permitted.  I'm done with this summary judgment aspect of

2    it.  I don't know whether it will be, at this point, fully

3    dispositive or not but I have all that I need in this

4    matter.

5                              *  *  *  *  *

6                   (Whereupon, at approximately 12:55 o'clock

7    p.m., the hearing in the above entitled matter was

8    concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

57

* * * * *

CERTIFICATE OF REPORTER

I, DARYL F. GARRETT, a Verbatim Reporter, do hereby certify that I took the stenographic notes of the foregoing proceedings which I thereafter reduced to typewriting; that the foregoing is a true record of said proceedings; that I am neither counsel for, related to, nor employed by any of the parties to the action in which these proceedings were held; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

_____/s/_____
Daryl F. Garrett
Verbatim Reporter