IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
OCT 2 2 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

SUN YUNG LEE, )
    Plaintiff, )
)
v. ) Civil Action No. 1:09cv402
)
ZOM CLARENDON, L.P., )
    Defendant. )

## MEMORANDUM OPINION

At issue on cross-motions for summary judgment in this diversity dispute is the existence of an easement. More specifically, plaintiff, the proponent of the disputed easement, argues for the existence of the easement by relying on three alternative theories: (1) an express easement; (2) an easement by implication; or (3) an easement by prescription. Defendant counters that all three theories fail either as a matter of law or on the undisputed record facts. Defendant also argues, as an affirmative defense, that plaintiff abandoned the easement.

I.[1]

---

[1] The facts set forth here are derived from the parties' pleadings, exhibits submitted in support of the parties' respective Motions for Summary Judgment, and the Joint Statement of Uncontroverted Facts filed pursuant to an Order dated July 16, 2009, *Lee v. ZOM Clarendon, L.P.*, 1:09cv402 (E.D. Va. July 16, 2009) (Order). It must be noted that the parties, in filing their respective Motions for Summary Judgment, lamentably failed to comply with Local Civil Rule 56(B), which requires that "[e]ach brief in support of a motion for summary judgment . . . include a specifically captioned section *listing* all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on," and concomitantly that "[a] brief in response to such a motion shall include a specifically captioned section *listing* all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing parts of the record relied on to support the facts alleged to be in dispute." (Emphasis added.) Nevertheless, as a matter of grace, and because the parties' filing of the Joint Statement of Uncontroverted Facts somewhat mitigates the noncompliance, adjudication of the cross-motions for summary judgment will proceed.

Plaintiff, a Virginia citizen and the owner of the putative dominant estate, owns two distinct but adjoining parcels in Arlington, Virginia. The first parcel consists of Clarendon Subdivision lots 238-240 in Arlington. More familiarly, this property is located at the intersection of N. Irving Street and Washington Boulevard at 3201 Washington Boulevard. The second parcel consists of portions of lots 217 and 241 of the Clarendon Subdivision, and bears the address 1122 N. Irving Street. This second parcel is described by the parties as the "Reamy property" or "Reamy house." Plaintiff's family purchased these parcels in 1963.

The sole defendant is ZOM Clarendon, L.P., a limited Delaware partnership authorized to do business in Virginia. Defendant owns the putative servient estate, which consists of Clarendon Subdivision lots 206-216, 242-247, and, importantly for the purposes of this case, those portions of lots 217 and 241 that do not include the Reamy property. Defendant purchased this property, which is immediately adjacent to plaintiff's property, in 2006, intending to build a mixed-use high rise with both residential units and retail space.

The parties' dispute focuses on plaintiff's claim that an easement exists bordering the Reamy property and traversing the portions of lots 217, 241, and 242 owned by defendant. As Figure 1 depicts, the easement forms a 14-foot-wide "L-shape," running from N. Irving Street alongside the northwest and southwest borders of the Reamy property.

In 2007, in the course of constructing its mixed-use project, defendant built a chain-link fence around its property, thereby obstructing plaintiff's use of the easement. Defendant further intends to construct a building that will also obstruct use of the putative easement. Accordingly, plaintiff seeks a declaratory judgment confirming the existence and validity of the easement, and enjoining development of the property in a manner that would bar her use of the easement.



**Figure 1**

The putative easement begins on N. Irving Street and runs along the northwest and southwest sides of the Reamy property, ending at the border separating lots 240 and 241. It is identified in Figure 1 by solid shading.

Plaintiff's property consists of lots 238, 239, and 240, and the Reamy property. These parcels are identified in Figure 1 by striped shading.

Defendant's property includes, among other parcels, portions of lots 217 and 241, and the entirety of lot 242. These parcels are not shaded in Figure 1.

