IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SUN YUNG LEE, )
      Plaintiff, )
)
v. ) Civil Action No. 1:09cv402
)
ZOM CLARENDON, L.P., )
      Defendant. )

F I L E D
FEB 24 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

At issue in this diversity easement dispute is whether plaintiff's evidence, presented at a bench trial, clearly and convincingly establishes an easement by prescription.[1] In essence, the parties own adjacent properties located at N. Irving Street and Washington Boulevard in Arlington, Virginia, and the purported easement (the "driveway") forms a 14-foot-wide "L-shape," running from N. Irving Street alongside the northwest and southwest borders of the Reamy house, the property for which plaintiff claims the benefit of an easement by prescription. Plaintiff argues that her family has used the driveway continuously since 1956, and therefore that this use ripened into a prescriptive right by 1976 pursuant to the unrebutted presumption that this use was under claim of right. In response, defendant argues that plaintiff's use was neither adverse nor exclusive, and that plaintiff's evidence at trial does not meet the clear and convincing standard of proof. At the bench trial held on December 8, 2009 and February 4, 2010, the parties

---

[1] Plaintiff's claim to an easement has proceeded on three alternative theories: (1) express easement; (2) implied easement; and (3) prescriptive easement. The first two theories were resolved in defendant's favor on summary judgment. *See Lee v. ZOM Clarendon, L.P.*, --- F. Supp. 2d ----, 1:09cv402 (E.D. Va. Oct. 22, 2009) (Mem. Op.).

-1-

presented witnesses and exhibits in support of their contentions.[2] As the parties have fully briefed and argued their positions, plaintiff's claim to an easement by prescription is ripe for disposition.

## I. Findings of Fact

The facts recited here are those found pursuant to Rule 52(a)(1), Fed. R. Civ. P., on the basis of the record as a whole, including a two-day bench trial. In the course of the bench trial, plaintiff, as well as her daughter and son-in-law, Jeannie and Donald Williams, testified as to the driveway's use.[3] Defendant presented one fact witness, namely John Strother, the previous

---

[2] Although defendant moved for summary judgment on its defense that plaintiff had abandoned any easement she might have possessed, defendant did not pursue this defense at trial. *See* Transcript at 38-39 (Dec. 4, 2009) (forecasting in opening argument that evidence would be insufficient to prove prescriptive easement and that plaintiff's use was permissive and under a mistaken belief of right). For this reason, and in light of the conclusion that plaintiff fails to establish her right to a prescriptive easement by clear and convincing evidence, it is not necessary to reach or decide this issue.

[3] In the course of the trial, plaintiff argued that portions of her deposition testimony pertinent to her cross-examination contained mistranslations that were subsequently corrected in an errata sheet. Accordingly, plaintiff was directed to submit excerpts of her deposition used by defendant in her cross-examination as to which there is a deponent's errata. *See Lee v. ZOM Clarendon, L.P.*, 1:09cv402 (E.D. Va. Feb. 4, 2010) (Order). Under Rule 32, Fed. R. Civ. P., "[a]t a hearing or trial, all or part of a deposition may be used *against* a party." (Emphasis added.) Thus, plaintiff was permitted to submit only those deposition pages and errata that were offered against plaintiff during cross-examination. A review of her cross-examination reveals that only page 38 of her deposition testimony was at issue, yet plaintiff did not file an errata sheet as to this page; rather, plaintiff submitted errata as to other pages not offered against her on cross-examination. As these pages of plaintiff's deposition transcript fall outside the scope of Rule 32, Fed. R. Civ. P., they are not considered here. It is worth noting, however, that even assuming plaintiff had submitted the appropriate deposition transcript pages, the errata sheet clearly makes substantive changes, not technical or typographical changes, to plaintiff's deposition testimony. Altering deposition testimony in this manner is not a permissible use of errata sheets. *See Wyeth v. Lupin LTD*, 252 F.R.D. 295, 296-97 (D. Md. 2008) ("[A] deposition is not a take home exam. The errata sheet 'clarifications' in this case are akin to a student who takes her in-class examination home, but submits new answers only after realizing a month later that the import of her original answers could possibly result in a failing grade." (quoting *Greenway v. Int'l Paper*

owner of the adjacent servient estate and the person from whom defendant acquired the property.