Central to a determination of the easement's validity is an understanding of the ownership history of plaintiff's and defendant's Clarendon Subdivision parcels. In 1900, a large tract of land in Arlington, Virginia, was subdivided into approximately 300 lots, currently known as the Clarendon Subdivision. This subdivision includes the land located at the west corner of Washington Boulevard and N. Irving Street, as depicted in Figure 1. In 1924, Lulu Cameron Follansbee purchased lot 217 and lots 238-242. By deed recorded on July 7, 1926, Follansbee conveyed portions of lots 217 and 241 to Judson Reamy. This property, referred to by the parties as the Reamy property, is depicted in Figure 1. It is for the benefit of the Reamy property that plaintiff claims a valid easement by implication or prescription. Follansbee subsequently sold the remaining lots to purchasers not pertinent to this dispute, who in turn sold the lots to Dick Missakian in October 1927.

On July 10, 1928, Missakian recorded a deed of trust on lots 238-240, 242, and the portions of lots 217 and 241 that did not include the Reamy property. The purpose of this deed of trust was to secure a $32,500 loan made by Mary Hutchison to Missakian in the form of forty promissory notes. Specifically, the deed of trust named Claude H. Woodward and H. Glenn Phelps as trustees (the "Woodward trustees") and Hutchison as beneficiary. Missakian granted the property to the Woodward trustees "[t]ogether with all the improvements in anywise appertaining, and all the estate right, title, interest and claim, either at law or in equity, or otherwise however, the parties of the first part, of, in, to, or out of the said land and premises."[2]

---

[2] Although Missakian conveyed legal title to the Woodward trustees, Missakian and his heirs or assigns were permitted "to use and occupy the described land and premises, and the rents, issues, and profits thereof to take and have and apply to and for his or their sole use and benefit" pending satisfaction of the debt.

-4-

Importantly, the Woodward deed of trust only authorized the Woodward trustees (i) to release the land from the Woodward deed of trust upon satisfaction of the debt, or (ii) to sell the property in the event of default at public auction.

By deed dated July 14, 1928, and later recorded in January 1929, Missakian sold the parcels to Kristopher Dadaian subject to the Woodward deed of trust. Dadaian then conveyed the properties to B. M. Hedrick, who likewise purchased the properties subject to the Woodward deed of trust.

On March 1, 1932, the Woodward trustees and Hutchison executed a deed partially releasing Hedrick from the terms of the Woodward deed of trust. It is this document that plaintiff claims creates an express easement. In language central to this dispute, the deed of partial release reconveyed to Hedrick title to lot 242 and the portions of lots 217 and 241 that did not include the Reamy property,

> *subject however, to a right of way for ingress and egress* purposes for the benefit of the owners of lots 238, 239, and 240 over the following portion of land hereby released and contiguous thereto said right of way being bounded and described as follows . . . .[3]

(Emphasis added.) Lots 238-240 remained subject to the Woodward deed of trust. Although named a "party of the second part" in the deed of partial release, Hedrick did not sign the instrument; only the Woodward trustees and Hutchison signed this deed of partial release. Notably, Hutchison signed the document for the express purpose of evidencing her consent to the

---

[3] It should be noted that a second deed of partial release—likewise dated March 1, 1932, and recorded March 14, 1932—released Hedrick from a junior deed of trust and created an express easement over portions of lots 217, 241, and 242 using language identical to that found in the Woodward deed of partial release. Yet, because this second deed of trust was subordinated to the Woodward deed of trust and extinguished by the foreclosure on the Woodward deed of trust in 1935, only the deed of partial release from the Woodward deed of trust is pertinent here.

partial release.[4]

Following the execution of the partial release in 1932, the portions of lots 217, 241, and 242 owned by Hedrick were further subdivided and sold to various purchasers. Yet, in 1936, title to these same lots was united in Charles G. Schott. Defendant ultimately purchased this property in 2006.

Lots 238-240 remained subject to the Woodward deed of trust until May 1935, when Hedrick defaulted on the loan, prompting the Woodward trustees to foreclose and sell the lots at public auction. The property was ultimately purchased by Teck Construction Co. ("Teck") in 1943. Teck also purchased the Reamy property in 1958, thereby merging title to the Reamy property and lots 238-240 in a single owner. Teck subsequently sold these lots to plaintiff's family in 1963.