1. Plaintiff is the owner of two adjoining parcels of real property in Arlington, Virginia. The first parcel consists of Clarendon Subdivision lots 238-240 and portions of lots 217 and 241. More familiarly, this property is located at the intersection of N. Irving Street and Washington Boulevard. The second parcel consists of portions of lots 217 and 241 of the Clarendon Subdivision, and bears the address 1122 N. Irving Street. This second parcel is described by the parties as the Reamy house. The putative easement runs alongside the northwest and southwest sides of the Reamy house, thus providing access to the rear of the Reamy house. Notably, the rear of the Reamy house is also accessible by passing through the structure or via a parking lot bordering the southeast side of the Reamy house. Plaintiff purchased these parcels in 1963.[4]

2. The sole defendant is ZOM Clarendon, L.P., a limited Delaware partnership authorized to do business in Virginia. Defendant owns the putative servient estate, which consists of Clarendon Subdivision lots 206-216, 242-247, and those portions of lots 217 and 241 that do not include the Reamy house. In 2006, defendant purchased this property, which is immediately adjacent to plaintiff's property, from the family of Channing Strother. Defendant intends to build a mixed-use high rise with both residential units and retail space on these lots.

3. In 1956, plaintiff's husband and father-in-law, as lessors, opened a Chinese restaurant located at 3211 Washington Boulevard. The restaurant and the Reamy house are located on adjoining parcels of land. The restaurant, which faces Washington Boulevard, is also accessible from the rear through the driveway at issue on N. Irving Street. In 1956, plaintiff owned none of these properties.

4. Plaintiff began regularly visiting the restaurant in 1956 to eat dinner. Between 1956 and 1959, plaintiff did not observe any cars parked on the purported easement.

5. In 1959, plaintiff began working at the restaurant four to five days a week.

---

Co., 144 F.R.D. 322, 325 (W.D. La. 1992))).

[4] For a summary of the ownership history of plaintiff's and defendant's Clarendon Subdivision parcels and a depiction of the putative easement and the parcels, *see Lee v. ZOM Clarendon, L.P.*, --- F. Supp. 2d ----, 1:09cv402, at 2-7 (E.D. Va. Oct. 22, 2009) (Mem. Op.), *and Lee v. ZOM Clarendon*, 1:09cv402, 2009 U.S. Dist. LEXIS 110256 (E.D. Va. Nov. 20, 2009).

Although the restaurant was located on Washington Boulevard, plaintiff entered the restaurant using a rear entrance. On occasion, plaintiff's husband, with plaintiff as a passenger in the car, was unable to reach the rear entrance because cars were parked on the driveway. Plaintiff's father-in-law would then ask the Reamy house's tenants to move their cars, which they did, allowing plaintiff and her husband to access the restaurant's rear entrance. Plaintiff worked at the restaurant until 1996.

6. On November 15, 1963, plaintiff's family purchased the Reamy house. Plaintiff's family believed that a survey given to them at the closing conveyed the right to use the driveway and that they nonetheless had an inherent right to use the driveway in light of the property's physical layout.

7. In 1965, plaintiff's parents-in-law moved into the Reamy house's second story and resided there until 1979. During this period, plaintiff's parents-in-law would clear garbage, trash, leaves, and sometimes snow from the driveway. In addition, plaintiff's mother-in-law planted a garden on the driveway containing beans, mint, and leeks.

8. Also in 1965, other tenants began to occupy the ground floor of the Reamy house. Specifically, the ground floor housed an antique store from 1965-1980, housed a bed frame store from 1980-1990, and was used by two carpenters around 1998 to store materials and tools. The antique store tenants parked on the purported easement from 1965-1980, and the bed frame store and carpenter tenants used the driveway to access the rear of the Reamy house from 1980-1990. In addition, visitors to the Reamy house—such as plaintiff's daughter, Jeannie Williams, and plaintiff's son-in-law, Donald Williams—sometimes parked on the driveway. In particular, Donald Williams used the driveway when he assisted plaintiff's husband in periodically repairing or repainting the Reamy house beginning in the late 1970s. Plaintiff did not receive any complaints or objections with respect to the use of the driveway in this manner.