In March 2009, plaintiff brought suit in Virginia state court. Defendant subsequently removed the case to federal court, where, following jurisdictional discovery, it was ultimately determined that there was proper diversity jurisdiction under 28 U.S.C. § 1332. *See Lee v. ZOM Clarendon, L.P.*, 1:09cv402 (E.D. Va. June 26, 2009) (Order); *Lee v. ZOM Clarendon, L.P.*, 1:09cv402 (E.D. Va. May 22, 2009) (Order).[5] The parties subsequently filed their respective

---

[4] The pertinent language of the deed of partial release reads, as follows: "the holder of the notes thereby secured . . . has directed the [trustees] to execute these presents, as is evidenced by her joining herein."

[5] In May 2009, plaintiff moved to remand the case to state court pursuant to 28 U.S.C. § 1447(c), arguing that diversity jurisdiction was lacking because defendant failed to allege its citizenship in its notice of removal. The parties were repeatedly urged to pursue this matter in state court given the greater familiarity of state courts in resolving property disputes under state law and the fact that, should novel questions of property law arise, the parties could appeal to the Supreme Court of Virginia. Nonetheless, defendant elected to litigate the existence of diversity jurisdiction. Ultimately, both the amount in controversy and the diversity of citizenship

Motions for Summary Judgment and a hearing was held on October 9, 2009, at which time the parties appeared by counsel and fully argued the disputed issues. Accordingly, the matter is now ripe for disposition.

## II.

An easement, simply put, is "a privilege to use the land of another in a particular manner and for a particular purpose. It creates a burden on the servient tract and requires that the owner of that land refrain from interfering with the privilege conferred for the benefit of the dominant tract." *Brown v. Haley*, 355 S.E.2d 563, 567-68 (Va. 1987); *see also* 6B *Michie's Jurisprudence, Easements* § 2. Significantly, the owner of the dominant tract does not hold an ownership interest in the servient tract. *Russakoff v. Scruggs*, 400 S.E.2d 529, 531 (Va. 1991). Generally, the Supreme Court of Virginia has described an easement as being "'a privilege without profit.'" *Bunn v. Offutt*, 222 S.E.2d 522, 525 (Va. 1976) (quoting *Stevenson v. Wallace*, 68 Va. 396 (27

---

requirements of 28 U.S.C. 1332(a) were found to be satisfied. Specifically, plaintiff was found to be a citizen of Virginia and defendant a citizen of Delaware or Florida under the "nerve center" or "place of operations" tests. *See Lee v. ZOM Clarendon, L.P.*, 1:09cv402 (E.D. Va. June 26, 2009) (Order) (citing *Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998)). In addition, the amount in controversy requirement was met inasmuch as defendant alleged it would incur additional development costs in excess of $75,000 if the easement were held valid. *See Lee v. ZOM Clarendon, L.P.*, 1:09cv402 (E.D. Va. May 22, 2009) (Order) (citing *Glenwood Light & Water Co. v. Mut. Light, Heat & Power Co.*, 239 U.S. 121, 124-25 (1915)).

Although defendant holds title to the putative servient tract, the entity responsible for (i) constructing the fence that currently obstructs plaintiff's use of the easement and (ii) building the planned development is the related entity, ZOM Mid-Atlantic, Inc. ("ZOM Mid-Atlantic"). Consequently, plaintiff sought joinder of Zom Mid-Atlantic as an additional defendant. Plaintiff's motion was denied, however, because ZOM Mid-Atlantic's principal place of business is in Virginia. Accordingly, allowing joinder of this additional defendant would have destroyed complete diversity in contravention of Rule 19 and Rule 20, Fed. R. Civ. P. *See Lee v. ZOM Clarendon, L.P.*, 1:09cv402 (E.D. Va. June 26, 2009) (Order) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914); *Janeau v. Pitman Mfg. Co., Inc.*, 1991 WL 538679, at *6 (W.D.N.C. Oct. 25, 1991)).

Gratt.) 77, 87 (1876)).

Under Virginia law, an easement may be created by "express grant or reservation, by implication, by estoppel or by prescription." *Bunn*, 222 S.E.2d at 525. In this case, plaintiff claims a valid easement for the benefit of lots 238-240 under a theory of an easement by express reservation, and an easement for the benefit of the Reamy property under the alternative theories of an easement by implication or an easement by prescription. Each of these three theories is discussed in turn.