9. In 1979, plaintiff and her husband began maintaining the driveway and grew vegetables there. Furthermore, plaintiff and her husband would also park on the driveway. Twice a year, beginning at an unspecified time, plaintiff used the driveway for a Chinese ceremony in which she would spread rice and coins on the ground.

10. Also in 1979, the family of Channing Strother purchased the property currently owned by defendant and thus became the owners of record of the driveway-easement at issue. Channing Strother and his son, John Strother, opened a printing store on their property in 1979. Notably, the shop could

only be reached via the driveway off N. Irving Street because the store did not front Washington Boulevard, and as such the Strothers and their customers regularly used the driveway to reach the printing store. In an effort to ensure that customers could find and access the printing store, which was set back from N. Irving Street, the Strothers maintained the driveway, including having it repaved at one point.

11. In 1990, Donald and Jeannie Williams opened a delicatessen named "Sam's Corner" on an adjoining parcel of land east of the Reamy house and restaurant. Since 1990, the ground floor of the Reamy house has been used to store materials related to the operation of Sam's Corner, and plaintiff and her family have used the driveway to access these materials.

12. The members of plaintiff's family were not the only people to use the driveway; rather, the driveway was regularly used by others to access buildings on both plaintiff's and defendant's lots.

13. Plaintiff's family and the Strothers had a neighborly, friendly relationship. At no time did they become entangled in a dispute or disagreement relating to the driveway's use. Plaintiff's family, particularly Donald Williams, saw and conversed with the Strothers on the driveway in a cordial manner. At no time did plaintiff's family represent to the Strothers that they, plaintiff's family, had a right to use the driveway.

14. On at least one occasion, Donald Williams and John Strother discussed Williams's intention to use the driveway to facilitate repair of the Reamy house. Although Williams claims that he never asked the Strothers for permission to use the driveway, Strother testified more credibly that permission was sought and granted on this occasion.[5] Whether Williams actually sought permission from Strother, or simply advised Strother of the

---

[5] Plaintiff attacks John Strother's credibility on the following grounds: (i) that he exhibited bias against plaintiff in describing her easement claim as a "land grab"; (ii) that his memory might be impaired because he used toxic chemicals in conducting his business and because he has smoked marijuana; and (iii) that his testimony at trial is inconsistent with his deposition testimony. Specifically with respect to the third ground, plaintiff argues that Strother testified at trial that he could observe the easement through the front door of his printing shop, but previously testified at his deposition that he worked facing a windowless wall and would not have seen Donald Williams using the driveway. These statements are not inconsistent, and hence do not impeach Strother's credibility, as it is sensible that Strother could see the easement from certain positions inside the printing shop, but not others. Moreover, the remaining grounds for impugning Strother's credibility are unpersuasive, as Strother has no personal stake in the resolution of plaintiff's claim and there is no indication that Strother's memory was unreliable.

driveway's use consistent with their neighborly relationship, is not a factual dispute that requires resolution here, as this fact is not dispositive of plaintiff's claim.

15. No witness testimony supports a factual finding that plaintiff's family used the driveway in a manner that interfered with the Strothers' use of the driveway. At most, Donald Williams asked Channing Strother at one point to move his car along the driveway so that maintenance could be performed on the Reamy house, and Strother obliged without incident. Williams's use of the driveway in this regard is consistent with the neighborly relationship between plaintiff's family and the Strothers.

## II. Conclusions of Law

Under Virginia law—which governs this diversity dispute relating to real property located in Virginia[6]—it is well-settled, and the parties agree, that a party claiming an easement by prescription must prove that use of the purported easement was:

(i) adverse;

(ii) under a claim of right;

(iii) exclusive;

(iv) continuous and uninterrupted; and

(v) with the knowledge and acquiescence of the owners of the land over which it passes.

*Nelson v. Davis*, 546 S.E.2d 712, 715 (Va. 2001) (quoting *Pettus v. Keeling*, 352 S.E.2d 321, 323-24 (Va. 1987)). These elements must be established for a twenty-year prescriptive period.