*A. Easement by Express Reservation*

Plaintiff's claim for the existence of an express easement rests solely on the effect of the previously quoted deed of partial release language. This language, according to plaintiff, makes the existence of an easement unmistakably clear.[6] Defendant disagrees, arguing that (1) the use of the phrase "subject to" is insufficient to create an easement, (2) the Woodward trustees lacked

---

[6] Plaintiff also argues that, because the deed of partial release is in defendant's chain of title, defendant had record or constructive notice of the expressly reserved easement. Yet, this argument fails to address an antecedent and dispositive issue, namely whether the easement was validly created in the first instance. Recordation only provides notice; no Virginia authority holds that the mere act of recording a deed purporting to create an easement creates or validates that easement.

In addition, plaintiff inappropriately relies on expert testimony to support the legal conclusions that (i) a valid easement was created in the deed of partial release, and (ii) the deed of partial release is within defendant's chain of title. Whether an easement is validly created or a given deed is within a party's chain of title, based on undisputed record evidence, are issues of law reserved solely for a court. Indeed, the Fourth Circuit has explicitly held that "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); *see also United States v. Jefferson*, 623 F. Supp. 2d 683, 686-88 (E.D. Va. 2009); Fed. R. Evid. 702 (allowing expert testimony only where such testimony "will assist the trier of fact to understand the evidence or *to determine a fact in issue*") (emphasis added). Accordingly, plaintiff's proffered expert testimony on the creation and validity of an express easement and defendant's chain of title is not properly considered here.

the authority to grant an easement, and (3) assuming a valid express easement existed, the right to use that easement was extinguished by unity of title to the dominant and servient properties. Because defendant's lack of authority argument is dispositive, it is appropriate to address that issue first.

Under Virginia law, "[i]t is well settled that a trustee in a deed of trust can only do with the trust property what the deed either in express terms or by necessary implication authorizes him to do.... [The trustee] must execute the trust in strict compliance therewith." *See Schmidt & Wilson v. Carneal*, 180 S.E. 325, 326 (Va. 1935) (citations omitted); *see also* 13A *Michie's Jurisprudence, Mortgages and Deeds of Trust* § 50. This principle, applied here, points persuasively to the conclusion that the Woodward trustees acted beyond the scope of their authority in purporting to create an easement. The Woodward deed of trust expressly limited the Woodward trustees' authority to two acts: (1) "upon full payment of [the debt and all appropriate costs] to release and reconvey the said described premises" to the debtor;[7] and (2) to sell the property subject to the Woodward deed of trust if the debtor defaulted on the loan. Significantly, no provision of the Woodward deed of trust explicitly permitted the granting or reservation of an

---

[7] It is worth noting that the parties dispute whether a deed of partial release could have been granted in 1932. Although the applicable statute in force at the time did not contemplate partial releases, and indeed the Woodward deed of trust authorizes the Woodward trustees to grant only a full release, subsequent amendment to the Virginia Code validated and bound all interested parties to "all partial marginal releases made prior to July 1, 1966 . . . either of one or more separate pieces or parcels of real estate or any part of the real estate covered by such lien . . . ." Va. Code Ann. § 55-66.4 (2007). Importantly, the amendment was not "intended to disturb or impair any vested right." *Id.* In addition, to be valid, any pre-1966 partial release must also meet the requirements of § 55-66.4, which include a creditor's certification that he is "at the time of making such release the legal holder of the obligation, note, bond or other evidence of debt, secured by such lien." *Id.* Yet, whether the Woodward deed of partial release is valid does not require resolution here because the Woodward trustees clearly lacked the authority to reserve an easement under the plain terms of the Woodward deed of trust.

easement. Nor can such power be fairly understood as necessary to the execution of the Woodward trustees' duties, particularly given the Supreme Court of Virginia's strong suggestion that trustee powers must be narrowly construed. *See First Funding Corp. v. Birge*, 257 S.E.2d 861, 865 (Va. 1979) (requiring trustee's "strict compliance"). Accordingly, although the Woodward trustees were authorized to grant a release from the Woodward deed of trust, they had no power to create an express easement, and any attempt to do so would have been an *ultra vires* act without legal effect.