---

[6] In a federal diversity suit, the substantive law and choice of law rules of the forum state govern the alleged claims. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623-24 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Under Virginia law, it is axiomatic that "[r]eal estate is exclusively subject to the laws and jurisdiction of the courts of the nation or state in which it is located; no other laws or courts can affect it. As the Latin maxim has it, the lex loci rei sitae governs." 4A *Michie's Jurisprudence, Conflicts of Laws, Domicile and Residence* § 18 (citing *Mort v. Jones*, 51 S.E. 220 (Va. 1906)).

*Id.* Additionally, it is equally well-settled that "[w]here there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right." *Id.* Importantly, the party claiming a prescription easement bears the burden of proving these elements by clear and convincing evidence.[7]

### A.

At the threshold, it is necessary to identify the earliest date on which plaintiff can claim a prescriptive easement for the benefit of the Reamy house. On the trial record in this case, an easement by prescription could not have existed before plaintiff purchased the Reamy house in 1963. Although plaintiff argues that an easement by prescription was established beginning in 1956, no clear and convincing evidence supports this contention. In the first instance, plaintiff's use of the putative easement from 1956 to 1963 as lessors of the building that housed their restaurant was solely for the benefit of the restaurant. As plaintiff was neither the owner nor a tenant of the Reamy house prior to 1963, plaintiff's use of the driveway between 1956 and 1963 could not have inured to the benefit of the Reamy house.[8] Recognizing this, plaintiff's counsel

---

[7] Plaintiff, in her post-trial brief, appears to suggest that the "greater weight of the evidence" burden of proof could apply here. In support of this proposition, plaintiff cites the Supreme Court of Virginia's decision in *Pettus v. Keeling*, which notes that the "greater weight of the evidence" language was used on two occasions in the 1920s. *See* 352 S.E.2d at 324 (Va. 1987) (citing *Totten v. Stuart*, 129 S.E. 217, 218 (Va. 1925); *Davis v. Wilkinson*, 125 S.E. 700, 702 (Va. 1924)). Yet, the Supreme Court of Virginia cited these prior decisions only as a matter of historical fact; it ultimately stated, "[w]e believe, however, and now hold, that the claimant should be required to establish an easement by prescription by clear and convincing proof." *Id.* No decision since *Pettus* has qualified this rule. Accordingly, the clear and convincing standard—not the greater weight of the evidence standard—governs here.

[8] In this regard, it is worth noting that plaintiff's claim must be to an easement appurtenant, not an easement in gross, as plaintiff's use of the driveway prior to purchasing the

forecasted in the course of his opening statement that plaintiff would present direct evidence of the prior owner's use of the easement, thereby allowing plaintiff to "tack on" the prior owner's use in proving that prescriptive use had occurred since 1956. *See* Transcript at 23-24 (Dec. 8, 2009). Yet, plaintiff did not present such evidence at trial. Indeed, with respect to the 1956-1959 time period, plaintiff's testimony that she did not observe any cars parked on the driveway weighs against the Reamy house tenants' use of the driveway. In addition, although plaintiff's husband asked the Reamy house tenants to move cars parked on the driveway beginning in 1959, the mere fact that the Reamy house tenants parked on the driveway does not prove that such use was adverse, under a claim of right, exclusive, continuous and uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes. *See McNeil v. Kingrey*, 377 S.E.2d 430, 433 (Va. 1989) (requiring that party invoking tacking prove elements of prescriptive easement during tacking period). Accordingly, to prevail on her claim to a prescriptive easement, plaintiff must prove by clear and convincing evidence that the elements of a prescriptive easement claim were satisfied during a twenty-year period at some point after 1963, the date after which her use of the driveway would inure to the benefit of the Reamy

---

Reamy property could be relevant to an easement in gross claim. An easement appurtenant arises where, as here, an easement is claimed over a servient tract of land for the benefit of an adjoining dominant tract of land. Therefore, an easement appurtenant is tied to the property itself, not the property owner. *See United States v. Blackman*, 613 S.E.2d 442, 446 (Va. 2005). By contrast, an easement in gross arises where, unlike here, an easement "is not appurtenant to any estate in land, but in which the servitude is imposed upon land with the benefit thereof running to an individual." *Id.* (citation and quotation marks omitted). Virginia law is traditionally hostile to easements in gross: "the common law rule of long standing is that an easement is 'never presumed to be in gross when it [can] fairly be construed to be appurtenant to land.'" *Id.* (quoting *French v. Williams*, 4 S.E. 591, 594 (1886) (alteration in original)); *see also Eagle Lodge, Inc. v. Hofmeyer*, 71 S.E.2d 195, 202 (Va. 1952) ("[T]he law is jealous of a claim to an easement."). Because plaintiff's use of the driveway benefitted the restaurant, her use involved appurtenant land, thereby precluding a claim to an easement in gross.

property.