In the course of the October 9, 2009 hearing, plaintiff's counsel conceded that the Woodward trustees were not authorized to reserve the easement in the deed of partial release. Yet, plaintiff contends that a valid easement was nonetheless created by the deed of partial release because Hutchison, the note holder, signed the document. This novel argument is unpersuasive. Although plaintiff characterizes as "axiomatic" the proposition that a note holder has the power to create an easement by signing a deed of partial release, she cites no supporting authority, nor has any been found. A note holder *qua* note holder has no legal interest or estate in the property subject to a deed of partial release, and accordingly no power to create an easement.[8] Accordingly, because Hutchison did not hold title to the property subject to the Woodward deed of trust, she lacked the legal authority as a matter of Virginia law to create an easement in the deed of partial release. Moreover, plaintiff misperceives the purpose of Hutchison's signing the

---

[8] *See Augusta Nat'l Bank v. Beard*, 42 S.E. 494 (Va. 1902) (rejecting notion that "a creditor secured by a trust deed has an interest that amounts to a right of property in the land" and stating that a "deed of trust creditor or mortgagee has no estate in the land that a judgment would bind"). Indeed, it is a generally well-settled principle that "[a]n easement can be created only by a person who has title to or an estate in the servient tenement," 25 Am. Jur. 2d *Easements and Licenses* § 14 (1996), and it is also axiomatic under Virginia law that one can "reserve only that which they own[]." *Knewstep v. Jackson*, 448 S.E.2d 609, 611 (Va. 1994).

deed of partial release; she did so only to evidence that the Woodward trustees acted at her direction and with her consent.[9] In sum, Hutchison had no power to grant or create an easement, as she had no title to the property.

Although the absence of the Woodward trustees' authority to create an easement in the deed of partial release is dispositive of plaintiff's claim for an express easement, it is nonetheless worth briefly discussing the parties' two additional legal disputes relating to the creation and validity of an express easement. First, defendant contends that the words "subject, however, to a right of way for ingress and egress" in the deed of partial release are, as a matter of Virginia law, insufficient to create an express easement. Yet, this argument reads too much into the Supreme Court of Virginia's statement that the words "subject to" are generally ones of "qualification and notice," and "do[] not create affirmative rights." *Davis v. Henning*, 462 S.E.2d 106, 108 (Va. 1995). In this regard, the Supreme Court of Virginia has repeatedly cautioned that "[s]uch a general observation is not dispositive"; rather, "it is the duty of the court to 'ascertain the intention of the parties, gathered from the language used, and the general purpose and scope of the instrument in the light of surrounding circumstances.'" *Id.* (quoting *Hale v. Davis*, 195 S.E.2d 536, 539 (Va. 1976)); *see also Burdette v. Mountain Estates, LLC,* 2009 Va. LEXIS 91, at *13-*19 (Va. Sept. 18, 2009) (comparing cases); *Strickland v. Barnes*, 164 S.E.2d 768, 770 (Va. 1968) (finding that "[i]n the context of this deed, the above quoted words are words of conveyance"). Put simply, the words "subject to" are not, as defendant essentially argues, talismanic in nature. Only the deed of partial release, read as a whole, is dispositive of whether those words create an easement or merely refer to one already in existence by virtue of another

---

[9] *See supra* note 4.

instrument. Because the Woodward trustees had no power to create an easement, it is unnecessary to consider whether the language of the deed of partial release might be adequate in other circumstances to create an express easement.

The parties' dispute as to the application of the doctrine of merger, which would extinguish plaintiff's right to use a valid easement, is difficult and also need not be reached here. Specifically, plaintiff contends that the doctrine applies only where *title* to the dominant and servient tracts are vested in a single person or entity, while defendant asserts that mere *possession or seisin* of both tracts is sufficient to extinguish an easement. *Compare Am. Small Bus. Inv. Co. v. Frenzel*, 383 S.E.2d 731, 734 (Va. 1989) (holding, in case concerning easement by necessity, that placement of deed of trust on parcel severed unity of title because legal title was conveyed to trustee), *with Read v. Jones*, 146 S.E. 263, 264 (Va. 1929) (discussing "unity of seisin"). Again, this unresolved question of Virginia law need not be resolved or decided here in view of the Woodward trustees' lack of authority to create an express easement in the deed of partial release.

In sum, because the Woodward trustees were not explicitly or implicitly empowered to reserve an easement under the terms of the Woodward deed of trust, no easement was created.