**B.**

The first element of a prescriptive easement claim required to be shown by clear and convincing evidence is that plaintiff's use of the driveway was adverse. The Supreme Court of Virginia has explained that use of another's land is adverse when it is "inconsistent with the apparent or record title of the grantor."[9] The adversity requirement, coupled with the requirements that the claimant's use be with the knowledge and acquiescence of the landowner for the twenty-year prescriptive period, ensures that "the prescriptive use ... occur[s] often and long enough so that it gives the landowner reasonable notice that a right adverse to his interest is being exercised," and thus alerts the landowner to the fact that he must assert his property rights. 6B *Michie's Jurisprudence, Easements* § 14. Indeed, finding a prescriptive easement where a claimant's use was entirely consistent with the landowner's use would inequitably circumscribe a landowner's heretofore unencumbered property rights, even though the landowner would have no reason to know that these rights were in jeopardy. *See McNeil*, 377 S.E.2d at 433 (finding that evidence was "insufficient to establish the necessary continuity to give Campbell, a rural landowner, *notice* that they were claiming a prescriptive right to use the dirt road" (emphasis added)).

In this case, plaintiff cannot establish adverse use of the driveway by clear and convincing

---

[9] *Marbury v. Jones*, 71 S.E. 1124, 1127 (Va. 1911) (citation and quotation marks omitted); *see also United States v. Belle View Apartments*, 217 F.2d 636, 640 (4th Cir. 1956) ("The position of the government has not been adverse in the sense that it has been open, notorious, hostile, inconsistent with the easement ...."); *cf. Hudson v. Pillow*, 541 S.E.2d 556, 561 (Va. 2001) (using terms "inconsistent with" and "adverse to" in explaining easement abandonment defense).

evidence. Where, as here, "a landowner keeps open and uses a roadway, the use by a claimant in common with the public must generally be regarded as permissive or under an implied license, but not adverse," absent a "'decisive act' on the part of the claimant indicating a separate and exclusive use under claim of right."[10] This presumption of permissive use is supported, not rebutted, by record evidence. Specifically, the Strothers and their customers regularly used the driveway to access their printing store, and at no time did a dispute arise between plaintiff's family and the Strothers about the driveway's use; rather, as John Strother's credible testimony convincingly established, plaintiff's use of the driveway was neighborly and was not at any time adverse to, or inconsistent with, the Strothers' or their customers' use of the driveway. Although Donald Williams testified that he once asked Channing Strother to move his car forward to allow maintenance work to be completed on the Reamy house, which Strother did without incident, this isolated incident does not prove adverse use, as it is also consistent with the neighborly relationship. Thus, plaintiff's use of the driveway was not clearly and convincingly adverse.

Although defendant prevails on this element of a prescriptive easement claim, it is nonetheless necessary to address one of defendant's arguments in this regard, as it is not persuasive. Specifically, defendant argues that plaintiff's use of the driveway cannot be adverse

---

[10] *Pettus v. Keeling*, 352 S.E.2d 321, 324 (Va. 1987) (citing *Eagle Lodge, Inc. v. Hofmeyer*, 71 S.E.2d 195, 202 (Va. 1952)); *see also* 6B *Michie's Jurisprudence, Easements* § 14 ("[U]se of an open way in common with the owner of the land on which it is and the public in general is presumptively permissive . . . ."). In response, plaintiff argues that circumstantial evidence is insufficient to establish permissive use. *See Martin v. Moore*, 561 S.E.2d 672, 676-77 (Va. 2002). Yet, this principle does not apply in this case because "a positive showing that an agreement [of permissive use] existed" is only required where, unlike here, a presumption of adversity first attaches to claimant's use, and permissive use is thereafter raised only to rebut that presumption. *Id.* (quoting *Causey v. Lanigan*, 159 S.E.2d 655, 660 (Va. 1968)). Because, as explained *infra*, no presumption of adversity and claim of right applies here, whether defendant has presented sufficient evidence of permissive use to rebut the presumption is not at issue.