*B. Easement by Implication*

In addition to an easement by express reservation for the benefit of lots 238-240, plaintiff claims a valid easement by implication for the sole benefit of the Reamy property. Specifically, plaintiff contends that the rear of the Reamy house is only accessible through the portions of lots 217, 241, and 242 owned by defendant.

Under Virginia law, an easement by implication exists where, "absent express restrictions imposed by the terms of the grant, a grantor of property conveys everything that is necessary for

the beneficial use and enjoyment of the property." *Brown v. Haley*, 355 S.E.2d 563, 569 (Va. 1987). A party seeking declaration of the validity of an implied easement must demonstrate: "(1) the dominant and servient tracts originated from a common grantor, (2) the use was in existence at the time of the severance, and that (3) the use is apparent, continuous, and reasonably necessary for the enjoyment of the dominant tract." *Russakoff v. Scruggs*, 400 S.E.2d 529, 532 (Va. 1991).

It is undisputed that, in 1924, Follansbee purchased the entirety of lots 217, 241, and 242, which, at that time, included the parcel known now as the Reamy property. It is also undisputed that Follansbee severed the property in 1926 when she conveyed portions of lots 217 and 241 to Reamy. Thus, although plaintiff satisfies the "common grantor" prong of the implied easement analysis, she adduces no evidence establishing that the easement was in use *at the time of severance in 1926*. Accordingly, because plaintiff cannot carry her burden under the Supreme Court of Virginia's three-part test based on the undisputed record evidence, defendant is entitled to summary judgment as a matter of law on this issue. *See Tritle v. Crown Airways, Inc.*, 928 F.2d 81, 83 (4th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) ("[A] moving party is entitled to summary judgment if the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which the non-moving party has the burden of proof.").

Nor does plaintiff's cited evidence create a dispute of material fact as to the use of the easement at the time of severance in 1926. The 1935 Sunderman Survey of the Reamy property,

even if admissible,[10] demonstrates only that the easement was used in 1935, not 1926. Likewise, while plaintiff asserts that a utility closet located at the rear of the Reamy house is accessible only through the claimed easement,[11] the deposition testimony cited by plaintiff does not shed light on the state of the house or the use of the easement in 1926, when Follansbee conveyed the property to Reamy. Finally, plaintiff argues that an easement would have been implied at the time of severance because three sides of the Reamy house, which fills the entire tract of land, could only be accessed by an easement. This argument, however, is unpersuasive in two respects. First plaintiff has not shown that the Reamy house existed in 1926. Second, even if the house existed at the time of severance, no facts indicate that Reamy required access to the three sides of the house in 1926, particularly given the fact that the Reamy property was readily accessible from N. Irving Street.

Put simply, no facts in this record establish that an easement was in use at the time of severance. Accordingly, because plaintiff fails to carry her burden of proving this element of her implied easement claim, defendant is awarded summary judgment on this claim.

---

[10] Defendant argues that the Sunderman Survey is inadmissible because it is not authenticated and therefore does not warrant an exception to the hearsay rule for ancient documents pursuant to Rule 803(16), Fed. R. Evid (requiring (i) that document be in existence for twenty years and (ii) that the authenticity of the document be established). In response, plaintiff argues that the Survey is authenticated under various provisions of Rule 901(b), Fed. R. Evid. Defendant's objections are substantial. Nonetheless, the analysis in this matter proceeds on the assumption that plaintiff can ultimately cure any defects relating to the authenticity of the Survey.

[11] Defendant argues in response that plaintiff can access the rear of the property through the Reamy house, and therefore plaintiff cannot show that the easement is reasonably necessary. Because it is clear that plaintiff cannot establish the use of the easement at the time of severance, it is unnecessary to assess whether plaintiff's ability to access the rear of the property through the structure precludes the establishment of an easement by implication.