as a matter of law because plaintiff mistakenly believed that her family's purchasing the Reamy house in 1963 included the right to use the driveway. In support of this position, defendant cites the Supreme Court of Virginia's decision in *Chaney v. Hayes*, 458 S.E.2d 451, 453 (Va. 1995), which states that "[u]se of property, under the mistaken belief of a recorded right, cannot be adverse as long as such mistaken continues." Yet, the meaning of this general statement has been clarified and narrowed in subsequent decisions. *See generally Quatannens v. Tyrrell*, 601 S.E.2d 616, 620-21 (Va. 2004) (discussing *Chaney* and its progeny). Specifically, *Chaney* was concerned with a scenario in which an easement claimant (i) possesses a recorded *express* easement, (ii) mistakenly believes that the easement traverses a portion of land different from that described in the express easement, and hence (iii) attempts to claim a prescriptive right to the easement he has in fact used. Although plaintiff in this case believed she had a right to use the driveway after buying the Reamy property, *Chaney* is distinguishable because: (i) the document on which plaintiff claims the easement appears is a survey provided to her family at the closing, not a recorded instrument creating an express easement such as the deed of conveyance; and (ii) plaintiff is not mistaken about the location of an easement. Moreover, the Supreme Court of Virginia in *Hollander v. World Mission Church*, 498 S.E.2d 419, 421 (Va. 1998), makes clear that the *Chaney* rule applies only where a claimant bases his use of a purported prescriptive easement *solely* on a recorded instrument's description of an express easement, and is inapposite where, as here, the claimant also generally believes that he possesses a right to use the easement.[11] Accordingly, defendant's reliance on *Chaney* and its progeny is misplaced.

---

[11] *See also Quatannens*, 601 S.E.2d at 621 (explaining that *Chaney* does not apply where claimants hold "a general belief [that] they had the right to use the ways at issue" (quoting *Chaney*, 458 S.E.2d at 454) (alteration in original)).

## C.

Second, to prevail on her prescriptive easement claim, plaintiff must show by clear and convincing evidence that the use of the driveway was under a claim of right. This requirement reflects the fundamental notion that use of another's land can ripen into a prescriptive easement only if one manifests an "intention to appropriate and use the land as his own to the exclusion of all others." *Grappo v. Blanks*, 400 S.E.2d 168, 171 (Va. 1991). Notably, where the party claiming an easement by prescription "clearly demonstrates that his use has been open, visible, continuous, and exclusive for more than twenty years, his use is presumed to be under a claim of right." *Chaney*, 458 S.E.2d at 453; *see also Nelson*, 546 S.E.2d at 716. The presumption does not arise, however, "where the essential element of exclusiveness is lacking." *Id.* (citation and quotation omitted). As discussed *infra*, the record evidence points persuasively to the conclusion that plaintiff's use of the driveway was not exclusive, and thus the presumption that plaintiff's use was under claim of right does not arise. Moreover, no evidence clearly and convincingly supports a finding that plaintiff intended to use the driveway to the exclusion of all others.[12] Accordingly, plaintiff fails to carry her burden on this critical element.

## D.

The third element plaintiff must establish by clear and convincing evidence is that her use of the driveway was exclusive. Under Virginia law, "[w]here the use of a roadway by persons owning property in the immediate area has been in common with use of the way by members of

---

[12] *See Umbarger v. Phillips*, 393 S.E.2d 198, 200 (Va. 1990), for an example in which the Supreme Court of Virginia held that the claim-of-right presumption applied because a party "posted the drive as private, demonstrating to the world that they considered it theirs and theirs alone."

the general public, the essential element of exclusiveness is lacking."[13] Here, a review of the evidentiary record compels the conclusion that plaintiff's use of the driveway was not exclusive. Specifically, John Strother credibly testified that he and his customers used the driveway on a daily basis to park their cars and visit his printing store. Indeed, as the store did not front Washington Boulevard, the driveway on N. Irving Street provided the sole means of access. In addition, plaintiff stated that other people used the driveway to access the rear of buildings located on the Strothers' lots. Accordingly, plaintiff fails to prove by clear and convincing evidence that her family's use of the driveway to access the Reamy house was exclusive.