*C. Easement by Prescription*

Finally, plaintiff contends that if an easement for the Reamy property's benefit did not arise by implication, one nonetheless exists by prescription. The Supreme Court of Virginia in *Nelson v. Davis* recently had occasion to note that "[t]he general principles of law governing easements by prescription are well settled." 546 S.E.2d 712, 715 (Va. 2001). To establish a claim of easement by prescription, a plaintiff must show that his use of the easement was (i) adverse, (ii) under claim of right, (iii) exclusive, (iv) continuous and uninterrupted, (v) with the knowledge and acquiescence of the owners of the land over which the easement passed, and (vi) for a period of twenty years. *Id.* Importantly, these elements must be proved by clear and convincing evidence. *Id.*

Here, the parties dispute numerous material facts in the record as to whether plaintiff's use of the easement was "exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes." *Id.* For example, the parties dispute whether defendant's predecessor-in-title consented to plaintiff's use of the purported easement between 1979 and 2006. Furthermore, the parties present conflicting testimony as to when plaintiff's family began using the easement, and how often, if at all, that use occurred. These factual disputes are unquestionably material to plaintiff's easement by prescription claim, and hence an award of summary judgment to either party is inappropriate.

In the course of the October 9, 2009 hearing, defendant conceded that there were material facts in dispute, yet nonetheless argued that summary judgment could be awarded if undisputed record evidence demonstrated that plaintiff believed she had held an express right to use the easement during the 20-year period. In support of this contention, defendant cites *Chaney v.*

*Haynes*, which found no easement by prescription where the proponent of the easement had mistakenly believed he was legally entitled to use the easement. *See* 458 S.E.2d 451, 453 (Va. 1995). Although defendant correctly identifies this governing legal principle, defendant adduces no undisputed evidence in this record establishing that plaintiff used the putative easement under the belief that such use was permitted by the deed of partial release. To the contrary, plaintiff has consistently disclaimed that the Woodward deed of partial release legally entitled her to use the easement for the benefit of the Reamy property, as the instrument expressly names as the dominant tract lots 238-240. Instead, plaintiff claims an easement for the benefit of the Reamy property solely by implication or by prescription, neither of which supports a finding that plaintiff believed she held a legal entitlement to use the easement.

In sum, because it is plain that the parties dispute material facts in the record relating to plaintiff's claim of an easement by prescription, the parties' cross-motions for summary judgment must be denied as to this claim. *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1974) (holding that summary judgment is appropriate only "where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law" (citation and quotation marks omitted)).

### III.

Defendant contends that, even if a valid easement was created by express grant or reservation, by implication, or by prescription, plaintiff nevertheless abandoned the easement. To establish this affirmative defense, defendant must prove, by "clear and unequivocal evidence," plaintiff's "[n]onuse of an easement coupled with acts which evidence an intent to abandon or which evidence adverse use by the owner of the servient estate, acquiesced in by the

owner of the dominant estate." *Robertson v. Robertson*, 197 S.E.2d 183, 188 (Va. 1973) (citing *Lindsey v. Clark*, 69 S.E.2d 342, 344 (Va. 1952). No such showing is made on this record, as the parties plainly dispute material facts relating to (i) whether or how often plaintiff used the easement, (ii) whether plaintiff allowed cars to park on the easement in a manner that blocked her access to the easement, and (iii) whether plaintiff was able to use the easement between 1995 and 2007, during which time plaintiff erected a purportedly removable fence across the easement.[12] Accordingly, defendant's Motion for Summary Judgment as to an affirmative defense of abandonment is denied.

## IV.

Accordingly, for the reasons stated herein, and for good cause, the parties' respective Motions for Summary Judgment must be granted in part and denied in part. Specifically, plaintiff cannot establish an express easement because the Woodward trustees lacked the power to create or grant such an easement in the deed of partial release. Nor can plaintiff prove an easement by implication because no facts establish that an easement existed at the time of severance in 1926. In addition, because the parties dispute material facts in the record, summary judgment may not be granted in favor of either party regarding plaintiff's claim for an easement by prescription or defendant's contention that plaintiff abandoned the easement.

An appropriate Order will issue.

---

[12] Specifically, defendant claims that the fence was constructed without a gate, thereby evidencing plaintiff's intent to abandon the easement. In response, plaintiff argues that, due to the configuration of the property, construction of a gate was not feasible, and that alternatively a removable portion of the fence was installed, allowing plaintiff to continue using the easement.

Alexandria, VA
October 22, 2009

/s/ T.S. Ellis, III

————————————————
T. S. Ellis, III
United States District Judge