E.

Fourth, to prevail on her prescriptive easement claim, plaintiff must establish by clear and convincing evidence that her use of the easement was continuous and uninterrupted. In this regard, the evidence presented at trial shows that plaintiff and her family consistently used the driveway to access the rear of her family's restaurant, to visit plaintiff's parents-in-law, who resided on the Reamy house's second floor from 1965-1979, to park their cars, to grow vegetables, and as a place to perform a Chinese ceremony twice a year. As a whole, the evidentiary record reflects that plaintiff's use of the driveway was continuous and uninterrupted. *See Pettus*, 352 S.E.2d at 325 (holding, in the circumstances, that "lack of daily, weekly, or even monthly use for the required period of time did not . . . interrupt continuity").

F.

The fifth element plaintiff must prove by clear and convincing evidence is that she used

---

[13] *Nelson*, 546 S.E.2d at 716 (quoting *Pettus*, 352 S.E.2d at 324); *see also Quatannens*, 601 S.E.2d at 620 (quoting *Grappo*, 400 S.E.2d 168) (holding that use is exclusive "when it is not in common with others").

the driveway with the knowledge and acquiescence of the owners of the land over which it passes. With respect to this element, it is clear that the servient landowner need not have actual knowledge of another's use "[i]f the nature of the use was such that a reasonable person would discover its existence." *Umbarger v. Phillips*, 393 S.E.2d 198, 201 (Va. 1990). This standard strikes an important balance: on the one hand, it ensures that a landowner has the opportunity to observe and learn that his land is being used by another; on the other hand, it guards against "the absent or careless landowner" who pleads ignorance in the face of another's continuous use for the twenty-year prescriptive period. *See id.* Distilled to its essence, the requirement that the prescriptive easement claimant's use must be with the knowledge and acquiescence of the landowner provides notice to the landowner that his property rights may be in jeopardy and, in conjunction with the requirement that the claimant's use also be adverse, that these rights will be relinquished if they are not vindicated. *See McNeil*, 377 S.E.2d at 433 (finding in favor of landowner because use did not provide adequate notice that prescriptive easement was being claimed); 6B *Michie's Jurisprudence, Easements* § 14 (requiring reasonable notice of adverse use). In this case, this element is satisfied because plaintiff and her family used the driveway in an open, continuous, uninterrupted, and obvious way such that the servient landowner would have reasonable notice of plaintiff's use. Indeed, Donald Williams and John Strother often conversed and saw each other on the driveway. Accordingly, plaintiff's use of the driveway was with the knowledge and acquiescence of the driveway's owners, but, as noted, this use was neither adverse, nor under a claim of right, nor exclusive.

### III. Conclusion

In sum, although the evidentiary record at trial supports a finding that plaintiff's use of

the driveway was continuous and interrupted and with the knowledge and acquiescence of the driveway's owners, plaintiff fails to establish by clear and convincing evidence that her use was also adverse, under a claim of right, and exclusive. Thus, it follows that because plaintiff has not established these elements of a prescriptive easement claim, she likewise cannot satisfy the additional temporal requirement that her use be adverse, under a claim of right, and exclusive for the twenty-year prescriptive period.

In the simplest terms, this is a dispute between adjacent landowners concerning the legal right to use a driveway on defendant's land, but which plaintiff and her family used for years. Because this use was entirely neighborly and not adverse, and because the use was not exclusive or under a claim of right, plaintiff has not acquired a prescriptive right to use the easement, and defendant may now proceed to construct the mixed-use high rise in part on the driveway. Also worth noting is that defendant's placement of the mixed-use high rise on part of the driveway does not prevent ingress to, or egress from, the Reamy house, and indeed plaintiff does not claim an easement by necessity.

Accordingly, judgment will be entered in favor of defendant.

An appropriate final judgment Order shall issue.

Alexandria, Virginia
February 24, 2010

/s/
T. S. Ellis, III
United States District Judge